**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **SETH FLOYD, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action** |
| | : | **No. 26-cv-02403** |
| **CITY COUNCIL FOR THE CITY OF** | : | |
| **PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR CONTEMPT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I.    INTRODUCTION ...................................................................................................................1

II.   BACKGROUND .....................................................................................................................1

III.  ARGUMENT ...........................................................................................................................4

   A. Defendants Did Not Violate the Order ............................................................................ 4

      1. There Was No Private Meeting of a Quorum ............................................................. 5

      2. The Break in Quorum Did Not Violate the Order ...................................................... 6

   B. Defendants Are Not in Contempt..................................................................................... 9

      1. The Order Was Not Sufficient Specific to Be Enforceable by Contempt ................... 9

      2. Defendants Substantially Complied with the Order ................................................. 11

IV.   CONCLUSION.......................................................................................................................12

# TABLE OF AUTHORITIES

Cases                                                                                              Page(s)

*Alberti v. Cruise*,
 383 F.2d 268 (4th Cir. 1967) ............................................................................................ 10

*Alekseev v. City Council of City of Philadelphia*,
 8 A.3d 311 (Pa. 2010) ........................................................................................................ 7

*Ass'n of Cmty. Orgs. for Reform Now v. Se. Pa. Transp. Auth.*,
 789 A.2d 811 (Pa. Cmwlth. 2002) ..................................................................................... 8

*Com. ex rel. Costa v. Boley*,
 272 A.2d 905 (Pa. 1971) ..................................................................................................... 9

*Cottman Transmission Sys., Inc. v. Melody*,
 851 F. Supp. 675 (E.D. Pa. 1994) ..................................................................................... 10

*Ford v. Kammerer*,
 450 F.2d 279 (3d Cir. 1971) ............................................................................................. 10

*In re Crim. Contempt Proc. Against Gerald Crawford, Michael Warren*,
 329 F.3d 131 (2d Cir. 2003) ............................................................................................... 9

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*,
 389 U.S. 64 (1967) .............................................................................................................. 9

*John T. v. Del. Cty. Intermediate Unit*,
 318 F.3d 545 (3d Cir. 2003) ............................................................................................... 4

*League of Women Voters of Pa. v. Com.*,
 683 A.2d 685 (Pa. Cmwlth. 1996) ..................................................................................... 8

*Muncy Creek Twp. Citizens Comm. v. Shipman*,
 573 A.2d 662 (Pa. Cmwlth. 1990) ..................................................................................... 6

*Robin Woods Inc. v. Woods*,
 28 F.3d 396 (3d Cir. 1994) ............................................................................................... 11

*Roe v. Operation Rescue*,
 920 F.2d 213 (3d Cir. 1990) ......................................................................................... 9, 11

Statutes

65 Pa. C.S. 703 ........................................................................................................................ 5
65 Pa. C.S. 704 ................................................................................................................. 5, 7, 8
65 Pa. C.S. § 710.1 ............................................................................................................... 6, 7

Rules

Fed. R. Civ. P. 65 .................................................................................................................... 9

Other Authorities

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2955 (3d ed.) ........................................... 10

## I.    INTRODUCTION

Plaintiffs seek to hold Defendants in contempt for allegedly violating an Order to follow Pennsylvania's Sunshine Act because less than a quorum of a City Council committee was present while it accepted public comment on two then-pending pieces of legislation. But the Sunshine Act only requires City Council as a whole—not its committees—receive public comment, so there was no violation. Nor have Plaintiffs come close to proving by clear and convincing evidence that contempt is appropriate here where the Order only generally directed Defendants to follow the Act and did not specify Plaintiffs' novel reading. And finally, a quorum of City Council did receive public comment at two subsequent meetings before voting to approve the legislation, thereby curing any potential violations. As more fully explained below, the Court should deny Plaintiffs' motion.

## II.    BACKGROUND

Under Philadelphia's Home Rule Charter, before City Council can vote on potential legislation, that legislation must be "referred to a committee, considered at a public hearing, reported by the committee, printed as reported, and distributed to the members of the Council and made available to the public." Phila. Charter § 2-201.

