# CITY EXHIBIT A



City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA  19107

# City of Philadelphia

## Legislation Details (With Text)

| | | | |
|---|---|---|---|
| **File #:** | 250329-AA   **Version:** 3 | **Name:** | |
| **Type:** | Bill | **Status:** | ENACTED |
| **File created:** | 4/10/2025 | **In control:** | Committee on Housing, Neighborhood Development and The Homeless |
| **On agenda:** | | **Final action:** | 4/23/2026 |

**Title:** Amending Chapter 9-3900 of The Philadelphia Code, entitled "Property Licenses and Owner Accountability," to clarify licensing requirements, authorize the Department to create a Proactive Inspection program, require public reporting related to Code compliance, and establish remedies, damages, and protections for tenants, all under certain terms and conditions.

**Sponsors:** Councilmember O'Rourke, Councilmember Phillips, Councilmember Gauthier, Councilmember Jones, Councilmember Landau, Councilmember Young, Councilmember Brooks

**Indexes:**

**Code sections:**

**Attachments:** 1. Bill No. 25032900, 2. Bill No. 250329, Proposed Amendment, 3-4-26, 3. Bill No. 250329, As Amended in Committee, 3-4-26, 4. Bill No. 250329, Proposed Amendment, 3-12-26, 5. Bill No. 250329-A, As Amended on the Floor, 3-12-26, 6. Bill No. 250329-A, Proposed Amendment on the Floor, 4-16-26, 7. Bill No. 250329-AA, As Amended on the Floor, 4-16-26, 8. CertifiedCopy250329-AA03

| Date | Ver. | Action By | Action | Result | Tally |
|---|---|---|---|---|---|
| 5/7/2026 | 3 | MAYOR | SIGNED | | |
| 4/23/2026 | 3 | CITY COUNCIL | READ AND PASSED | Pass | 15:1 |
| 4/16/2026 | 2 | CITY COUNCIL | AMENDED | | |
| 4/9/2026 | 2 | CITY COUNCIL | SUSPEND THE RULES OF THE COUNCIL | | |
| 4/9/2026 | 2 | CITY COUNCIL | ORDERED PLACED ON THIS DAY`S FIRST READING CALENDAR | | |
| 4/9/2026 | 2 | CITY COUNCIL | READ AND ORDERED PLACED ON NEXT WEEK'S SECOND READING CALENDAR | | |
| 3/30/2026 | 2 | Committee on Housing, Neighborhood Development and The Homeless | HEARING NOTICES SENT | | |
| 3/30/2026 | 2 | Committee on Housing, Neighborhood Development and The Homeless | HEARING HELD | | |
| 3/30/2026 | 2 | Committee on Housing, Neighborhood Development and The Homeless | REPORTED FAVORABLY, RULE SUSPENSION REQUESTED | | |
| 3/19/2026 | 2 | CITY COUNCIL | RECOMMITTED | | |
| 3/12/2026 | 1 | CITY COUNCIL | AMENDED | | |
| 3/5/2026 | 0 | CITY COUNCIL | SUSPEND THE RULES OF THE COUNCIL | | |
| 3/5/2026 | 0 | CITY COUNCIL | ORDERED PLACED ON THIS DAY`S FIRST READING CALENDAR | | |

File #: 250329-AA, Version: 3

| 3/5/2026 | 0 | CITY COUNCIL | READ AND ORDERED PLACED ON NEXT WEEK'S SECOND READING CALENDAR |
|---|---|---|---|
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 6/3/2025 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 6/3/2025 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 6/3/2025 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 4/10/2025 | 0 | CITY COUNCIL | Introduced and Referred |

Amending Chapter 9-3900 of The Philadelphia Code, entitled "Property Licenses and Owner Accountability," to clarify licensing requirements, authorize the Department to create a Proactive Inspection program, require public reporting related to Code compliance, and establish remedies, damages, and protections for tenants, all under certain terms and conditions.

*THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:*

SECTION 1. Legislative Findings. Council finds that:

(1)    A safe, habitable, and well-maintained home is a fundamental necessity for health, stability, and economic mobility. Yet, too many rental properties in Philadelphia fail to meet basic standards of habitability. Approximately 40% of Philadelphia rental homes need repairs and 30-45% of rental units operate without proper licensing, exposing tenants to unsafe, unfit, and imminently dangerous conditions.

(2)    Philadelphia is trending toward a majority-renter city, with approximately half of all households currently renting their homes. More than half of these renters are cost-burdened, paying more than 30% of their income toward rent, limiting their ability to absorb additional housing instability or pursue legal remedies when conditions deteriorate.

(3)    Existing enforcement mechanisms rely heavily on tenant complaints, placing the burden on tenants to identify, report, and pursue remedies for violations, often at personal risk. This reactive system allows serious code violations to persist undetected and unaddressed for extended periods. Furthermore, tenants consistently face retaliation for speaking out about unsafe conditions.

(4)    A majority of tenants lack access to legal representation or the financial means to enforce their rights, resulting in widespread under-enforcement of existing housing standards and allowing non-compliant

powered by Legistar™

**File #:** 250329-AA, **Version:** 3

landlords to continue collecting rent despite failing to maintain habitable properties. In eviction court, 80-85% of landlords have legal representation while only 5-8% of tenants do.

(5)     The current rental licensing system does not adequately ensure ongoing compliance with housing standards, nor does it provide sufficient transparency to tenants regarding the condition and legal status of their housing.

(6)     Strengthening licensing requirements, establishing proactive inspections, improving transparency, and creating meaningful enforcement mechanisms, including a private right of action, are necessary to ensure that all rental housing meets basic standards of safety and habitability.

(7)     Tenant advocates report a myriad of eviction filings in Philadelphia Municipal Court, and in many cases, eviction judgments entered against tenants, for properties where there are open code violations and deficiencies in rental licenses and certificates of rental suitability.

(8)     It is the intent of Council to shift from a reactive, complaint-driven system to a proactive and accountable framework that ensures compliance before harm occurs, empowers tenants to enforce their rights, and aligns economic incentives so that bad actor landlords cannot continue to profit from unsafe or unlawful conditions.

