**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SETH FLOYD, et al.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil Action** |
| | : | **No. 26-cv-02403** |
| **CITY COUNCIL FOR THE CITY OF** | : | |
| **PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................. iii

I.      INTRODUCTION ................................................................................................................. 1

II.      BACKGROUND ................................................................................................................... 1

    A. Procedural and Factual History ......................................................................................... 1

    B. Provisions of the Bills ........................................................................................................ 5

III.     LEGAL STANDARD ........................................................................................................... 6

IV.     ARGUMENT ........................................................................................................................ 7

    A. No Sunshine Act Violation Occurred (Count 1) ................................................................ 7

    B. No Home Rule Charter Violation Occurred (Count 2) ..................................................... 12

    C. The Bills Do Not Constitute a Regulatory Taking (Count 3) ........................................... 15

        1.    Plaintiffs Fail to Allege Any Concrete Economic Impact ................................... 16

        2.    Plaintiffs Have No Reasonable, Distinct Investment-Backed Expectations ....... 17

        3.    The Character of the Government Action Weighs Against Finding a Regulatory Taking ................................................................................................................... 18

    D. The Bills Do Not Violate the Contracts Clause (Count 6) ............................................... 19

        1.    Plaintiffs Have Not Alleged a Substantial Impairment of Existing Contracts .... 20

        2.    The Ordinance Serves a Significant and Legitimate Public Purpose ................... 21

        3.    The Ordinance Is a Reasonable and Appropriate Means of Advancing That Purpose ............................................................................................................... 22

    E. The Bills Have a Rational Basis and So Satisfy Substantive Due Process (Counts 4 and 7) ...................................................................................................................................... 23

    F. The Bills Do Not Violate the Equal Protections Clause (Counts 5 and 8) ...................... 24

    G. Plaintiffs Fail to State a *Monell* Claim (Count 9) ........................................................... 26

    H. Further Amendment Would Be Futile .............................................................................. 26

V.      CONCLUSION .................................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

Cases

*ACRA Turf Club, LLC v. Zanzuccki*,
  724 Fed. App'x 102 (3d Cir. 2018) .................................................................................. 23

*Alekseev v. City Council of City of Philadelphia*,
  8 A.3d 311 (Pa. 2010) .................................................................................................... 9

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
  669 F.3d 359 (3d Cir. 2012) .................................................................................... 20, 23

*Andrus v. Allard*,
  444 U.S. 51 (1979) ................................................................................................... 16, 17

*Anspach v. City of Phila.*,
  503 F.3d 256 (3d Cir. 2007) ......................................................................................... 13

*Antonelli v. New Jersey*,
  419 F.3d 267 (3d Cir. 2005) ......................................................................................... 24

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) ......................................................................................... 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 6, 13

*Ass'n of Cmty. Orgs. for Reform Now v. Se. Pa. Transp. Auth.*,
  789 A.2d 811 (Pa. Cmwlth. 2002) ................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 6

*Budhun v. Reading Hops. & Med. Ctr.*,
  765 F.3d 245 (3d Cir. 2014) .................................................................................... 26, 27

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*,
  538 U.S. 188 (2003) ...................................................................................................... 24

*City of New Orleans v. Dukes*,
  427 U.S. 297 (1976) ...................................................................................................... 25

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
  665 F.3d 524 (3d Cir. 2011) ......................................................................................... 25

*Euclid v. Ambler Realty Co.*,
  272 U.S. 365, (1926) ..................................................................................................... 16

*Flemming v. Nestor*,
  363 U.S. 603 (1960) ...................................................................................................... 23

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ........................................................................................... 6

*Hadacheck v. Sebastian*,
  239 U.S. 394 (1915) ...................................................................................................... 16

*HAPCO v. City of Philadelphia*, Pennsylvania law regulates security deposits, eviction
  procedures, notice requirements, retaliatory eviction, rent withholding, fair housing practices,
  and numerous other aspects of the landlord-tenant,
  relationship. 482 F. Supp. 3d 337 (E.D. Pa. 2020) ................................................... 20, 21

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*,
  452 U.S. 264 (1981) ................................................................................................. 16

*In re Schering,*
  *Plow*, 678 F.3d ..................................................................................................... 6

*Ituah v. City of Philadelphia*,
  No. CV 19-05088, 2020 WL 1470808 (E.D. Pa. Mar. 26, 2020) ............................ 26

*Keystone Bituminous Coal Ass'n v. Duncan*,
  771 F.2d 707 (3d Cir.1985) .................................................................................... 22

*Kramer v. W.C.A.B. (Rite Aid Corp.)*,
  883 A.2d 518 (Pa. 2005) ........................................................................................ 25

*League of Women Voters of Pa. v. Com.*,
  683 A.2d 685 (Pa. Cmwlth. 1996) .......................................................................... 10

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005) ............................................................................................... 15

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978) ............................................................................................... 26

*Muncy Creek Twp. Citizens Comm. v. Shipman*,
  573 A.2d 662 (Pa. Cmwlth. 1990) ............................................................................ 8

*Nekrilov v. City of Jersey City*,
  45 F.4th 662 (3d Cir. 2022) ............................................................................. Passim

*Neu v. Millcreek Twp. Bd. of Sch. Directors*,
  349 A.3d 1070 (Pa. Cmwlth. 2025) ........................................................................ 26

*Nicholas v. Pa. State Univ.*,
  227 F.3d 133 (3d Cir. 2000) .................................................................................. 23

*Nieves v. Hess Oil Virgin Islands Corp.*,
  819 F.2d 1237 (3d Cir. 1987) ................................................................................ 22

*Pace Res., Inc. v. Shrewsbury Twp.*,
  808 F.2d 1023 (3d Cir. 1987) ................................................................................ 17

*Penn Central Transportation Co. v. New York City*,
  438 U.S. 104 (1978) .......................................................................................... 15, 18

*Pennsylvania Game Comm'n v. Marich*,
  666 A.2d 253 (Pa. 1995) ........................................................................................ 23

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .................................................................................. 6

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*,
  467 U.S. 717 (1984) ............................................................................................... 23

*Personnel Adm'r of Mass. v. Feeney*,
  442 U.S. 256 (1979) ............................................................................................... 24

*Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*,
  908 F. Supp. 2d 597 (M.D. Pa. 2012) ..................................................................... 25

*R. v. Com., Dept. of Public Welfare*,
  636 A.2d 142 (Pa. 1993) ........................................................................................ 23

*Rogin v. Bensalem Twp.*,
  616 F.2d 680 (3d Cir. 1980) .............................................................................. 16, 18