On April 10, 2025, Councilmember Nicolas O'Rourke introduced Bills 250329 and 250330 (the "Bills")—which proposed expanded protections for residential tenants in Philadelphia—into Philadelphia City Council.[1] They were referred to Council's Committee on

---

[1] The legislative history of the Bills is available on City Council's website ("Legistar") at the following publicly available addresses:

Bill 250329: https://phila.legistar.com/LegislationDetail.aspx?ID=7300048&GUID=5FA005B6-47E9-4FED-8F94-4661BD604D22&Options=ID|Text|&Search=250329.

Bill 250330: https://phila.legistar.com/LegislationDetail.aspx?ID=7300049&GUID=52D840F2-9545-44B8-9C3F-6A985532E5FC&Options=ID|Text|&Search=250330.

Housing, Neighborhood Development and the Homeless (the "Committee") for a hearing. *See id.* The Committee is composed of six members: Chair Jamie Gauthier, Vice Chair Rue Landau, and Councilmembers Cindy Bass, Mark Squilla, Michael Driscoll, and Curtis Jones, Jr. *See* Am. Compl. ¶ 119.

On March 4, 2026, the Committee held a hearing on the Bills. Am. Compl. ¶ 53. During the hearing, amended versions of the Bills were introduced for votes and were favorably reported back to the full Council for passage. *Id.* ¶ 47. The Committee also received public comment.[2]

On March 18, 2026, Plaintiffs Seth Floyd and Erica Hadley filed a complaint and emergency petition for preliminary injunction against Defendants City Council and the Committee in the Philadelphia Court of Common Pleas, alleging violations of Pennsylvania's Sunshine Act and Philadelphia's Home Rule Charter stemming from the March 4, 2026 hearing. ECF 8-1 at 7 ¶23. That day, the parties resolved Plaintiffs' injunction petition via a stipulation, which included the following four provisions:

- Philadelphia City Council Bill numbers 250329 and 250330 (the "Bills") will not be voted upon for final passage in City Council on March 19, 2026;
- Instead, the sponsor of Bill Numbers 250329 and 250330 will move to have the Bills referred back to the Committee;
- Should the Committee choose to have a hearing in the future on the Bills, the Defendants shall comply fully with the Sunshine Act as well as the Charter; and
- No party admits any fault or the violation of any law;

ECF No. 8-1 at 23 (Mar. 18, 2026 Stipulated Order) (the "Order").

On March 19, 2026, City Council voted to refer the Bills back to the Committee. *See* note 1, *supra*. On March 30, 2026, the Committee met to consider the Bills further. *See* Committee,

---

[2] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 1-226 (Mar. 4, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/1768650?docType=30&FileName=COM MITTEE_ON_HOUSING_NEIGHBORHOOD_DEVELOPMENT_AND_THE_HOMELESS_0 30426_Full_Pdf%20(002).pdf

*Public Hearing Notice.*[3] On that date, the Committee received public comment on the Bills, including from both Plaintiffs, after which it voted to favorably report the Bills back to the full Council.[4] While a quorum of the Committee was present at the beginning of the hearing and for the vote, Defendants acknowledge that less than a quorum of the Committee (*i.e.*, fewer than 4 members) was present during portions of the public comment period.

On April 16, 2026, the full City Council held a meeting where it considered the Bills as reported from the Committee along with additional amendments and public comment.[5] On April 23, 2026, Council again considered the Bills, accepted more public comment, and ultimately voted to approve the Bills.[6] The Mayor signed the Bills into law on May 7, 2026, and they become effective November 1, 2026. *See* note 1, *supra.*

Meanwhile, on April 9, 2026, Plaintiffs filed an emergency petition for civil contempt and sanctions. *See* ECF No. 8-1. On April 10, 2026, Plaintiffs filed the Amended Complaint, maintaining their Sunshine Act and Home Rule Charter claims while adding various substantive claims of violations of federal and state law. *See* Am. Compl. On April 13, 2026, the City removed the case to this Court. *See* ECF No. 1. On April 14, 2026, Plaintiffs filed an emergency

---

[3] *Available at* https://phila.legistar.com/View.ashx?M=A&ID=1402609&GUID=51CC5F54-1764-401F-B4FD-D6A325CC0645

[4] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 78-81, 87-90, 180-83 (Mar. 30, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4120756?docType=30&FileName=COMMITTEE_ON_HOUSING_NEIGHHOOD_DEV_%26_THE_HOMELESS_033026.pdf.