(9)     These reforms are necessary to protect public health, reduce displacement, and promote housing stability in Philadelphia's housing system.

SECTION 2. Title 9 of The Philadelphia Code is hereby amended to read as follows:

TITLE 9. REGULATION OF BUSINESSES, TRADES AND PROFESSIONS

\*       \*       \*

CHAPTER 9-3900. PROPERTY LICENSES AND OWNER ACCOUNTABILITY

\*       \*       \*

§ 9-3901. General Provisions.

\*       \*       \*

(2)     Application and Issuance. In addition to the provisions set forth in Subcode A of Title 4, the following provisions shall also apply to licenses required by this Chapter:

(a)     An applicant for a new license or the renewal of a license shall complete an application provided by the Department. *The license shall be considered effective from the date specified on the license.* The application shall contain the following information, and such other information as the Department may require:

\*       \*       \*

(b)     *An applicant shall not be eligible for a new rental license or renewal, nor shall* [T]*t*he

powered by Legistar™

**File #:** 250329-AA, **Version:** 3

Department [shall] issue or renew a license [if] *unless* it finds:

\*       \*       \*

   *(d)  If a license is issued while an appeal of a violation is pending, the relevant violation is affirmed on appeal, and all relevant appeals have been exhausted, the Department may suspend the license.*

   *(e)  The owner shall, within 7 days of receipt, either post the results of any appeal covered by this Section in a conspicuous place clearly visible to all impacted tenants or deliver it to all impacted tenants either personally or by first class mail.*

\*       \*       \*

   (4) Non-compliance, Private Right of Action and Suspension. In addition to the provisions for license suspension set forth in Subcode A of Title 4, the following provisions shall also apply to licenses required by this Chapter:

   (a)  The Department is authorized to immediately suspend a license if a property is deemed unfit or unsafe or imminently dangerous.

   *(b)  Any owner who is required to obtain or renew a rental license shall, within 7 days of receipt, provide a copy of that rental license, together with a restatement of subsection 9-3901(4)(h), to all tenants in the following manner. The owner shall either (i) post the rental license and restatement of subsection 9-3901(4)(h) in a conspicuous place clearly visible to all tenants or (ii) deliver a copy of the rental license, together with a restatement of subsection 9-3901(4)(h), to each tenant either personally or by certified mail. For properties containing one (1) or two (2) dwelling units, the owner may also provide the rental license and restatement of subsection 9-3901(4)(h) by e-mail, provided that the tenant has affirmatively consented in writing to receive such notices by e-mail, has provided an e-mail address for that purpose, and has not revoked such consent. A tenant may revoke consent to receive notices by e-mail at any time by written notice to the owner, and upon such revocation, the owner shall provide notice by another method authorized under this Section.*

   *(c)  Any owner who receives a notice of violation from the Department stating that (i) a property or unit is unsafe, unfit, or imminently dangerous as defined in Sections PM-108, PM-109, or PM-110, or (ii) a property or unit violates the Philadelphia Fire Code, shall provide notice to all impacted tenants by posting a copy of the notice of violation, and any subsequent inspection reports or appeals, in a conspicuous location on the premises clearly visible to impacted tenants, or by delivering such notice personally or by first class mail.*

   *Such notice shall be provided no later than twenty-four (24) hours prior to the deadline for correction stated in the notice of violation. If the violation is fully corrected within the time permitted by the Department, no tenant notice shall be required under this subsection.*

   *(d)  Any owner who receives a notice of license suspension shall, within 7 days of receipt, either post a copy of that notice in a conspicuous place clearly visible to all impacted tenants or deliver it to all impacted tenants either personally or by first class mail.*

   [(b)] *(e)*  The Department is authorized to suspend a license at the request of the District

powered by Legistar™

**File #:** 250329-AA, **Version:** 3

Attorney with respect to any property subject to forfeiture to the Commonwealth under the provisions of 42 Pa. C.S. § 6801 or other applicable law.

[(c)] *(f)* A license issued may be suspended by the Department for failure to comply with the requirements of this Code after a re-inspection has been made to determine compliance pursuant to Section A-503.1 of Subcode A, *provided an appeal is not in the process of being reviewed,* or for failure to pay any fine and/or cost imposed under this Chapter or Subcode A, and such suspension shall continue until there has been compliance and until any unpaid fines and costs have been paid.

[(d)] *(g)* The Department shall provide written notice and an opportunity for a hearing prior to any suspension of a license under this Section.

[(e)] *(h)* Non-compliance. Any owner who fails to obtain a *valid* rental license as required by Section 9-3902, *who fails to obtain a valid* [to comply with Section 9-3903 regarding a] Certificate of Rental Suitability *as required by Section 9-3903*, *who fails to correct code violations as described in Section 9-3903(2) (d)*, or whose rental license has been suspended shall be denied the right to recover possession of the premises or to collect rent during or for the period of noncompliance or during or for the period of license suspension. In any action for eviction or collection of rent, the owner shall attach a copy of the license*, copies of all Certificates of Rental Suitability required by Section 9-3903 and copies of all code violations issued with respect to the rental unit and/or property during the relevant tenancy.*

[(f)] *(i)* Private Right of Action. Any [tenant of any property] *person* subject to the provisions of this Chapter shall have the right to bring an action against the owner of such property to compel compliance with this Chapter *and to seek relief as provided in this Section*. [Such private right of action neither limits nor expands the rights of private parties to pursue any legal rights and claims they may possess under a written agreement or at Common Law.] *A prevailing tenant shall be entitled to the following remedies:*

*(.1) Compensatory damages for any harm caused by any non-compliance or liquidated damages in the amount of $1,000 per violation, whichever is greater. Liquidated damages under this subsection are intended to make the tenant whole and to compensate the tenant for collateral harms suffered as a result of the violation and for the tenant's time and effort enforcing the rights afforded to the tenant under this Chapter. Each separate occurrence or instance of a prohibited action shall constitute a separate violation; A continuing violation arising from the same underlying condition shall constitute a single violation and shall not be deemed a separate violation for each day it continues.*