*Sammon v. N.J. Bd. of Med. Exam'rs*,
  66 F.3d 639 (3d Cir. 1995) .................................................................................... 23

iv

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ............................................................................... 6
*Shelley v. Wilson*,
  339 F. App'x 136 (3d Cir. 2009) ......................................................................... 2
*Sveen v. Melin*,
  584 U.S. 811 (2018) ......................................................................................... 19
*Transp. Workers Union of Am., Local 290 v. SEPTA*,
  145 F.3d 619 (3d Cir. 1998) ............................................................................ 20
*Travelers Indem. Co. v. Dammann & Co.*,
  594 F.3d 238 (3d Cir. 2010) ............................................................................ 27
*Troy Ltd. v. Renna*,
  727 F.2d 287 ........................................................................... 17, 18, 21, 22
*Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*,
  962 A.2d 653 (Pa. 2009) .................................................................................. 23
*United States Trust Co. v. New Jersey*,
  431 U.S. 1 (1977) ......................................................................................... 19, 21
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ......................................................................................... 24
*Wimbush v. City of Philadelphia*,
  No. CV 16-05783, 2017 WL 1355174 (E.D. Pa. Apr. 13, 2017) ............................................. 26

Statutes

3 Pa. C.S. § 16257 ................................................................................................ 26
65 Pa. C.S. 703 ..................................................................................................... 8
65 Pa. C.S. 704 ................................................................................................ 8, 10
65 Pa. C.S. § 710.1(a) ..................................................................................... 8, 9, 10
Article 1, Section 1 of the Pennsylvania Constitution ........................................................ 23
Article I, Section 26 of the Pennsylvania Constitution .................................................... 24, 25
Article I, Section I of the Pennsylvania Constitution ........................................................ 23
Section 710.1 ........................................................................................................ 9

Rules

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 13
Fed. R. Civ. P. 12(b)(6) ............................................................................... 6, 7, 12, 13
Federal Rule of Civil Procedure 15(a)(1) ...................................................................... 27

Other Authorities

*Tr.* at 181 ......................................................................................................... 4

## I.    INTRODUCTION

Plaintiffs are two individuals who claim to be small landlords and oppose two recent Bills passed by Philadelphia's City Council and signed into law by the Mayor. These Bills provide greater protections for all of Philadelphia's residential tenants and are meant to help protect tenants from unsafe and unhealthful housing. Plaintiffs bring two procedural challenges to the enactment of the Bills and a long list of substantive challenges. For the reasons stated below, Plaintiffs fail to state claims on any grounds. Their Second Amended Complaint lacks the necessary factual allegations and fails to identify any law that would invalidate the new protections. The Bills will become effective November 1, 2026, a time when the residents of Philadelphia can look forward to a more fair and equitable rental landscape in Philadelphia.

## II.    BACKGROUND[1]

### A.  Procedural and Factual History

Plaintiffs Seth Floyd and Erica Hadley are African American owners and operators of residential rental properties within the City of Philadelphia. 2d Am. Compl. ("SAC") (ECF No. 21) ¶¶ 4, 5. Plaintiffs assert that they are adversely impacted by two ordinances passed by City Council that are the subject of this case—Bill Nos. 250329-AA and 250330-AA (the "Bills"). *Id.* ¶¶ 4, 5, Exs. A, B.

Under Philadelphia's Home Rule Charter, before City Council can vote on potential legislation, that legislation must be "referred to a committee, considered at a public hearing, reported by the committee, printed as reported, and distributed to the members of the Council and made available to the public." Phila. Charter § 2-201.

---

[1] For purposes of this Motion to Dismiss only, Defendants take the facts as pled to be true.

In accordance with this provision, on April 10, 2025, Councilmember Nicolas O'Rourke introduced the Bills—which proposed expanded protections for residential tenants in Philadelphia—into Philadelphia City Council.[2] The Bills were then referred to Council's Committee on Housing, Neighborhood Development and the Homeless (the "Committee") for a hearing. *See supra* note 2*; see also* SAC ¶ 7. The Committee is composed of six members: Chair Jamie Gauthier, Vice Chair Rue Landau, and Councilmembers Cindy Bass, Mark Squilla, Michael Driscoll, and Curtis Jones, Jr. *See Standing Committees - Philadelphia City Council* (Nov. 24, 2025 2:26 PM), https://phlcouncil.com/standing-committees/ .

As the Bills worked their way through the legislative process, City Council and the Committee held multiple public hearings on the Bills. SAC ¶ 67. The Second Amended Complaint contains virtually no detail regarding these multiple hearings and the various steps in the legislative process. *See* SAC ¶¶ 67—89 (conclusory allegations regarding alleged irregularities at unspecified public hearings). Nonetheless, the extensive legislative history of the Bills, including public notices, transcripts, video recordings, and agendas, is a matter of public record and is appropriate for the Court to consider at the Motion to Dismiss stage. *See e.g.*, *Shelley v. Wilson*, 339 F. App'x 136, 137 n.2 (3d Cir. 2009). A brief summary of that legislative history is provided below, along with citations to the public record. As appropriate, reference will be made to City Exhibits A and B attached hereto, which are publicly available "Legislation

---

[2] The legislative history of the Bills is available on City Council's website ("Legistar") at the following publicly available addresses:

Bill 250329: https://phila.legistar.com/LegislationDetail.aspx?ID=7300048&GUID=5FA005B6-47E9-4FED-8F94-4661BD604D22&Options=ID|Text|&Search=250329.

Bill 250330: https://phila.legistar.com/LegislationDetail.aspx?ID=7300049&GUID=52D840F2-9545-44B8-9C3F-6A985532E5FC&Options=ID|Text|&Search=250330.

Details" reports for Bill 250329 (City Ex. A) and Bill 250330 (City Ex. B).[3]  As is evident from reviewing City Exhibits A and B, the Bills moved through the legislative process simultaneously.

On March 4, 2026, the Committee held the first hearing on the Bills.City Exs. A and B. During the hearing, amended versions of the Bills were introduced for votes and were favorably reported out to the full Council for consideration. *Id.*. The Committee also received public comment.[4]

On March 18, 2026, Plaintiffs Seth Floyd and Erica Hadley filed a complaint and emergency petition for preliminary injunction against Defendants City Council and the Committee in the Philadelphia Court of Common Pleas, alleging violations of Pennsylvania's Sunshine Act and Philadelphia's Home Rule Charter stemming from the March 4, 2026 hearing. ECF 8-1 at 7 ¶23.[5] That day, the parties resolved Plaintiffs' injunction petition via a stipulation, which provided that City Council would refer the Bills back to the Committee for a new hearing, which would comply with the Sunshine Act and Charter. ECF No. 8-1 at 23 (Mar. 18, 2026 Stipulated Order).