[5] *Stated Meeting of the Council of the City of Philadelphia* at 61-142, 161-66 (Apr. 16, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/5184948?docType=30&FileName=STATED_MEETING_041626.pdf

[6] *Stated Meeting of the Council of the City of Philadelphia* at 59-148, 163-71(Apr. 23, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4695606?docType=30&FileName=STATED_MEETING_042326.pdf

motion for a hearing on contempt and for a temporary restraining order (TRO), incorporating their April 9, 2026 petition. *See* ECF Nos. 8, 8-1. That day, this Court denied the TRO motion and set a schedule for discovery, briefing, and a hearing on contempt. *See* ECF No. 13. Of note, that schedule called for Plaintiffs to file a new motion for contempt by May 29, 2026, Defendants to respond by June 5, permitted Plaintiffs to file a Reply by June 12, and set a hearing for June 25. *Id.* However, Plaintiffs have not filed any new motion, so Defendants now respond to Plaintiffs' original April 9, 2026 motion, ECF No. 8-1, as incorporated into their April 14 motion, ECF No. 8.[7]

## III.    ARGUMENT

Plaintiffs seek to hold Defendants in contempt for violating a stipulated Order to follow the Sunshine Act based on the conduct of the March 30, 2026 proceedings. To hold a party in civil contempt, a court must find, by clear and convincing evidence, that (1) a valid court order existed, (2) the party had knowledge of the order, and (3) the party disobeyed the order. *See, e.g.*, *John T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003). But Defendants did not violate the Sunshine Act at the March 30 hearing. Further, contempt would be inappropriate here where the Order is a vague follow-the-law injunction, Plaintiffs' Sunshine Act theory is novel and  Defendants provided ample opportunity for public comment regarding the Bills.

### A.  Defendants Did Not Violate the Order

While the March 19, 2026 Stipulated Order is an order the existence of which Defendants had knowledge, they did not violate the Order on March 30, 2026. That Order provided, in relevant part, "Should the Committee choose to have a hearing in the future on the Bills, the

---

[7] In light of Plaintiffs' failure to comply with the filing deadline for any new motion, Defendants reserve the right to further respond should Plaintiffs file a Reply raising any new grounds or arguments.

Defendants shall comply fully with the Sunshine Act as well as the Charter[.]" ECF No. 8-1 at 23.

Plaintiffs claim two kinds of violations of that provision of the Order relating to the Sunshine Act, each of which is incorrect. First, Plaintiffs claim Defendants "[c]onduct[ed] deliberations outside of a public meeting[,]" and "[r]each[ed] consensus in private," *id.* at 9 ¶ 25.a-b; and second, that Defendants "[c]onducted a hearing lacking a continuous quorum[,]" *id.* at 9 ¶ 25.c; *see also id.* ¶ 22 ("Such conduct constitutes deliberation outside a public meeting in violation of the Pennsylvania Sunshine Act."). Neither of these claims constitute a violation of the Sunshine Act.

### 1. There Was No Private Meeting of a Quorum

Plaintiffs claim that Defendants deliberated and reached a consensus outside of a public meeting is both legally insufficient and factually unsupported. The Sunshine Act requires that "deliberations *by a quorum* of the members of an agency shall take place at a meeting open to the public." 65 Pa. C.S. 704 (emphasis added).[8] Plaintiffs have presented exactly zero evidence, nor do they even allege, that a quorum[9] of the Committee's members privately gathered, much less that they deliberated agency business outside the public meeting held on March 30, 2026.[10] And the Sunshine Act does not prohibit individual legislators or groups of less than a quorum from

---

[8] The Sunshine Act defines deliberation as "[t]he discussion of agency business held for the purpose of making a decision." 65 Pa. C.S. 703.