*(.2) For violations of Section 9-3901(4)(h), abatement and refund of rent for any period during which rent was collected and the owner was noncompliant as defined in that Section;*
*(.3) Such other relief, including injunctive relief, as the court may deem appropriate; and*

*(.4) Reasonable attorney's fees and costs.*

*(j) Safe Harbor. In a private action pursuant to this Section, an owner shall not be deemed non-compliant for any period in which the owner can demonstrate, by a preponderance of the evidence, that the safe harbor provisions set below apply.*

*(.1) Delayed re-inspection of premises. An owner shall not be deemed non-compliant for purposes of this Section for any period during which the owner's inability to obtain or maintain a rental license or Certificate of Rental Suitability results primarily from a delayed re-inspection by the Department. An owner shall be deemed compliant as of the date the owner completed the required corrective action and took all*

**File #:** 250329-AA, **Version:** 3

reasonable steps to obtain or maintain the required license or Certificate of Rental Suitability, provided that the owner demonstrates by a preponderance of the evidence that:

(.a)    The owner timely corrected the underlying condition or deficiency;

(.b)    The owner timely applied for, renewed, or sought reinstatement of the rental license or Certificate of Rental Suitability and requested in writing any required inspections;

(.c)    Any failure to obtain or maintain the license or Certificate during the relevant period was due primarily to the delayed re-inspection by the City;

(.d)    The owner provided notice of the completed repair to the tenant(s); and

(.e)    A subsequent inspection confirms the condition was corrected.

(.2)    Pending appeal of certain taxes, liens, fines, and fees resulting in outstanding balances. An owner shall not be deemed non-compliant for purposes of this Section for any period during which a timely appeal is pending and not yet adjudicated regarding taxes, liens, fines, and fees unrelated to a Title 4 violation that form an outstanding balance on the owner's business tax account that would otherwise prevent license issuance, provided that the owner demonstrates by a preponderance of the evidence that:

(.a)    In the case of a violation that leads to a tax, lien, fine or fee, the underlying violation was not issued under Title 4 and does not involve conditions classified as Unsafe, Unfit, or Imminently Dangerous;

(.b)    The outstanding balance is the sole reason preventing the license from being issued or renewed;

(.c)    The owner filed a timely administrative or judicial appeal of the violation or tax clearance determination, as applicable, in accordance with governing procedures;

(.d)    The owner has not failed to take any required interim corrective actions within the owner's control; and

(.e)    The underlying violation or condition is subsequently dismissed or withdrawn upon adjudication, such that the outstanding balance would not have prevented license issuance; and

(.f)    Within five (5) days of filing such appeal, the owner provides written notice to all impacted tenants stating that an appeal has been filed, identifying the nature of any outstanding balance, and explaining that the basis for any alleged non-compliance is subject to adjudication; such notice shall be provided in accordance with this Section's notice requirements.

(.g)    In any action for eviction, recovery of possession, or collection of rent or other charges relating to a property subject to this Section, the owner shall attach to the initial filing a copy of any pending appeal described in this subsection and shall affirmatively disclose the existence and status of such appeal. Failure to attach and disclose as required by this paragraph shall render the filing defective for purposes of this Section until cured.

**File #:** 250329-AA, **Version:** 3

*For purposes of this subsection, if the appeal is denied in full, the period of non-compliance shall be deemed to run from the original cure date.*

*(.3)    Renewal of Rental License. An owner shall not be deemed noncompliant for purposes of this Section solely for failure to timely renew a rental license during the fifteen (15) days immediately following the expiration of such license, provided that the owner obtains a valid renewal within such period.*

*(.4)    No provision of this Section shall limit an owner's ability to bring a claim for property damage or breach of contract.*

§ 9-3902. Rental Licenses.

(1)    Required.

(a)    The owner of any dwelling unit, multiple family dwelling, rooming house, dormitory, hotel, one-family dwelling, two-family dwelling, or rooming unit let for occupancy must obtain a rental license. No person shall collect rent with respect to any property that is required to be licensed pursuant to this Section unless a valid rental license has been issued for the property *and has not expired or been suspended.*

§ 9-3903. Certificate of Rental Suitability; Required Tenant Documents.

(1)    Required.

(a)    The owner of any property for which a rental license is required shall, at the inception of each tenancy, provide to the tenant a Certificate of Rental Suitability that was issued by the Department no more than sixty days prior to the inception of the tenancy. The owner shall at the same time provide the tenant a copy of the owner's attestation to the suitability of the dwelling unit as received by the Department pursuant to subsection 9-3903(2)(b)(.3), and a copy of the "City of Philadelphia Partners for Good Housing Handbook" issued by the Department, or such other document as the Department shall require. The Certificate of Rental Suitability may be for either an individual dwelling unit, or for the entire building in which the unit is located.

*(b)*    Exception. The provisions of subsection 9-3903(1)(a) shall not apply with respect to any rental to a tenant who is a member of the owner's family.

*(c)    The owner of any property for which a rental license is required shall, at the time of filing an eviction action, provide a Certificate of Rental Suitability to the tenant and to the court that was issued by the Department no more than thirty days prior to the date of enrollment. Any owner who fails to comply with this subsection shall be denied the right to file for eviction or obtain possession of the property.*

*(d)   At any point during a tenancy, a tenant may request a Certificate of Rental Suitability from the owner, provided that a tenant may not request more than one such Certificate within any ninety (90) day period. Within ten (10) days of receiving a tenant request, an owner shall provide to the tenant a Certificate of Rental Suitability issued by the Department no more than thirty days prior to the request. Any owner who fails to comply with this subsection shall be denied the right to collect rent until a Certificate of Rental Suitability is provided to the tenant. The Safe Harbor Provision in Section 3-901(4)(j) shall also apply to this subsection.*

(2)    Application and Issuance.

(a)    Applications for a Certificate of Rental Suitability shall be made on forms provided by the Department.