---

[3] These documents are available through Legistar, or at the following addresses:

Bill 250329:
https://phila.legistar.com/ViewReport.ashx?M=R&N=Master&GID=30&ID=7300048&GUID=5FA005B6-47E9-4FED-8F94-4661BD604D22&Extra=WithText&Title=Legislation+Details+(With+Text)

Bill 250330:
https://phila.legistar.com/ViewReport.ashx?M=R&N=Master&GID=30&ID=7300049&GUID=52D840F2-9545-44B8-9C3F-6A985532E5FC&Extra=WithText&Title=Legislation+Details+(With+Text)

[4] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 1-226 (Mar. 4, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/1768650?docType=30&FileName=COMMITTEE_ON_HOUSING_NEIGHBORHOOD_DEVELOPMENT_AND_THE_HOMELESS_030426_Full_Pdf%20(002).pdf

[5] Pinpoint citations to ECF documents are to the ECF system pagination.

Consistent with the Stipulated Order, on March 19, 2026, City Council voted to refer the Bills back to the Committee. *See* note 1, *supra*. On March 30, 2026, the Committee held its second public hearing on the Bills. *See* Committee, *Public Hearing Notice.*[6] On that date, the Committee received public comment on the Bills, including from both Plaintiffs, after which it voted to favorably report the Bills to the full Council.[7] All six members of the Committee were present at the beginning of the hearing and for the vote to favorably report the Bills back to the full Council at the end of the hearing.[8] Less than a quorum of the Committee (*i.e.*, fewer than 4 members) was present during portions of the public comment period held prior to the vote. SAC ¶¶ 82, 83, Ex. C. The Bills were not amended during the March 30 hearing. *See March 30 Tr.* at 181.

On April 16, 2026, the full City Council held a meeting where it considered the Bills as reported from the Committee along with additional amendments and public comment.[9] A quorum of Council was present throughout the entirety of the meeting, including public

---

[6] *Available at* https://phila.legistar.com/View.ashx?M=A&ID=1402609&GUID=51CC5F54-1764-401F-B4FD-D6A325CC0645

[7] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 78-81, 87-90, 180-83 (Mar. 30, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4120756?docType=30&FileName=COMMITTEE_ON_HOUSING_NEIGHHOOD_DEV_%26_THE_HOMELESS_033026.pdf.

[8] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 179-185 (Mar. 30, 2026) [hereinafter *March 30 Tr.*], *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4120756?docType=30&FileName=COMMITTEE_ON_HOUSING_NEIGHHOOD_DEV_%26_THE_HOMELESS_033026.pdf.

[9] *Stated Meeting of the Council of the City of Philadelphia* at 61-142, 161-66 (Apr. 16, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/5184948?docType=30&FileName=STATED_MEETING_041626.pdf

comment.[10] On April 23, 2026, Council again considered the Bills, accepted more public comment, and ultimately voted to approve the Bills.[11] A quorum of Council was present throughout the entirety of the meeting, including public comment.[12] The Mayor signed the Bills into law on May 7, 2026, and they will become effective November 1, 2026. *See supra* note 2.

### B.  Provisions of the Bills

The Bills provide greater protection for residential tenants. First, Bill 250329 amended Title 9 of the Philadelphia Code to require that landlords alert their tenants to certain provisions of the law. Additionally, landlords are required to notify their tenants of certain building code violations. The Bill also expands the remedies available to a tenant who prevails in certain legal actions, while providing new "safe harbor" protections against certain private lawsuits brought against landlords. Other changes to the law are also provided in the text of the Bill. SAC Ex. A.

Bill 250330 also amended Title 9 of the Philadelphia Code. The Bill provides protections for tenants who join a tenants' rights organization, and extends the "good cause" requirements for terminating a tenancy for residential leases of less than a year to all residential leases. Additionally, the Bill includes detailed language on the Right to Habitability and protection from retaliation. Other changes to the law are also provided in the text of the Bill. SAC Ex. B.

Both Bills become effective November 1, 2026. *See* SAC, Ex. A at 10 Section 3, Ex. B at 11 Section 3.

---

[10] In addition to the transcript, video of the meeting is available at *https://www.youtube.com/watch?v=jHVTEDwCBhE*

[11] *Stated Meeting of the Council of the City of Philadelphia* at 59-148, 163-71(Apr. 23, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4695606?docType=30& FileName=STATED_MEETING_042326.pdf

[12] In addition to the transcript, video is available at https://www.youtube.com/watch?v=ZW9ROvBWwSM

### III.    LEGAL STANDARD

Under Rule 12(b)(6), the Court should dismiss an action on a motion made before a responsive pleading is filed when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts undertake a three-step analysis in ruling on a motion to dismiss pursuant to Rule 12(b)(6):

> **First**, the court must tak[e] note of the elements a plaintiff must plead to state a claim. **Second**, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. **Finally**, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*In re Schering Plow*, 678 F.3d at 243 (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)) (emphasis added) (internal quotation marks omitted).

A complaint must "show" its "entitlement" to relief "with its facts." *Id.* at 244 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)). The Court may also consider matters of public record such as legislative history, judicial documents, "letter decisions of government agencies, . . . and published reports of administrative bodies," where "the public ha[s] unqualified access to all of the documents at issue." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) (internal quotation marks and citations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (stating that a Complaint must contain something more than "naked assertion[s]" devoid of "further factual enhancement.").

6

## IV.    ARGUMENT

All nine of Plaintiffs' Counts fail to plead sufficient facts to state a claim under the law, and should be dismissed pursuant to FRCP 12 (b)(6). Plaintiffs do not identify any procedural deficiencies in the passage of the bills to sustain their first two counts. Indeed, Plaintiffs barely identify any specific legislative acts at all in their Complaint, let alone procedurally improper ones. Counts three through nine purport to attack the substantive aspects of the Bills, but fail to support their allegations or plead sufficient facts to support their claims. Moreover, the text of the Bills demonstrates that there are no proper legal challenges to bring. This is the third complaint brought by Plaintiffs in this lawsuit and any further amendment would be futile. Therefore, the Complaint should be dismissed in full with prejudice.

### A.  No Sunshine Act Violation Occurred (Count 1)

Plaintiffs' allegations regarding procedural irregularity are conclusory and are insufficient to establish a violation of the Sunshine Act. While difficult to parse, Plaintiffs' pleadings regarding the Sunshine Act seem to boil down to two allegations: (1) members of City Council and/or the Committee had private substantive discussions regarding the Bills; and (2) Plaintiffs were deprived of a meaningful opportunity to provide public comment because they were given inadequate notice of proposed amendments and because less than a quorum of the Committee was present for public comment at the March 30 Committee hearing. These allegations fail to state a claim for violation of the Sunshine Act.