[9] A quorum is a majority of the agency—here, the Committee has six members, so a quorum is four. *See* Phila. City Council Res. No. 200001-A ("Rules of City Council) at 12 § IV, ¶ 4, *available at* https://phlcouncil.com/wp-content/uploads/2020/07/Rules-of-Council.pdf ("4. A quorum for a committee hearing or meeting shall consist of a majority of all the members of the committee and a quorum must be present at any meeting at the time a vote is taken.").

[10] Defendants have offered to produce security camera footage showing Committee members' separate whereabouts outside the Council room.

meeting with interested parties and discussing pending legislation with them. *See Muncy Creek Twp. Citizens Comm. v. Shipman*, 573 A.2d 662, 664 (Pa. Cmwlth. 1990) ("[t]here was not a quorum of the three [township] supervisors present [at purported private meeting], thus, no requirement that their discussions take place at a meeting open to the public"). As a result, Plaintiffs' unsupported claims regarding deliberation and private meetings facially do not  state a Sunshine Act violation.

### 2.  The Break in Quorum Did Not Violate the Order

Plaintiffs' second contention—that the Committee lost quorum during some portion of the public comment session—while factually accurate, also fails to state a Sunshine Act violation as a matter of law. Defendants agree that during the public comment portion of the March 30, 2026 Committee hearing, less than a quorum was present at times. But a quorum was present for the beginning of the hearing as well as when the only official action and deliberation—voting to advance the Bills—was taken. *See* note 4, *supra*. The Sunshine Act does not require Council committees to receive public comment at all, but even if the public comment provision applies to Council committees, it does not compel that a quorum be continuously maintained. And even if the breaking of quorum during public comment violated the Sunshine Act (it did not), the circumstances of the hearing and public comment at subsequent Sunshine Act-compliant Council meetings cured any potential violation.

First, the Sunshine Act's requirement to allow for public comment *only* applies to the governing board or council of the political subdivision, *i.e.,* City Council; it does not apply to other bodies considered as "agencies" under the Sunshine Act. *See* 65 Pa. C.S. § 710.1(a) ("*[T]he board or council of a political subdivision* . . . shall provide a reasonable opportunity at each advertised regular meeting and advertised special meeting for residents . . . to comment on matters of concern, official action or deliberation which are or may be before the board or

6

council prior to taking official action." (emphasis added)). This is in marked contrast to the other provisions of the Act, which apply to all agencies (which includes committees). *See, e.g., id.* §§ 705 (requiring public voting "[i]n all meetings of agencies"), 706 (requiring that "[a]n agency shall give public notice of its first regular meeting"). And use of the word "the" before "board or council" suggests it applies to a singular entity of the City and, indeed, the Pennsylvania Supreme Court has confirmed this provision requires "public participation before a board or council proper." *Alekseev v. City Council of City of Philadelphia*, 8 A.3d 311, 314 (Pa. 2010). There is only one governing "board or council of" the City of Philadelphia: Philadelphia City Council. By its plain text, in Philadelphia the public comment requirement only applies to City Council meetings, not meetings of its committees. Thus, even if the Committee had not provided for a period of public comment on March 30, 2026 at all, it would not have violated the Sunshine Act.

Second, by its plain terms, Section 710.1 requires no quorum to receive public comment. Section 710.1 makes no reference to a quorum at all—instead, it only requires that the board or council offer a "reasonable opportunity" for residents to make comments prior to taking official action. 65 Pa. C.S. 710.1(a). The fact that no quorum is required for public comment is reinforced by Section 704, which in contrast specifically says that a quorum is required for "official action and deliberations." 65 Pa.C.S. § 704. Thus, even if less than a quorum of the committee was present for some comments, that did not violate the Sunshine Act.