(b)    The Department shall issue a Certificate of Rental Suitability only after it determines that:

(.1)   The owner of the property has obtained all required licenses with respect to the property, including a rental license.

(.2)   There are no outstanding violation notices under this Code with respect to the property, except with respect to violations for which there is a pending appeal of which the owner has notified the Department in a manner prescribed by the Department.

Exception: The Department of Licenses and Inspections may promulgate regulations regarding conditions under which Certificates of Rental Suitability may be issued, despite violations of Section PM-108.1.3 (Unsafe shared retaining walls).

(.3)   The owner of the premises to be leased acknowledges the obligation to provide a fit and habitable property and states that (1) all fire protection and smoke detection equipment for the premises are present and in proper operating order in accordance with all applicable requirements of The Philadelphia Code and regulations and standards adopted thereunder; (2) the operating systems are working properly to provide a fit and habitable condition; and (3) *that the premises are free of unfit, unsafe, or imminently dangerous conditions, as defined by Sections PM-108, PM-109, and PM-110; and (4)* the owner will continue to maintain all fire protection and smoke detection equipment for the premises in accordance with all applicable requirements of The Philadelphia Code and regulations and standards adopted thereunder, will continue to maintain the operating systems in proper working order, *will continue to ensure that the property is free of any unfit, unsafe, and imminently dangerous conditions as defined by Sections PM-108, PM-109, and PM-110,* and will continue to maintain the property in a fit and habitable condition.

(c)    The Certificate shall set forth the applicable rental license number for the property, the date of the last inspection conducted by the Department (where applicable) and the applicable zoning designation, and shall set out the process by which a tenant may request a further inspection of the property by the Department.

(d)    Failure by the owner to correct *unsafe, unfit, or imminently dangerous* code violations *as defined by Sections PM-108, PM-109, and PM-110* [covered by subsection (2)(b)(.3)] within thirty (30) days of receiving a notice of violation, or sooner as indicated by the Department, shall be considered to be noncompliance with this Section*, so long as the owner has not timely appealed the notice of violation*.

*(.1)    In an action for eviction or collection of rent, the owner shall have the burden of demonstrating compliance with the requirements for issuance of a Certificate of Rental Suitability during the relevant tenancy.*

*(.2)    Where a notice of violation is timely appealed and subsequently affirmed, the owner shall be deemed in noncompliance with this Section as of the cure date specified on the notice of violation.*

*(e)    Proactive Inspection Program. The Department is authorized to establish a Proactive Inspection Program in order to inspect all residential rental properties and units registered to a rental license pursuant to*

**File #:** 250329-AA, **Version:** 3

*Section 9-3902 ("Rental Licenses"), identified as Residential Dwellings or Rooming Houses / Boarding Houses, on a regular cycle by July 2030, provided that such inspections are feasible in the interests of health and safety.*

*(f)   Reporting Requirements.*

*(.1)   The Department shall prepare an annual report, and shall provide Council with, and make publicly available, such reports pursuant to the schedule set forth in paragraph (.2) Such reports shall include, but are not limited to, the following:*

*(.a)   The current status of the Proactive Inspection Program, an assessment of progress toward the goal of routine proactive inspections for all units registered to a rental license pursuant to Section 9-3902 ("Rental Licenses"), identified as Residential Dwellings or Rooming Houses / Boarding Houses, and a plan for developing the program over the next calendar year.*

*(.b)   The total number of rental inspections performed during the past calendar year per zip code, and whether each inspection was in response to a complaint or a result of the Proactive Inspection Program.*

*(.c)   An overview of inspections performed in response to complaints, including the number and type of complaints received per zip code, number and type of complaints responded to per zip code, the number and type of violations found as a result of complaints per zip code, and the average response time for each type of complaint.*

*(.d)   The total number of all notices of intent to cease operations and cease operations orders for residential rental properties.*

*(.e)   A list of all residential rental property owners and addresses with an open Unfit, Unsafe, or Imminently Dangerous violation or a Cease Operations order, as defined by Sections PM-108, PM-109, PM-110, and A-505.*

*(.2)   The first report shall be provided to Council no later than December 31, 2027. Thereafter, an annual report shall be provided to Council no later than June 30 each year.*

SECTION 3. This Ordinance shall become effective November 1, 2026.

_____

**Explanation:**

[Brackets] indicate matter deleted.

*Italics* indicate new matter added.

# CITY EXHIBIT B

City Council
Chief Clerk's Office
402 City Hall
Philadelphia, PA 19107

# City of Philadelphia

## Legislation Details (With Text)

| | | | | |
|---|---|---|---|---|
| **File #:** | 250330-AA | **Version:** 3 | **Name:** | |
| **Type:** | Bill | | **Status:** | ENACTED |
| **File created:** | 4/10/2025 | | **In control:** | Committee on Housing, Neighborhood Development and The Homeless |
| **On agenda:** | | | **Final action:** | 4/23/2026 |

**Title:** Amending Chapter 9-800 of The Philadelphia Code, entitled "Landlord and Tenant," to modify the requirements related to good cause for ending a tenancy, add protections against retaliation and harassment for tenants and tenant organizations, specify tenants' rights related to the implied warranty of habitability and provide a legal presumption related to breaches of the implied warranty of habitability, create a tenant right to organize, specify deadlines for asserting claims, and establish and enhance enforcement mechanisms, remedies, damages, and protections, all under certain terms and conditions.