With respect to the alleged private substantive discussions regarding the Bills, the Second Amended Complaint states that "Defendants engaged in substantive deliberations concerning the challenged legislation outside publicly noticed meetings" and "formulated and revised amendments outside public view." SAC ¶ 123. But the Sunshine Act does not require that all substantive discussion or deliberations happen at a public meeting. Rather, the Sunshine Act

7

expressly requires that "deliberations *by a quorum* of the members of an agency shall take place at a meeting open to the public." 65 Pa. C.S. 704 (emphasis added).[13] Plaintiffs do not allege that a *quorum*[14] of the Committee's or City Council's members privately gathered, much less that they deliberated agency business in private. And the Sunshine Act does not prohibit individual legislators or groups of less than a quorum from meeting with interested parties and discussing pending legislation with them. *See Muncy Creek Twp. Citizens Comm. v. Shipman*, 573 A.2d 662, 664 (Pa. Cmwlth. 1990) ("[t]here was not a quorum of the three [township] supervisors present [at purported private meeting], thus, no requirement that their discussions take place at a meeting open to the public"). As a result, Plaintiffs' claims regarding deliberation and private meetings are insufficient to establish a Sunshine Act violation.

Plaintiffs' other Sunshine Act allegations appear to be premised on the Sunshine Act's requirement that "the board or council of a political subdivision . . . shall provide a reasonable opportunity at each advertised regular meeting and advertised special meeting for residents . . . to comment on matters of concern, official action or deliberation which are or may be before the board or council prior to taking official action." 65 Pa. C.S. § 710.1(a). The Second Amended Complaint asserts that less than a quorum of the Committee was present during portions of public comment at the March 30 Committee meeting and that "Defendants . . . failed to disclose the operative legislative language before Committee action, and denied Plaintiffs and other

---

[13] The Sunshine Act defines deliberation as "[t]he discussion of agency business held for the purpose of making a decision." 65 Pa. C.S. 703.

[14] A quorum is a majority of the agency—here, the Committee has six members, so a quorum is four. *See* Phila. City Council Res. No. 200001-A ("Rules of City Council) at 12 § IV, ¶ 4, *available at* https://phlcouncil.com/wp-content/uploads/2020/07/Rules-of-Council.pdf ("4. A quorum for a committee hearing or meeting shall consist of a majority of all the members of the committee and a quorum must be present at any meeting at the time a vote is taken."). City Council has 17 members, Phila. Charter § 2-100; therefore a quorum of City Council is 9 members.

residents a meaningful opportunity to comment before official action was taken." SAC ¶¶ 81, 123.

The breaking of quorum during public comment at the March 30 Committee hearing is not a Sunshine Act violation for four reasons. First, the Sunshine Act's requirement to allow for public comment *only* applies to the governing board or council of the political subdivision, *i.e.,* City Council; it does not apply to other bodies considered as "agencies" under the Sunshine Act, such as the Committee. *See* 65 Pa. C.S. § 710.1(a) ("*[T]he board or council of a political subdivision* . . . shall provide a reasonable opportunity at each advertised regular meeting and advertised special meeting for residents . . . to comment on matters of concern, official action or deliberation which are or may be before the board or council prior to taking official action." (emphasis added)). This is in marked contrast to the other provisions of the Act, which apply to all agencies (which includes committees). *See, e.g.*, *id.* § 705 (requiring public voting "[i]n all meetings of agencies"); *id*. § 706 (requiring that "[a]n agency shall give public notice of its first regular meeting"). And use of the word "the" before "board or council" suggests it applies to a singular entity of the City and, indeed, the Pennsylvania Supreme Court has confirmed this provision requires "public participation before a board or council proper." *Alekseev v. City Council of City of Philadelphia*, 8 A.3d 311, 314 (Pa. 2010). There is only one governing "board or council of" the City of Philadelphia: Philadelphia City Council. By its plain text, in Philadelphia the public comment requirement only applies to City Council meetings, not meetings of its committees. Thus, even if the Committee had not provided for a period of public comment on March 30, 2026 at all, it would not have violated the Sunshine Act.

Second, Section 710.1 does not require a quorum. Section 710.1 makes no reference to a quorum at all—instead, it only requires that the board or council offer a "reasonable opportunity"

9

for residents to make comments prior to taking official action. 65 Pa. C.S. 710.1(a). The fact that no quorum is required for public comment is reinforced by Section 704, which in contrast specifically says that a quorum is required for "official action and deliberations." 65 Pa. C.S. § 704. Thus, failure to maintain quorum throughout public comment does not violate the Sunshine Act.

Third, even though not required by the Sunshine Act, the Committee *did* provide a reasonable opportunity for public comment at the hearing. In addition to accepting written comments, the Committee received live verbal comment for nearly three hours—including from both Plaintiffs. *See* note 7, *supra, cf. SAC ¶ 83*. And those comments were memorialized in the transcript of the hearing, which is publicly available. *See id.*

Fourth, Defendants provided additional public comment sessions without breaking quorum at two subsequent meetings of the full Council that not only satisfied the Sunshine Act but cured any earlier alleged violation. *See Ass'n of Cmty. Orgs. for Reform Now v. Se. Pa. Transp. Auth.*, 789 A.2d 811, 813 (Pa. Cmwlth. 2002) (holding any potential violation due to SEPTA board members' meeting to discuss proposed fare increase was cured by later public meeting, after which fare increase was formally adopted); *League of Women Voters of Pa. v. Com.*, 683 A.2d 685, 690 (Pa. Cmwlth. 1996) (holding any violation arising out of General Assembly conference committee's closed-door meeting(s) that resulted in "extensive report" on proposed legislation was cured at subsequent open meeting where committee took official action). On April 16, 2026, the full City Council held a meeting where it considered the Bills as reported from the Committee. Council accepted public comment and also subsequently approved

10

amendments to the Bills.[15] Second, on April 23, 2026, Council again considered the Bills as now amended, accepted more public comment, and ultimately voted to approve the Bills.[16] A quorum was maintained throughout the public comment period at both of these meetings.[17]

Finally, Plaintiffs' vague allegation that they received inadequate notice of potential amendments is insufficient to state a violation of the Sunshine Act and is belied by the public legislative record of the Bills. Nothing in the Sunshine Act prohibits proposed legislation from being amended during public meetings. Moreover, the legislative record shows that Plaintiffs and other members of the public had ample notice and opportunity to comment regarding each version of the Bills as they made their way through the legislative process: At the March 30 Committee hearing, the Bills were not amended and the public had an opportunity to comment on the text of the Bills as noticed. *See City Exs. A and B*. At the April 16 City Council meeting, the Bills were amended and the public had another opportunity to comment on the Bills. *Id*. At the April 23 City Council meeting, the Bills were not further amended, the public had an opportunity to comment on the text of the Bills as noticed, and Council voted to pass the Bills. *Id.*

---

[15] *Stated Meeting of the Council of the City of Philadelphia* at 62-142 (Apr. 16, 2026) (Transcript), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/5184948?docType=30&FileName=STATED_MEETING_041626.pdf

[16] *Stated Meeting of the Council of the City of Philadelphia* at (Apr. 23, 2026) (Transcript), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4695606?docType=30&FileName=STATED_MEETING_042326.pdf

[17] *See Stated Meeting of the Council of the City of Philadelphia* (Apr. 16, 2026) (Video), https://www.youtube.com/watch?v=jHVTEDwCBhE&t=8197s; *Stated Meeting of the Council of the City of Philadelphia* (Apr. 23, 2026) (Video), www.youtube.com/watch?v=ZW9ROvBWwSM.