Third, even though not required by the Sunshine Act, the Committee *did* provide a reasonable opportunity for public comment at the hearing. In addition to accepting written comments, the Committee received live verbal comment for nearly three hours—including from

7

both Plaintiffs. *See* note 4, *supra*. And those comments were memorialized in the transcript of the hearing, which is publicly available. *See id.*

Fourth, Defendants provided additional public comment sessions with a quorum consistently present at two subsequent meetings of the full Council that not only satisfied the Sunshine Act but cured any earlier alleged violation. *See Ass'n of Cmty. Orgs. for Reform Now v. Se. Pa. Transp. Auth.*, 789 A.2d 811, 813 (Pa. Cmwlth. 2002) (holding any potential violation due to SEPTA board members' meeting to discuss proposed fare increase was cured by later public meeting, after which fare increase was formally adopted); *League of Women Voters of Pa. v. Com.*, 683 A.2d 685, 690 (Pa. Cmwlth. 1996) (holding any violation arising out of General Assembly conference committee's closed-door meeting(s) that resulted in "extensive report" on proposed legislation was cured at subsequent open meeting where committee took official action). On April 16, 2026, the full City Council held a meeting where it considered the Bills as reported from the Committee. Council accepted public comment and also subsequently approved amendments to the Bills.[11] Second, on April 23, 2026, Council again considered the Bills as now amended, accepted more public comment, and ultimately voted to approve the Bills.[12] A quorum was maintained throughout the public comment period at both of these meetings.[13]

---

[11] *Stated Meeting of the Council of the City of Philadelphia* at 62-142 (Apr. 16, 2026) (Transcript), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/5184948?docType=30&FileName=STATED_MEETING_041626.pdf

[12] *Stated Meeting of the Council of the City of Philadelphia* at (Apr. 23, 2026) (Transcript), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4695606?docType=30&FileName=STATED_MEETING_042326.pdf

[13] *See Stated Meeting of the Council of the City of Philadelphia* (Apr. 16, 2026) (Video)*,* https://www.youtube.com/watch?v=jHVTEDwCBhE&t=8197s; *Stated Meeting of the Council of the City of Philadelphia* (Apr. 23, 2026) (Video), www.youtube.com/watch?v=ZW9ROvBWwSM.

* * *

Because Defendants did not violate the Sunshine Act, they did not violate the Order.

## B. Defendants Are Not in Contempt

Even if Defendants somehow nominally violated the Sunshine Act (they did not), contempt is not appropriate here for three reasons. First, the Order's language—to comply with the Sunshine Act and Home Rule Charter *in toto*—is too general a follow-the-law injunction to support contempt. Second, at minimum, Defendants substantially complied with the Order by holding multiple public meetings with fulsome public comment periods, including several with a quorum of the full City Council. And third, contempt is unnecessary to ensure compliance, as this Court has the authority to (but should not) invalidate the Committee's actions at the March 30 meeting under the Sunshine Act itself.

### 1. The Order Was Not Sufficient Specific to Be Enforceable by Contempt

In order to be a *valid* order enforceable by contempt, that Order[14] must be sufficiently specific. "[C]ivil contempt is committed only if a person violates a court order requiring in

---

[14] "[A]n equitable decree compelling obedience under the threat of contempt" is "an 'order granting an injunction' within the meaning of Rule 65(d)." *Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 75 (1967). Rule 65(d) requires that an injunction "(B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). While the order at issue here was originally issued by a state court not subject to Rule 65, the Rule's specificity provisions are animated by procedural due process guarantees that nonetheless apply, *see, e.g. Roe v. Operation Rescue*, 920 F.2d 213, 217 (3d Cir. 1990) (noting contempt defendant "is entitled to due process required for a civil proceeding"); *In re Crim. Contempt Proc. Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 139 n.7 (2d Cir. 2003) (order enforced by contempt did not violate due process where "the Order itself specifically and unambiguously defined the prohibited conduct"), and Pennsylvania law requires similar levels of specificity for injunctions for contempt to be permissible, *see, e.g.*, *Com. ex rel. Costa v. Boley*, 272 A.2d 905, 909 (Pa. 1971) ("'The entry of an injunction is, in some respects, analogous to the publication of a penal statute. It is a notice that certain things must be done or not done, under a penalty to be fixed by the court. * * * Such a decree should be as definite, clear and precise in its terms as possible, so that there may be no reason or excuse for

9

specific and definite language that that person do or refrain from doing an act or series of acts."