**Sponsors:** Councilmember O'Rourke, Councilmember Phillips, Councilmember Gauthier, Councilmember Jones, Councilmember Landau, Councilmember Young, Councilmember Brooks

**Indexes:** LANDLORD AND TENANT

**Code sections:** 9-800 - Landlord and Tenant

**Attachments:** 1. Bill No. 25033000, 2. Bill No. 250330, Proposed Amendment, 3-4-26, 3. Bill No. 205330, As Amended in Committee, 3-4-26, 4. Bill No. 250330, Proposed Amendment, 3-12-26, 5. Bill No. 250330-A, As Amended on the Floor, 3-12-26, 6. Bill No. 250330-A, Proposed Amendment on the Floor, 4-16-26, 7. Bill No. 250330-AA, As Amended on the Floor, 4-16-26, 8. CertifiedCopy250330-AA03

| Date | Ver. | Action By | Action | Result | Tally |
|---|---|---|---|---|---|
| 5/7/2026 | 3 | MAYOR | SIGNED | | |
| 4/23/2026 | 3 | CITY COUNCIL | READ AND PASSED | Pass | 15:1 |
| 4/16/2026 | 2 | CITY COUNCIL | AMENDED | | |
| 4/9/2026 | 2 | CITY COUNCIL | SUSPEND THE RULES OF THE COUNCIL | | |
| 4/9/2026 | 2 | CITY COUNCIL | ORDERED PLACED ON THIS DAY`S FIRST READING CALENDAR | | |
| 4/9/2026 | 2 | CITY COUNCIL | READ AND ORDERED PLACED ON NEXT WEEK'S SECOND READING CALENDAR | | |
| 3/30/2026 | 2 | Committee on Housing, Neighborhood Development and The Homeless | HEARING NOTICES SENT | | |
| 3/30/2026 | 2 | Committee on Housing, Neighborhood Development and The Homeless | HEARING HELD | | |
| 3/30/2026 | 2 | Committee on Housing, Neighborhood Development and The Homeless | REPORTED FAVORABLY, RULE SUSPENSION REQUESTED | | |
| 3/19/2026 | 2 | CITY COUNCIL | RECOMMITTED | | |
| 3/12/2026 | 1 | CITY COUNCIL | AMENDED | | |
| 3/5/2026 | 0 | CITY COUNCIL | SUSPEND THE RULES OF THE COUNCIL | | |

powered by Legistar™

**File #:** 250330-AA, **Version:** 3

| 3/5/2026 | 0 | CITY COUNCIL | ORDERED PLACED ON THIS DAY`S FIRST READING CALENDAR |
| 3/5/2026 | 0 | CITY COUNCIL | READ AND ORDERED PLACED ON NEXT WEEK'S SECOND READING CALENDAR |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 3/4/2026 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 6/3/2025 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 6/3/2025 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 6/3/2025 | 0 | Committee on Housing, Neighborhood Development and The Homeless | |
| 4/10/2025 | 0 | CITY COUNCIL | Introduced and Referred |

Amending Chapter 9-800 of The Philadelphia Code, entitled "Landlord and Tenant," to modify the requirements related to good cause for ending a tenancy, add protections against retaliation and harassment for tenants and tenant organizations, specify tenants' rights related to the implied warranty of habitability and provide a legal presumption related to breaches of the implied warranty of habitability, create a tenant right to organize, specify deadlines for asserting claims, and establish and enhance enforcement mechanisms, remedies, damages, and protections, all under certain terms and conditions.

*THE COUNCIL OF THE CITY OF PHILADELPHIA HEREBY ORDAINS:*

SECTION 1. Legislative Findings. Council finds that:

(1)     A safe, habitable, and well-maintained home is a fundamental necessity for health, stability, and economic mobility. Yet, too many rental properties in Philadelphia fail to meet basic standards of habitability. Approximately 40% of Philadelphia rental homes need repairs and 30-45% of rental units operate without proper licensing, exposing tenants to unsafe, unfit, and imminently dangerous conditions.

(2)     Philadelphia is trending toward a majority-renter city, with approximately half of all households currently renting their homes. More than half of these renters are cost-burdened, paying more than 30% of their income toward rent, which limits their ability to relocate when faced with unsafe or unstable housing conditions and increasing their vulnerability to exploitation.

(3)     Existing enforcement mechanisms rely heavily on tenant complaints, placing the burden on tenants to identify, report, and pursue remedies for violations, often at personal risk. This reactive system allows serious code violations to persist undetected and unaddressed for extended periods. Furthermore, tenants

powered by Legistar™

consistently face retaliation for speaking out about unsafe conditions.

(4)    Retaliation against tenants who assert their legal rights severely undermines recourse for tenants experiencing unsafe conditions. Tenants who report violations, request repairs, or organize collectively frequently face eviction, non-renewal, rent increases, or harassment, discouraging the exercise of lawful rights and undermining enforcement of housing standards.

(5)    The absence of clear, enforceable standards governing retaliation, harassment, and interference with tenant rights allows harmful practices to persist and creates uncertainty for both tenants and landlords.

(6)    Tenant organizing and collective action are critical tools for addressing unsafe conditions and power imbalances in the rental market. However, tenants and tenant organizers often face barriers to organizing, including restricted access to buildings, non-renewal of leases, eviction, and harassment.

(7)    Establishing a clear right to organize, strengthening protections against retaliation and harassment, clarifying and reinforcing the implied warranty of habitability, and creating strong enforcement mechanisms are necessary to ensure that tenants can safely assert their rights without fear of reprisal.

(8)    Requiring good cause for lease termination is essential to prevent arbitrary displacement, promote housing stability, and ensure that tenants are not forced from their homes without a legitimate and lawful basis.

(9)    These reforms are necessary to protect public health, reduce displacement, and promote housing stability in Philadelphia's housing system.

SECTION 2. Title 9 of The Philadelphia Code is hereby amended to read as follows:

TITLE 9. REGULATION OF BUSINESSES, TRADES AND PROFESSIONS

\*        \*        \*

CHAPTER 9-800. LANDLORD AND TENANT

\*        \*        \*

§ 9-804. Unfair Rental Practices.