For all of these reasons, Count I of the Second Amended Complaint should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

## B. No Home Rule Charter Violation Occurred (Count 2)

Plaintiffs assert a violation of the Philadelphia Home Rule Charter, specifically, Section 2-201, by City Council. SAC ¶¶ 136-153. Here again, Plaintiffs fail to state a claim, in this instance because their claim lacks sufficient specificity and because the public record demonstrates compliance with the Home Rule Charter in all respects.

*Plaintiffs' allegations are impermissibly vague*

To begin with, Plaintiffs assert a violation of the Home Rule Charter, but never describe with specificity what action they challenge, or on what grounds. As described *supra* in Section II(A), the Bills passed through both the full City Council and the Committee twice each, being acted upon on a total of 10 different dates. Likewise, there were 7 amendments of each bill before final passage. Plaintiffs do not specify which action, specific amendment, procedural vote, or passage, whether by the Committee or by the full City Council, they claim violated the Home Rule Charter. The only allegations provided are merely conclusory statements that do not allow Defendants to know the claims against them. For example, in paragraph 143 of their Second Amended Complaint, Plaintiffs state that "Defendants materially amended the challenged legislation without first printing and making the operative amendments available to Council members, Plaintiffs, and the public . . . ." But which amendment is addressed in the paragraph is never specified. They further allege that Defendants "proceeded to Committee action on legislative language that had not been disclosed in the manner required by the Charter." SAC ¶ 144. But as Plaintiffs know, the Committee considered the legislation twice, and which action is complained of is unknown to Defendants.

12

Plaintiffs' allegations in the body of the Complaint offer no more information. Despite the assertion in paragraph 143 of facts "alleged herein," the only two paragraphs addressing amendment state that "Plaintiffs further allege that material amendments affecting the challenged legislation were not made publicly available in sufficient time to permit meaningful public review before legislative action occurred." SAC ¶ 85. And the following paragraph states "Plaintiffs further allege that members of the public were not afforded a meaningful opportunity to review and comment upon the operative legislative language before Defendants proceeded toward enactment." SAC ¶ 86.

A review of Plaintiffs legal allegations does little to illuminate the matter. Plaintiffs only cite Section 2-201, without specifying which of its 7 subsections are implicated. SAC ¶¶ 140, 143, and Wherefore clause (a).

Therefore, Defendants can only guess at the factual and legal allegations being asserted by Plaintiffs in Count 2. This falls short of the legal requirement for stating a claim because under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a complaint fails to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6) permits dismissal of the complaint. When considering such a motion, the Court examines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is insufficient to allege "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Put differently, the Court should not credit a plaintiff's "bald assertions" or "legal conclusions." *Anspach v. City of Phila.*, 503 F.3d 256, 260 (3d Cir. 2007).

13

Here, although Plaintiffs have access to the extensive and authoritative public record, they have failed to identify precisely which action or amendment they allege violates any particular requirement of the Home Rule Charter. Despite this being the third Complaint in this matter, filed about 4 months after the original complaint, Plaintiffs have included nothing other than bald assertions of "deficiencies" and legal conclusions of "failures." For that reason, Count 2 should be dismissed.

*The Defendants Complied With the Home Rule Charter*

Without legally sufficient and particular allegations, Defendants are left to guess what the allegations are against them. With that said, Plaintiffs make reference to amendments without "first printing" notice. ECF filing 21 at ¶ 143. This is as close to a particular allegation as is included in the Second Amended Complaint, and so will be addressed herein.

Home Rule Charter section 2-201(2) says in full that (2) "Before a bill shall be considered by the Council it shall be referred to a committee, considered at a public hearing, reported by the committee, printed as reported, and distributed to the members of the Council and made available to the public." Section 2-201(3) says in relevant part that (3) "Bills amended shall be printed as amended for the use of the members of the Council and for the information of the public."

There is no allegation in the Plaintiffs' Second Amended Complaint that these required "printings" did not occur.  At all times, Plaintiffs had access to Legistar, described *supra* in Section II(A). There is no allegation that either of the Bills was amended, but not published and available to the public through the Legistar website that is equally available to everyone. As the publicly-available transcript shows, the Bills were amended at public meetings and then those amendments were provided to the public as required by the Home Rule Charter.

14

It is particularly important to focus on the bill as it was finally amended. As the public record shows, the Bills were passed out of Committee on March 30, 2026, read at the April 9, 2026 meeting of the full City Council, then amended by City Council on April 16, 2026, and finally passed on April 23, 2026. Per the Philadelphia Home Rule Charter, the Bills could not be passed (and were not passed) on the same day that an amendment occurred, meaning that the Public would always have an opportunity to come to Council and give comment on the final version of the Bills before they were passed. Phila. Charter § 2-201(4).   There is no allegation in the Second Amended Complaint of a particular fault or deficiency that violated the Home Rule Charter in this legislative sequence.

Thus, no violation of the Home Rule Charter is pleaded, because the publicly-available documents demonstrate that none occurred. For this reason as well, Count 2 should be dismissed.