*Cottman Transmission Sys., Inc. v. Melody*, 851 F. Supp. 675, 676 (E.D. Pa. 1994) (citations

omitted). "[T]he court's civil contempt power. . . should not be utilized if the order upon which

the contempt charge was founded is vague or ambiguous or where there is ground to doubt the

wrongfulness of the defendant's conduct." *Id.; see also Ford v. Kammerer*, 450 F.2d 279, 280

(3d Cir. 1971) (noting an injunction order "need be obeyed only to the extent it reasonably

specifies the conduct prohibited"). "The long-standing, salutary rule in contempt cases is that

ambiguities and omissions in orders redound to the benefit of the person charged with

contempt." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971).

As relevant here, injunctions against conduct that is independently illegal are generally

inappropriate since "[t]here is usually an adequate remedy at law which may be pursued in

seeking redress." *Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967); *see also* Wright & Miller,

11A Fed. Prac. & Proc. Civ. § 2955 (3d ed.) ("Orders simply requiring defendants to 'obey the

law' usually are found to violate the specificity requirement.").

Here, the Order simply stated that Defendants had to comply with the entirety of the

Sunshine Act. It did not reference any individual provision or specific acts Defendants must or

must not take at any such future Committee hearing. It does not address where public comment

is required or whether a quorum must be present. As discussed above, Plaintiffs seek to expand

Sunshine Act liability beyond its plain language or even any current requirements in case law.

Even if this Court were to find as a matter of first impression that the Sunshine Act requires

---

misunderstanding or disobeying it; and when practicable *it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ*.'" (citation omitted) (alteration in original) (emphasis added)).

10

committees of Council to receive public comment *and* to do so with a quorum present at all times, those requirements were not "specific and definite" from the language of the Order so as to support a finding of contempt by clear and convincing evidence.

### 2. Defendants Substantially Complied with the Order

Beyond the technical requirements of the Sunshine Act, Defendants here have substantially complied with the Order by holding multiple meetings with public comment and a quorum present.

"[S]ubstantial compliance with a court order is a defense to an action for civil contempt.... If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994); *see also Roe v. Operation Rescue*, 920 F.2d 213, 216 (3d Cir. 1990)( noting "the primary purpose of civil contempt is remedial").

Following the March 30, 2026 Committee hearing at which public comment was received by less than a quorum of the Committee, the full City Council considered the Bills at two meetings. On April 16, 2026, the full City Council held a meeting where it considered the Bills as reported from the Committee. Council accepted public comment and also subsequently approved amendments to the Bills. *See* note 11, *supra*. Second, on April 23, 2026, Council again considered the Bills as now amended, accepted more public comment, and ultimately voted to approve the Bills. *See* note 12, *supra*. A quorum was maintained throughout the public comment period at both of these meetings. *See* note 13, *supra*. By providing multiple opportunities to address the full Council—not just the Committee—Defendants fulfilled the purpose of the public comment requirement. That is: to allow people such as Plaintiffs to address the ultimate decision makers—the full Council—before their votes to enact the Bills in their final form. Having done

11

so, Defendants substantially complied with the Order and imposing contempt would not serve to induce further compliance.

## IV.    CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court deny Plaintiffs' Motion for Contempt.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Renee Garcia, City Solicitor

Date: June 5, 2026                    By: */s/ Michael Pfautz*
                                                         WILLIAM B. SHUEY (PA ID No. 208792)
Senior Attorney
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone:  (215) 683-5233
*Counsel for Defendants*

12