\*        \*        \*

(2)    It shall be unlawful for any owner, landlord, agent or other person operating or managing premises to *refuse to lease to any person,* terminate a lease with a tenant or make, alter, amend or modify any term or condition of any existing lease or arrangement of tenancy with a tenant*, or restrict access to common areas or amenities* in retaliation for:

(a)    any violation having been found against the premises;

(b)    *Initiating or participating in the investigation of or enforcement against a violation, including but not limited to the filing of a complaint alleging a violation and/or related to the investigation of or enforcement against a violation;*

powered by Legistar™

**File #:** 250330-AA, **Version:** 3

(c)     *any lawful communication made by a tenant in good faith with a government official or in a judicial proceeding regarding violations or other conditions of the premises, provided that any allegations concerning retaliatory conduct during a consecutive thirty (30) day period shall be treated as the subject of a single complaint.*

[(c)] *(d)* the joining of*, or participation in,* any lawful organization*, including a tenant organization, association, or union*[, or any other exercise of a legal right]. [It shall be unlawful for any owner, landlord, agent or other person operating or managing premises to refuse to lease any premises to a prospective tenant because he believes the prospective tenant has exercised any such right];

[(d)] *(e)* an incident of domestic violence or sexual assault in which a tenant was the victim, or a tenant's status as a victim of domestic violence or sexual assault. For purposes of this subsection (2)(d) the meaning of the terms "victim", "domestic violence" and "sexual assault" are as defined in Section 9-3201 of this Code[.]*;*

(f)     *any other exercise of a legal right.*

In any civil proceeding involving this provision in which the notice of termination or alteration of a term or condition of the lease was given within one year after a violation was found, a right of the tenant against the landlord, agent or other person operating or managing premises was exercised, or a correction made, whichever is the latest, it shall be the burden of the owner, landlord, agent or other person operating or managing such premises to prove that the notice was not given in retaliation for the exercise by the tenant of his legal rights.

(3)     [The provisions of this Section shall not apply to:

(a)]     [Any bona fide] *The* transfer of title [incident to a sale] of the [premises, but] *premises shall not alter the obligation of* any subsequent owner, landlord, agent or other person operating or managing such premises *to comply with* [shall be subject to] the provisions of this Chapter.

(a)     [(b)] *It shall not be a violation of this Section 9-804 for* [Any] *an* owner, landlord or agent or other person operating or managing any premises against which a notice of violation has been issued *to* [who desires to] terminate an existing occupancy in order that the premises may be rehabilitated and the violation cured, *provided that* [and] the Department of Licenses and Inspections issues a certification that such work requires that the premises be vacated.

*              *              *

(12)   Good cause required.

(a)   No owner, landlord, agent or other person operating or managing any residential premises, upon expiration of [a] *any* lease [of less than one year], shall *take any action to terminate a tenancy* [issue a notice to vacate, notice of non-renewal, or notice to terminate the lease], unless (1) the landlord has good cause to *take that action* [not renew the lease]; and (2) the landlord provides the tenant with notice pursuant to subsection (c), below. For purposes of this subsection (12)(a), good cause shall include, but is not limited to, any of the following:

*              *              *

**File #:** 250330-AA, **Version:** 3

*(.10)   The landlord has cause for eviction under 68 Pa. Stat. § 250.501(a)(2) or (3), or successor statute.*

*(.11)   The owner has entered into a bona fide agreement of sale to transfer the premises to a purchaser who will occupy the unit as their principal residence, provided that:*

*(.a)   The owner provides the tenant with a copy of a fully executed, arm's-length agreement of sale identifying the purchaser.*

*(.b)   The purchaser provides a signed statement that the purchaser intends to occupy the unit as their principal residence within ninety (90) days of closing and does not intend to rent the unit.*

*(.c)   The owner provides at least sixty (60) days' notice of non-renewal to the tenant, attaching all documentation requested in paragraphs (.a)-(.b), above.*

\*       \*       \*

(b) [Reserved] *For purposes of subsection 12(a), above, an action to terminate a tenancy shall include, but is not limited to, any of the following:*

*(.1)   Issuing, serving, or otherwise providing a tenant with a notice to vacate, notice of non-renewal, notice to terminate the lease, notice of Diversion Rights pursuant to Section 9-811; or*

*(.2)   Initiating, filing, commencing, or otherwise pursuing an eviction action or any other legal action seeking to obtain a judgment for possession of the premises, excepting ejectment actions.*

(c)   A landlord who has good cause to *take an action to terminate a tenancy* [issue a notice to vacate or notice to terminate a lease] under subsection (a), above, shall notify the tenant in writing *with reasonable specificity* of the basis for such good cause in the same manner and on the same schedule as set forth in subsection (11)(a) ("Landlord Notice to Tenant of Rent Increase"). In the event the owner, landlord, agent or other person operating or managing the premises fails to issue the notice as required by this subsection (12), the lease shall renew on a month-to-month basis, unless the tenant elects otherwise.

\*       \*       \*

*(f)   This section (12) shall not apply if a landlord sufficiently alleges in an eviction complaint, and a court of competent jurisdiction finds, that the tenant resides in an individual rental unit that is also occupied by the landlord as a primary residence and has been since the start of the tenancy.*

\*       \*       \*

*(13)*   Self-Help Eviction.

\*       \*       \*

*(14)*   Any person aggrieved under the provisions of this Section may file a complaint with the Fair

Housing Commission or may allege any violations in an initial pleading or, where appropriate, in a responsive pleading in a court of competent jurisdiction. *Claims for violations of this Chapter shall be governed by the contractual statute of limitations applicable under the laws of the Commonwealth of Pennsylvania. Tenants shall retain the right to file claims beyond the expiration of their lease period and after vacating the premises, provided such claims are filed within the applicable contractual statute of limitations period. There is no requirement that a complaint be filed with an agency before asserting a claim in court. Each separate occurrence or instance of a prohibited action shall constitute a separate violation. A continuing violation arising from the same underlying condition shall constitute a single violation and shall not be deemed a separate violation for each day it continues.*

*(a)        In an administrative proceeding before the Fair Housing Commission violations of this Section shall be punishable pursuant to Section 9-807.*

*(b)        In a judicial proceeding, a court may order the following, upon a finding that a violation of this Section has occurred:*

*(.1) Injunctive relief and such other equitable relief, as appropriate.*

*(.2) Compensatory damages and restitution, including economic damages inclusive of overpaid rent and emotional distress damages, or, in the alternative, if the plaintiff elects before judgment is rendered, statutory damages of $1,000 per violation.*

*(.3) Upon a finding of a willful or wanton violation of this Section, punitive damages up to three times the value of actual damages sustained inclusive of overpaid rent or, if statutory damages are elected, three times the value of statutory damages.*

*(.4) Reasonable attorney's fees and costs.*

*(.5) Suspension or revocation of the owner or agent's rental license, during which period the rent for any rental unit in the housing accommodation shall not be collected or increased.*

*(c)        A tenant may use the protections afforded in this Section as an affirmative defense in a court of competent jurisdiction.*

*(15)*      No provision of this Section can be waived or made subject to a contract between the parties depriving a tenant of the benefits of this Section.