### C.  The Bills Do Not Constitute a Regulatory Taking (Count 3)

Plaintiffs assert that the Bills "[c]ollectively" constitute a regulatory taking under the Fifth and Fourteenth Amendments, but every factor of the legal test for such a taking weighs against them. "[R]egulatory takings challenges are governed by the standards set forth in *Penn Central Transportation Co. v. New York City,* 438 U.S. 104 (1978)." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). These include "'[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations[,]" and "the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lingle*, 544 U.S. at 538-39 (quoting *Penn Central*, 438 U.S. at 124). While the complaint alleges the Bills will impose increased costs, it fails to identify any nonspeculative negative economic impact or the violation of any reasonable, distinct investment-backed

15

expectation, and the Bills are classic public policy regulations adjusting the benefits and burdens of property ownership citywide.[18]

### 1. Plaintiffs Fail to Allege Any Concrete Economic Impact

The economic impact of a regulation "is usually measured in terms of its effect on the value of the property." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 673 (3d Cir. 2022); *see also Rogin v. Bensalem Twp.*, 616 F.2d 680, 690 (3d Cir. 1980) ("[U]nless application of the law destroys or severely diminishes the value of the property, the Court will uphold the application."). The bar for diminution in property value is high; the Supreme Court has held that decreases up to 87% may not be sufficient for a takings claim. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365, (1926) (75% diminution); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 (1915) (87% diminution in value). Speculative projections of future profitability are insufficient as "loss of future profits—unaccompanied by any physical property restriction—provides a slender reed upon which to rest a takings claim." *Andrus v. Allard*, 444 U.S. 51, 66 (1979); *see also Nekrilov*, 45 F.4th at 674 (holding specific allegations of reduced rental revenue of approximately 50% and 66% based on specific revenue estimates were insufficient to plausibly allege the economic impact required for a regulatory taking)

Here, beyond a conclusory allegation of "diminished property value," plaintiffs identify no appraisal, market analysis, or other factual allegations suggesting that the Bills have significantly reduced the market value of their properties. *See* SAC ¶ 178. They provide no

---

[18] At the outset, we note that Plaintiffs have not even alleged what properties they own, how many are rented or affected by the Bills, or other specific factual information necessary to support a takings claim. *See, e.g.*, *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 295 (1981) (noting *Penn Central*'s "'ad hoc, factual inquir[y]' must be conducted with respect to specific property" because of the need to examine "the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances")

estimate of lost income, diminution in property value, or effect on the viability of their properties as investments.  Nor do they allege that the properties can no longer be leased, occupied, or sold. *See id.* ¶¶ 161-164. Instead, the Complaint mainly alleges that compliance with the Bills may increase the costs of operating rental housing and delay the realization of rental income. *See id.* Those conclusory claims of increased compliance costs are entirely contingent upon future events that may never occur, including tenant disputes, housing-code violations, and future eviction proceedings. Those allegations, even if true, do not plausibly establish the type of concrete economic impact contemplated by *Penn Central*. *See Nekrilov*, 45 F.4th at 674.

Plaintiffs' allegations also fail to account for the continued economic uses and value of their properties. *See Nekrilov*, 45 F.4th at 673.  (noting takings claim must consider "other potentially profitable uses of the properties, the most obvious of which is to sell the properties." Here, the Bills do not prevent Plaintiffs from retaining ownership of their properties, living in them, selling them, or continuing to use them as rental housing or other purposes. At most, Plaintiffs allege that the Bills affects one aspect of the economic benefits associated with ownership. Such an allegation is insufficient to establish a regulatory taking. *See Andrus v. Allard*, 444 U.S. 51, 65 (1979) (noting destruction of one "strand" of the bundle of property rights cannot be considered a taking).

### 2. Plaintiffs Have No Reasonable, Distinct Investment-Backed Expectations

The second *Penn Central* factor considers the extent to which a regulation interferes with a property owner's reasonable, distinct investment-backed expectations. Such expectations are reasonable only insofar as they "take into account the power of the state to regulate in the public interest." *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1033 (3d Cir. 1987). As the Third Circuit noted in *Troy Ltd. v. Renna*, 727 F.2d 287, the Supreme Court has upheld housing regulations limiting a landlord right to recover against holdover tenants and a regulation giving

17

tenants a right of continued occupation after expiry of the lease. *Troy Ltd. v. Renna*, 727 F.2d 287, 302 (3d Cir. 1984) (collecting cases). Though they involved "cost to the owner", these regulations were not deemed takings. *Id.*

Plaintiffs do not allege they have any distinct investment backed expectations that are violated by the Bills—no mortgages contingent on any-cause eviction or the ability to retaliate against tenants. And they certainly could not have any reasonable expectations that the City would not continue to regulate the landlord-tenant relationship, as many of the rent-withholding provisions depend on existing legal rules and the City added the good-cause eviction requirement for short-term tenancies in 2019. *See* Phila. Code § 9-804(12) (codifying Bill No. 170854-A enacted January 2019). As such, Plaintiffs' taking claim also fails to plausibly allege any sufficient investment-backed expectations.

### 3. The Character of the Government Action Weighs Against Finding a Regulatory Taking

The final *Penn Central* factor examines the character of the governmental action. Physical intrusions raises more concern than "public program[s] adjusting the benefits and burdens of economic life to promote the common good." *Nekrilov*, 45 F.4th at 677 (quoting Penn. Cent., 438 U.S. at 124). Regulations of general applicability are less likely to constitute compensable takings than those singling out particular property owners. *Rogin v. Bensalem Twp.*, 616 F.2d 680, 690 (3d Cir. 1980).

The Bills here bear all the hallmarks of the type of generally applicable economic regulation contemplated by *Penn Central.* They establish generally applicable rules governing the landlord-tenant relationship throughout the City's residential rental market. Plaintiffs themselves recognize their broad scope by comparing how "institutional landlords" might absorb the resulting costs, thus conceding that the Bills do not only operate on some "small class." SAC

18

¶¶ 163, 174. And Plaintiffs acknowledge the City's legitimate goal of promoting affordable housing and protecting "tenant health, safety, and housing stability." *Id.* ¶ 176.  Because the Bills are generally applicable regulations that do not physically intrude, the character of the government action here also does not support a takings claim.

*     *     *

Count Three fails to plausibly allege any facts necessary to find any of the *Penn Central* factors support a takings claim, let alone all three. Thus, Plaintiffs' Takings claim must be dismissed as a matter of law.

### D. The Bills Do Not Violate the Contracts Clause (Count 6)

Plaintiffs' Contracts Clause claim fails to state a claim for several reasons. First, Plaintiffs have not alleged facts to a cognizable impairment of any of their contracts. Second, even if the Bills could significantly impair some contract, they serve significant and legitimate public purposes sufficient to satisfy Contracts Clause review, particularly because the City is not a party to any affected contract.

To determine if a law violates the Contracts Clause, courts perform a three-step inquiry. First, the Court asks whether the challenged law "has operated as a substantial impairment of a contractual relationship." *Sveen v. Melin*, 584 U.S. 811, 819 (2018). If so, the Court considers whether the law serves a significant and legitimate public purpose and is drawn in an "appropriate" and "reasonable" manner. *Id*. Where, as here, the government is not itself a party to the affected contracts, and the regulation is an "economic and social" one, courts will defer to the legislature's judgment concerning the necessity and reasonableness of the regulation. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22–23 (1977).