\* \* \*

*§ 9-816. Rights to Safe and Healthy Homes.*

*(1)        Right to Organize.*

*(a)        Tenants shall have the right to:*

*(.1)        Organize and advocate related to the terms and conditions of their residency;*

*(.2)        Form, join, meet with, and participate in tenant organizations;*

powered by Legistar™

**File #:** 250330-AA, **Version:** 3

(.3)    *Meet and confer through representatives of their own choosing with owners and management; and*

(.4)    *Engage in lawful concerted activities with other tenants;*

(b)    *Any tenant organizer who is not a tenant shall have the same rights to visit tenants and access residential rental accommodations and shall follow the same building access and security protocols as all other non-tenants. Furthermore:*

(.1)    *If a multifamily residential property has a consistently enforced, written policy against canvassing, then a non-tenant tenant organizer must be accompanied by a tenant while on the property of the multifamily housing project.*

(.2)    *If a multifamily residential property has a written policy favoring canvassing, any non-tenant tenant organizer must be afforded the same privileges and rights of access as other uninvited outside parties in the normal course of operations. If the project does not have a consistently enforced, written policy against canvassing, the project shall be treated as if it has a policy favoring canvassing;*

(c)    *Any owner or agent of an owner of a residential rental accommodation has a duty to confer in good faith with tenants and tenant organizers regarding lease terms and property conditions to which those tenants are party. "Confer in good faith" means that the parties shall have the mutual obligation, personally or through their authorized representatives, to meet and confer and continue for a reasonable period of time, in order to exchange freely information, opinions, and proposals, and to endeavor to reach agreement. Examples of conferring in good faith include, but are not limited to, maintaining a designated point of contact, engaging in regular communications, responding to reasonable requests for information, allowing participation by non-resident advocates, providing adequate time for limited-English speakers to obtain translation services, providing and adhering to timelines for addressing habitability concerns, and negotiating and putting agreements into writing;*

(d)    *No owner or agent of an owner of a residential rental accommodation shall interfere with the right of a tenant or tenant organizer invited by a tenant onto the premises to conduct the following activities related to the establishment or operation of a tenant organization, if performed in a lawful manner consistent with subsection § 9-816(1)(b):*

(.1)    *Distributing literature in common areas, including lobby areas;*

(.2)    *Knocking on tenants' doors, speaking with tenants, and placing literature at or under tenants' doors;*

(.3)    *Posting information on all building bulletin boards;*

powered by Legistar™

(.4)    *Assisting tenants in participating in tenant organization activities; and*

(.5)    *Convening tenant or tenant organization meetings at any reasonable time and in any appropriate space that would reasonably be interpreted as areas that the tenant had access to under the terms of their lease, including any tenant's unit, a community room, a common area including lobbies, or other available space.*

(.6)    *Formulating responses to owner actions or building and unit conditions, including:*

(.a)    *Rent increases or requests for rent increases;*

(.b)    *Proposed changes in the housing accommodation's facilities and services;*

(.c)    *Conversion of residential units to nonresidential use, cooperative housing, or condominiums;*

(.7)    *Proposing that the owner or management modify the housing accommodation's facilities and services; and*

(.8)    *Any other activity reasonably related to the establishment or operation of a tenant organization.*

(e)    *This Section shall not be construed to grant any greater access to a rental residential accommodation than any other non-resident would be provided.*

(2)    *Right to Habitability.*

(a)    *Tenants shall have the right to facilities and services vital to their life, health, and safety and to the use of the premises for residential purposes throughout the duration of their tenancy. At a minimum, tenants have a right to safe and sanitary living conditions.*

(b)    *It shall be unlawful for any owner, landlord, agent, or other person operating or managing premises to threaten to or engage in any act or omission which materially interferes with the tenant's right to habitability, including but not limited to the following:*

(.1)    *Failing to perform or complete repairs and maintenance in a reasonably timely manner or failing to follow applicable industry standards, including but not limited to the Philadelphia Property Maintenance Code, Philadelphia Building Construction and Occupancy Code, Philadelphia Fire Code, and Philadelphia Health Code, to minimize exposure to mold, lead paint and dust, asbestos, or other building materials with potentially harmful health impacts. A reasonably timely manner is defined as the landlord has had reasonable time after being put on notice, taking into account the emergency nature of the repair as well as the impact or potential impact to the tenants' and occupants' health, safety, and well-being.*

powered by Legistar™

**File #:** 250330-AA, **Version:** 3

*(.2)    Engaging in an act or omission which results in a material breach of the implied warranty of habitability, as defined in this Section.*

*(c)    Abatement under this provision*

*(.1)    In a court action alleging unpaid rent, a tenant shall be entitled to an abatement of rent during and for any periods when the implied warranty of habitability has been materially breached by a landlord, including, but not limited to, where a landlord fails to rebut the presumption of a breach pursuant to this subsection. A material breach of the implied warranty of habitability occurs when (1) a defect in the property is of a nature and kind which will prevent the use of the dwelling for its intended purpose to provide premises fit for habitation by its dwellers; (2) the landlord had notice of the defect of the condition; and (3) the landlord failed to make the necessary repairs in a reasonably timely manner.*