19

**1. Plaintiffs Have Not Alleged a Substantial Impairment of Existing Contracts**

Under the first prong, the Court must determine "(1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." *Transp. Workers Union of Am., Local 290 v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998). If there has been an impairment, courts then determine where it is substantial by looking to the party's "legitimate expectations that arise from such contractual relationships" and whether they "have been substantially thwarted." *Id.* at 622. In weighing reasonable expectation, the Third Circuit has recognized that when a party enters an industry that is regulated in a particular manner, it is entering subject to further legislation in the area, and changes in the regulation that may affect its contractual relationships are foreseeable. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 369 (3d Cir. 2012) (holding that a retroactive change to presumptive abandonment for travelers checks did not violate the contracts clause).

Plaintiffs could not reasonably expect that the statutory framework governing residential landlord-tenant relationships would remain unchanged. Residential leasing has long been the subject of extensive state and local regulation. As the court explained in *HAPCO v. City of Philadelphia*, Pennsylvania law regulates security deposits, eviction procedures, notice requirements, retaliatory eviction, rent withholding, fair housing practices, and numerous other aspects of the landlord-tenant relationship. 482 F. Supp. 3d 337, 352 (E.D. Pa. 2020).

Indeed, in this case, the challenged legislation extends good cause protections that already exist for all leases for a term of less than one year.[19] Phila. Code § 9-804(12)(a). As to

---

[19] It is not clear Plaintiffs have even alleged any contractual impairment at all. Although they claim they have leases with terms that will be altered by the Bills, they do not attach the leases or cite any specific provisions of the Bills or those contracts. SAC ¶¶ 229-231. While the complaint

20

provisions allowing for the refund or withholding of rent, these prove substantially similar to provisions of the Pennsylvania's Rent Withholding Act, which "authorizes rent withholding where a local health department certifies a dwelling as unfit for human habitation." *HAPCO*, 482 F. Supp. 3d at 352. And it is already illegal under the Philadelphia code to collect rent without a rental license. Phila. Code § 9-302(1)(a). As in the Takings context, Plaintiffs' reasonable expectations are not frustrated by the City's additional regulations in already regulated market.

### 2. The Ordinance Serves a Significant and Legitimate Public Purpose

Even assuming Plaintiffs had adequately alleged a substantial impairment, their claim would still fail because the Bills serve a significant and legitimate public purpose. Legislatures must possess "broad power to adopt general regulatory measures without being concerned that private contracts will be impaired" as a result. *U.S. Tr. Co.*, 431 U.S. at 22. This latitude is required when addressing a legitimate public purpose, one that is "aimed at remedying a broad and general social or economic problem." *Nekrilov*, 45 F.4th at 679 (citation omitted).

The Bills address precisely those kinds of public concerns. In *Troy*, in upholding an expansion to statutory tenancy protections, the Third Circuit noted that there was "no question" as to the "broad remedial purpose in protecting the mental and physical health of citizens who could suffer greatly by evictions." *Troy Ltd.*, 727 F.2d at 298. Here, the City identifies the interests of protecting tenants from "unsafe, unfit, and imminently dangerous conditions" as well as retaliation and arbitrary displacement. SAC, Ex. A at 1-2, Ex. B at 1-2. Plaintiffs do not

---

generally objects to the Bills' provisions regarding good-cause eviction and bases for withholding rent where the landlord commits other legal violations, it is purely speculative that those provisions will be invoked during the remaining duration of any lease after the Bills become effective in November, six months after their passage.

contest the city's "legitimate interests in promoting housing stability and protecting tenants."
SAC ¶ 233.

### 3. The Ordinance Is a Reasonable and Appropriate Means of Advancing That Purpose

Finally, the Bills are reasonably tailored to advance those legitimate objectives. When the government is not itself a contracting party, courts "the courts should defer to the legislative judgment as to the reasonableness of the particular measure." *Keystone Bituminous Coal Ass'n v. Duncan*, 771 F.2d 707, 717 (3d Cir.1985); *see also Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1249 (3d Cir. 1987) ("Courts are required to defer to the legislature's judgment concerning the necessity and reasonableness of economic and social legislation.").

Here, the City is not a party to Plaintiffs' lease agreements. Consequently, its legislative judgment is entitled to substantial deference. As the Third Circuit explained in *Nekrilov*, courts should not second-guess legislative determinations concerning the appropriate means of addressing housing-related concerns where the government has identified a legitimate public purpose and selected reasonable regulatory measures to accomplish it. 45 F.4th at 680. Likewise, *Troy* emphasized that courts may not substitute their own policy judgments for those of the legislature when reviewing economic and social legislation regulating private contractual relationships. 727 F.2d at 298. While Plaintiffs may differ as to the wisdom of the Bills and their likely effects on the housing market, those policy disagreements are legally insufficient to invalidate the Bills.

*    *    *

Because Plaintiffs have failed to allege a substantial impairment of existing contracts, and because the Bills serve a significant public purpose through reasonable means entitled to judicial deference, Plaintiffs fail to state a claim under the Contracts Clause.

22

### E.  The Bills Have a Rational Basis and So Satisfy Substantive Due Process (Counts 4 and 7)

Plaintiffs' federal and state substantive due process claims in Counts Four and Seven[20] also fail to state a claim for relief because they do not claim the violation of a fundamental right and, as discussed above, the Bills have a rational basis. "In a case challenging a legislative act, as here, the act must withstand rational basis review." *Am. Express*, 669 F.3d at 366 (citing *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). Under rational basis review, courts "cannot second-guess the Legislature's factual assumptions or policy considerations that underlie the statute." *ACRA Turf Club, LLC v. Zanzuccki*, 724 Fed. App'x 102, 111 (3d Cir. 2018) (citing *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995). "It is enough that the State offers a conceivable rational basis for its action, and '[t]he court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack.'" *Am. Express*, 669 F.3d at 367 (citation omitted). "It is 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision . . . .'" *Id.* (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). The Supreme Court has recognized that review under the Contracts Clause is "more exacting than the rational basis standard applied in the due process analysis." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984).

---

[20] Claims under Article 1, Section 1 of the Pennsylvania Constitution follow the federal substantive due process analysis. *See Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009) ("In reviewing the constitutionality of an ordinance under Article 1, Section I of the Pennsylvania Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, we employ 'a substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power[.]'" (citation omitted)); *Pennsylvania Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995) ("As we have held that the requirements of Article I, Section I of the Pennsylvania Constitution are not distinguishable from those of the 14th Amendment, *R. v. Com., Dept. of Public Welfare,* 636 A.2d 142, 152–153 (Pa. 1993), we may apply the same analysis to both claims.").