*(.2)    In a proceeding pursuant to this Section before a court of competent jurisdiction, there shall be a rebuttable presumption that an owner, landlord, agent or other person operating or managing any residential premises breached the implied warranty of habitability if (1) the conditions or characteristics of the premises violate the requirements of the Philadelphia Property Maintenance Code or the Philadelphia Fire Code; (2) the Department has issued a notice of violation regarding the defective conditions or characteristics of the premises; (3) the date to cure, specified in an issued notice of violation, has passed; (4) no appeal of that notice of violation is pending; and (5) the defective conditions or characteristics that form the basis of that notice of violation have not all been remedied. When these conditions are met, a court may reasonably conclude that the landlord had notice of the defect from the Department of Licenses and Inspections, had a reasonable opportunity to make the necessary repairs, and failed to make the necessary repairs. (.a)    A notice of violation that includes a determination by the Department that the rental property is unfit, unsafe, or imminently dangerous, which is not complied with pursuant to the timelines of section (b) shall entitle a tenant to full abatement of rent during or for the period of the violation, or until the Department determines that work to repair the violation has started and is actively progressing, and acceptable interim measures have been taken to ensure tenant safety and unit habitability during the interim.*

*(.b)    The Department's notice of violation to the landlord shall relieve the tenant of separately providing the landlord written notice of a defect or condition that gives rise to the presumptive breach of the implied warranty of habitability.*

*(.c)    A landlord may rebut the presumption of a breach of the implied warranty of habitability, in whole or in part, by showing by a preponderance of the evidence:*

*(.i)    The landlord has been unable to correct the violation because the tenant prevented the landlord from accessing the property;*

powered by Legistar™

**File #:** 250330-AA, **Version:** 3

*(.ii)     To the extent the notice of violation is not related to the structure of the building, that the habitability of the tenant's residence was not fully impacted by the relevant violation, in which case rent shall be abated to the extent that habitability was adversely impacted;*

*(.iii)     The tenant caused the violation that is the basis for the violation; or*

*(.iv)     The defective conditions or characteristics that form the basis of the violation were corrected, in which case the breach shall be deemed to apply to the period from the issuance of the notice of violation to the date the defective condition was repaired, so long as notice of repair was provided, a request for reinspection by the Department has been made, and the subsequent reinspection confirms the defective condition was repaired.*

*(.d)     Nothing in this Subsection shall be interpreted to preclude a finding that the implied warranty of habitability was breached prior to or despite no violation having been issued by the City.*

*(3)     Protections Against Interference and Retaliation*

*(a)     Tenants shall have the right to the use and quiet enjoyment of their residence and the housing services that are connected with the use or occupancy of a rental unit, including, but not limited to, utilities (including gas, water, and electricity), ordinary repairs or replacement, and maintenance, including painting.*

*(b)     It shall be unlawful for any owner, landlord, agent, or other person operating or managing premises to take any action, or refuse to act in a way that would cause a reasonable tenant to vacate such residential rental unit or to surrender or waive any rights described above in relation to such tenancy. Examples include, but are not limited to, the following:*

*(.1)     Reducing or eliminating, or threatening to reduce or to interfere with a tenant's quiet enjoyment of their residence, including but not limited to, by failing to provide notice of 24 hours for non-emergency repairs to the tenant, or failing to offer a reasonable justification for entry into the unit; or otherwise engaging in unreasonably disruptive behavior when entering or accessing the property or attempting to do so.*

*(.2)     Threatening a tenant or their guests with physical harm.*

*(.3)     Reducing or eliminating, or threatening to reduce or to eliminate, housing services required by a lease, contract or law, including but not limited to the elimination of parking if provided in the tenant's lease or contract.*

*(.4)     Engaging in abusive use of government process against a tenant, for example by making a report or threatening to make a report about a tenant to a governmental entity, including immigration authorities, when done to retaliate against the tenant for engaging in activity protected under Section 9-804(2), to prevent the tenant from engaging in such activities in the future, or to cause the tenant to*

powered by Legistar™

**File #:** 250330-AA, **Version:** 3

*vacate the unit or forfeit other legal rights of occupancy.*

*(.5)     Other acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of a tenant and that cause, or are likely to cause, a tenant to surrender or waive any rights in relation to such tenancy.*

*(.6)     Retaliating for engaging in activity protected under Section 9-804(2) by reducing or eliminating, or threatening to reduce or to eliminate any other benefits, privileges, or facilities of the property promised to tenants, in a lease or otherwise, or required by law.*

*(.7)     Disclosing, threatening to disclose, or misusing a tenant's medical or health information, including but not limited to records or information relating to disability, medical treatment, prescriptions, or health conditions, where such disclosure or threat of disclosure is made to co-tenants, neighbors, employers, governmental entities, or any other third party.*

*(4)     Remedies. Any person aggrieved under the provisions of this Section may allege any violations in an initial pleading or, where appropriate, in a responsive pleading in a court of competent jurisdiction. A claim for a violation of this Chapter must be filed in court within two (2) years of the date that an alleged violation occurred. There is no requirement that a complaint be filed with an agency before asserting a claim in court. Each separate occurrence or instance of a prohibited action shall constitute a separate violation. A continuing violation arising from the same underlying condition shall constitute a single violation and shall not be deemed a separate violation for each day it continues.*

*(a)     A court may order the following, upon a finding that a violation of this Section has occurred:*

*(.1)     Injunctive relief and such other equitable relief, as appropriate.*

*(.2)     Compensatory damages and restitution, including overpaid rent and emotional distress damages, or, in the alternative, if the plaintiff elects before judgment is rendered, statutory damages of $1,000 per violation.*

*(.3)     Upon a finding of a willful or wanton violation of this Section, punitive damages of three times the value of actual damages sustained inclusive of overpaid rent or, if statutory damages are elected, three times the value of statutory damages.*

*(.4)     Reasonable attorney's fees and costs.*

*(.5)     Suspension or revocation of the owner or agent's rental license, during which period the rent for any rental unit in the housing accommodation shall not be collected or increased.*

*(b)     A tenant may use the protections afforded in this Section as an affirmative defense in a court of competent jurisdiction.*

SECTION 3. This Ordinance shall become effective November 1, 2026.

---

**Explanation:**

[Brackets] indicate matter deleted.

**File #:** 250330-AA, **Version:** 3

*Italics* indicate new matter added.