For the reasons discussed above, the Bills serve legitimate public purposes and represent a reasonable means of advancing those objectives. Accordingly, Plaintiffs cannot plausibly allege that the Ordinance is arbitrary or irrational, and their substantive due process claim should be dismissed.

### F.  The Bills Do Not Violate the Equal Protections Clause (Counts 5 and 8)

Plaintiffs allege that the Bills deny them equal protection and enjoyment of rights under the Fourteenth Amendment and Article I, Section 26 of the Pennsylvania Constitution ("Section 26") in Counts V and VIII, respectively. But as Plaintiffs concede, the Bills are facially neutral and do not distinguish on the basis of race. SAC ¶ 208. And Plaintiffs allegations of disparate racial impact are not cognizable under either constitutional provision, which only impose liability where there is also discriminatory motive. Because Plaintiffs do not and could not allege that the Bills were passed to discriminate on the basis of race, and because the Bills satisfy rational basis review, Plaintiffs' discrimination claims fail.

To invoke strict scrutiny for a race discrimination claim, plausible factual allegations of "'racially discriminatory intent or purpose [are] required'" *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (quoting *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 194 (2003)); *see also id.* ("Intentional discrimination can be shown when[] . . . a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact[.]" (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 97 (1977)). "Discriminatory intent 'implies that the decision-maker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.'" *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)) (alteration in *Antonelli*). If heightened scrutiny does not apply, "[u]nder rational basis review, the challenged classification must be

24

upheld if it is 'rationally related to a legitimate state interest.'" *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 556 (3d Cir. 2011) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)). A Section 26 claim under the Pennsylvania Constitution utilizes the same standards as federal equal protection claims. *Kramer v. W.C.A.B. (Rite Aid Corp.)*, 883 A.2d 518, 532 (Pa. 2005) ( "In evaluating equal protection claims under the Pennsylvania Constitution, this Court has employed the same standards applicable to federal equal protection claims . . . ."); *see also Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 618 (M.D. Pa. 2012). Therefore, our analysis of Section 26 in Count Eight is subsumed in our discussion of Count Five and the federal equal protection clause.

As noted above, Plaintiffs concede the Bills are facially race neutral. SAC ¶¶ 208-209. Plaintiffs also do not allege that the Bills intentionally treat different groups differently. Instead, they claim that the Bills have a disparate impact because their "cumulative operation imposes foreseeable and disproportionate burdens upon African American small landlords, including Plaintiffs." *Id.* ¶ 209, *cf.* ¶ 264. But both the Equal Protection Clause and Section 26 require allegations that the laws were motivated by discriminatory intent—that they were passed "because of, not merely in spite of" race to invoke strict scrutiny. But the operative complaint does not contain any such allegations of racial motivation or even to treat different types of residential landlords differently. And as discussed above, Plaintiffs do not allege the Bills intentionally distinguish between groups on any other basis, and the Bills have a rational basis for imposing the costs Plaintiffs allege. *See supra* Parts IV.D-E. As a result, Plaintiffs' discrimination claims fail as a matter of law.[21]

---

[21] Plaintiffs discrimination claims also suffer from a fatal logical flaw. While they allege that the Bills disproportionately burden "small property owners" as compared to "institutional housing providers," they do not allege that that Bills impose greater burdens on small African American

### G. Plaintiffs Fail to State a *Monell* Claim (Count 9)

Plaintiffs have sued Philadelphia City Council and the Committee. SAC ¶¶ 6, 7. Plaintiffs have not named "the City of Philadelphia" as a defendant, but refer to the city as a Defendant in Count Nine, *see id.* ¶ 270, which seeks to impose liability under Section 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[22] But *Monell* liability requires some underlying violation of federal law, and since Count Nine contains no independent allegations of federal law violations, and Plaintiffs other federal claims fail as a matter of law, Count Nine does as well.

### H. Further Amendment Would Be Futile

Because Plaintiffs have already amended their complaint twice with no improvement of their deficient claims, further amendment would be futile and the Court should dismiss the Second Amended Complaint with prejudice. The determination to deny leave to amend is within the discretion of the trial court. *Budhun v. Reading Hops. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citation omitted). The Court may deny leave to amend when amendment "would be

---

landlords than other small landlords, or even that the majority of such "small" landlords to whom the Bills apply are African American like Plaintiffs. (SAC ¶¶ 209-213, 260-268).

[22] As a general rule, claims against City officials and bodies are properly brought against the City itself. *See, e.g., Wimbush v. City of Philadelphia*, No. CV 16-05783, 2017 WL 1355174, at *4 n.2 (E.D. Pa. Apr. 13, 2017) ("[T]he police department . . . cannot be sued apart from the City of Philadelphia itself."); *Ituah v. City of Philadelphia*, No. CV 19-05088, 2020 WL 1470808, at *3 n.3 (E.D. Pa. Mar. 26, 2020); *see also* 3 Pa. C.S. § 16257 (providing that municipal departments will no longer have "separate corporate existence[s], and hereafter all suits growing out of their transactions ... shall be in the name of the city of Philadelphia"). However, under Pennsylvania law, Sunshine Act claims are properly brought against the specific "entity" alleged to have committed the violation. *See Neu v. Millcreek Twp. Bd. of Sch. Directors*, 349 A.3d 1070, 1078-79 (Pa. Cmwlth. 2025).

In their amended complaints, Plaintiffs have added other types of claims that are only properly brought against the City itself without adding the City as a defendant. However, since non-Sunshine Act claims against a City body or department are tantamount to claims against the City, in the interest of judicial efficiency Defendants respond to Plaintiffs' claims on the merits as though they had properly named the City itself.

futile," *id.* (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)), including "if the [further] amended complaint would not survive a motion to dismiss for failure to state a claim," *id.* (citing *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010)).

Here, Plaintiffs have already used their amendment as of right pursuant to Federal Rule of Civil Procedure 15(a)(1). Plaintiffs have now had ample opportunity to plead their claims, yet the Second Amended Complaint only adds legally flawed claims, not relevant factual allegations. As argued *supra*, Plaintiffs fail to state claim. Thus, the Second Amended Complaint should be dismissed without further opportunity to amend.

## V.    CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court dismiss the Second Amended Complaint with prejudice.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Renee Garcia, City Solicitor

Date: August 4, 2026        By: */s/ William B. Shuey*
                            WILLIAM B. SHUEY (PA ID No. 208792)
                            Senior Attorney
                            MICHAEL PFAUTZ (PA ID No. 325323)
                            Deputy City Solicitor
                            Affirmative & Special Litigation
                            CITY OF PHILADELPHIA LAW DEPARTMENT
                            1515 Arch Street, 15th Floor
                            Philadelphia, PA 19102
                            Phone:  (215) 683-5233
                            *Counsel for Defendants*

27