**PEARSON LAW GROUP**
**By: Briana Lynn Pearson, Esquire Identification No. 327007**
**1500 Chestnut St. Suite 2 #2898**
**Philadelphia, PA 19102**
**Phone: 484-469-0322**
**Fax: 856-229-9991**
**Email: bpearson@pearsonlawgroup.org**

**Attorneys for Plaintiffs, *Seth Floyd and Erica Hadley***

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLOYD et al. | : | |
| | : | |
| v. | : | No. 2:26-cv-02403 |
| CITY COUNCIL FOR THE CITY OF | : | |
| PHILADELPHIA, et al. | : | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND DEPOSITIONS AND TO MODIFY THE SCHEDULING ORDER**

Plaintiffs Seth Floyd and Erica Hadley, by and through undersigned counsel, respectfully move this Court pursuant to Federal Rules of Civil Procedure 16, 26, 30, 33, 34, and 37 for an Order compelling Defendants to provide complete and individualized responses to Plaintiffs' outstanding written discovery, including appropriate identification under Rule 26(b)(5)(A) of responsive information withheld on a claim of privilege or protection; permitting the deposition of Cade Underwood to proceed as to discoverable matters; permitting Plaintiffs to complete the remaining necessary depositions and discovery; and modifying the October 23, 2026 discovery deadline for a reasonable period sufficient to complete outstanding discovery following resolution of the parties' discovery disputes. The grounds for this Motion are set forth fully in Plaintiffs' accompanying Memorandum of Law. Plaintiffs further certify that counsel made reasonable and good-faith efforts to resolve these disputes without Court intervention, as set forth in the

Certification of Counsel and the parties' correspondence attached collectively as Exhibit "A." A proposed Order is submitted herewith.

Respectfully submitted,
PEARSON LAW GROUP LLC

By: ______________________________

Briana Lynn Pearson, Esquire
Identification No. 327007
1500 Chestnut Street, Suite 2 #2898
Philadelphia, Pennsylvania 19102
Phone: 484 469 0322
Fax: 856 229 9991
bpearson@pearsonlawgroup.org
Attorney for Plaintiffs
Seth Floyd and Erica Hadley

August 24, 2026

**PEARSON LAW GROUP**
**By: Briana Lynn Pearson, Esquire Identification No. 327007**
**1500 Chestnut St. Suite 2 #2898**
**Philadelphia, PA 19102**
**Phone: 484-469-0322**
**Fax: 856-229-9991**
**Email: bpearson@pearsonlawgroup.org**

**Attorneys for Plaintiffs, *Seth Floyd and Erica Hadley***

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLOYD et al. | : | |
| | : | |
| v. | : | No. 2:26-cv-02403 |
| CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND DEPOSITIONS AND TO MODIFY THE SCHEDULING ORDER**

## I. INTRODUCTION

This discovery dispute does not present the broad question whether legislators enjoy protection for legitimate legislative acts. They do. Nor do Plaintiffs seek unrestricted inquiry into subjective legislative motive, confidential legislative deliberations, voting strategy, or privileged attorney communications. The narrower question is whether Defendants may invoke legislative immunity and privilege categorically to withhold substantial categories of otherwise relevant discovery, decline request specific responses, refuse a deposition concerning administrative and factual matters, and leave Plaintiffs without any meaningful mechanism to distinguish genuinely protected legislative material from discoverable administrative, factual, constituent access, recordkeeping, scheduling, custodial, authentication, and comparator evidence. The governing authorities do not support that categorical result.

The Supreme Court and Third Circuit apply a functional analysis to legislative immunity. Protection depends upon the nature of the act, not simply the identity, title, or governmental location of the person performing it. *Bogan v. Scott Harris*, 523 U.S. 44, 54 to 55 (1998); *Fowler Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 332 to 35 (3d Cir. 2006). Conduct forming an integral part of the legislative process receives substantial protection. Administrative conduct does not become legislative merely because it occurs within a legislative office or is performed by legislative staff.

That distinction is particularly important here. Plaintiffs seek discovery concerning, among other things, the receipt and handling of Plaintiffs' requests to communicate or meet with City Council representatives, constituent scheduling procedures, administrative policies governing constituent access, identities of persons responsible for processing those requests, calendars and scheduling systems, record retention, custodians, recordings, authentication, attendance information, comparator access, and Defendants' factual contentions regarding their treatment of Plaintiffs. Plaintiffs also seek the deposition of Cade Underwood concerning relevant, nonprivileged factual and administrative matters.

Defendants have responded much more broadly than the governing functional analysis permits. Defendants served responses and objections to Plaintiffs' original interrogatories and requests for production on May 21, 2026. Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories are attached as Exhibit "B." Those requests initially arose in connection with the contempt proceedings concerning the March 30, 2026, Committee hearing. Defendants repeatedly asserted legislative immunity, legislative privilege, deliberative process privilege, attorney client privilege, work product, burden, overbreadth, and relevance. In numerous instances

Defendants supplied no substantive information beyond objections or referred Plaintiffs to previously produced or publicly available material.

Plaintiffs did not immediately seek Court intervention. Counsel for Plaintiffs instead undertook repeated efforts to resolve the dispute directly with defense counsel. Those communications are attached collectively as Exhibit "A." On July 21, 2026, Counsel for Plaintiffs advised Defendants that she had reviewed their responses and wished to address several matters "in an effort to move discovery forward efficiently." Ex. "A." Counsel explained that:

> "many of Defendants' interrogatory answers and responses to requests for production are deficient. Numerous responses consist primarily of generalized objections or refer Plaintiffs to publicly available materials without fully responding to the requests."

*Id.*

Counsel then expressly requested that Defendants review and supplement their responses "to provide complete responses consistent with the Federal Rules of Civil Procedure in order to avoid unnecessary motion practice." *Id*. That same correspondence sought dates for the depositions of Ed Harris, Cade Underwood, and Defendants' Federal Rule of Civil Procedure 30(b)(6) designee. Plaintiffs proposed August 19, 2026 and August 27, 2026, but expressly invited Defendants to provide alternative dates if those dates were unavailable. *Id*. Plaintiffs separately attempted to eliminate confidentiality concerns as an impediment to production. On July 21, 2026, Counsel for Plaintiffs transmitted Plaintiffs' redlined version of Defendants' proposed Protective Order. Counsel stated:

> "I am happy to discuss any of the proposed revisions and work toward an agreed order; however, I believe that the Protective Order should protect legitimately confidential information without unnecessarily impeding discovery or delaying the production and use of discoverable materials."

*Id.*

No agreed Protective Order has been returned to Plaintiffs to date. Plaintiffs continued attempting to resolve the dispute. On July 29, 2026, Counsel followed up with Defendants. *Id*. On

August 4, 2026, Counsel followed up again and expressly stated: "I am following up before engaging in motion practice here." *Id*. These communications are significant because they demonstrate that Plaintiffs did not wait until the eve of the discovery deadline, did not immediately seek Court intervention after receiving objections, and did not refuse reasonable mechanisms designed to protect legitimately confidential information. Counsel repeatedly attempted to obtain supplementation, attempted to schedule depositions, invited alternative dates, returned proposed Protective Order revisions, and expressly advised Defendants that she sought to avoid motion practice.

Plaintiffs thereafter served written discovery directed to the operative Second Amended Complaint rather than solely to the earlier contempt proceeding. Defendants' August 20, 2026 responses to that discovery are attached collectively as Exhibit "C." Those responses did not materially advance discovery. Defendants gave no substantive answers to Plaintiffs' Second Set of Interrogatories Nos. 1 through 16. Defendants asserted that the interrogatories exceeded Rule 33(a)(1)'s numerical limitation and separately asserted legislative immunity and privilege. Ex. "C." Defendants similarly issued a collective response to Plaintiffs' Second Requests for Production Nos. 1 through 16. Rather than respond to each request individually, Defendants asserted that all sixteen requests were barred by legislative immunity and privilege, were irrelevant, and were unduly burdensome. Defendants then stated that if the Court permitted Plaintiffs' requests, Defendants reserved the right thereafter to supplement their responses with individualized objections or responses. *Id*.

Defendants also sought affirmative Court intervention. On August 13, 2026, Defendants filed a letter asking this Court to quash Mr. Underwood's deposition and broadly restrict Plaintiffs' discovery concerning City Council members, legislative staff, governmental officials involved in

the legislative process, and matters Defendants characterize as legislative motive. Defendants' August 13, 2026 Letter, ECF No. 28, is attached as Exhibit "D." The Court initially scheduled a discovery conference for August 27, 2026. On August 24, 2026, Chambers advised counsel that the Court wanted a motion addressing the issues raised in Defendants' letter and cancelled the conference. The Chambers communication is attached as Exhibit "E."

Meanwhile, fact discovery presently closes October 23, 2026. The threshold dispute remains unresolved. Written discovery remains substantially incomplete. Necessary depositions have not occurred. Depositions cannot be conducted efficiently and meaningfully until foundational written discovery identifies the relevant witnesses, custodians, responsible personnel, and responsive records. The passage of additional time therefore does not merely reduce the calendar. It affects the sequence in which meaningful discovery can occur. Plaintiffs respectfully request Court intervention under Rules 26 and 37. Plaintiffs further request a reasonable modification of the discovery schedule under Rule 16(b)(4). Plaintiffs remain willing to confer regarding reasonable limitations where a particularized objection identifies an actual area of protected material, to proceed under an appropriate Protective Order, and to accommodate properly asserted privileges through the procedures established by Rule 26. What is not workable is a discovery process in which categorical immunity objections defer individualized responses while the existing deadline continues to approach.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Initial Discovery and Defendants' May 21, 2026 Responses

Plaintiffs served interrogatories and requests for production during the earlier contempt related phase of this litigation. Defendants served responses and objections on May 21, 2026. See

Ex. "B." Defendants' objections repeatedly invoked legislative immunity and privilege. For example, Defendants asserted that legislative immunity protects officials from inquiry into legislative acts or the motivation for performing legislative acts and cited *Fowler Nash* and *HIRA Educational Services North America v. Augustine*, 991 F.3d 180 (3d Cir. 2021). See Ex. "B." Defendants also repeatedly asserted that discovery extending beyond the March 30, 2026 contempt dispute was irrelevant. Some responses asserted that Plaintiffs could independently determine responsive facts through existing exhibits or publicly available information. Others incorporated an earlier generalized immunity objection and provided no additional substantive response.

Defendants' response concerning privilege logs illustrates the breadth of their position. Plaintiffs' Request for Production No. 57 expressly excluded attorney client privileged communications while requesting that withheld privileged communications be identified on a privilege log. Ex. "B." Request No. 58 separately requested privilege logs concerning documents or communications withheld in response to Plaintiffs' requests. *Id*. Defendants responded that "no such logs exist" because legislative immunity and privilege were intended to shield legislators from the burdens of discovery and because Defendants had not located responsive documents withheld solely under another privilege. *Id*. That position leaves Plaintiffs unable to determine what categories of responsive material were searched, what records were withheld, who authored or received them, when they were created, or what particular privilege purportedly protects them.

### B. Counsel for Plaintiffs Repeatedly Attempted to Resolve the Dispute Without Court Intervention

Plaintiffs did not respond to Defendants' May 21, 2026 objections by immediately filing a motion. On July 21, 2026, at 8:25 p.m., Counsel for Plaintiffs wrote defense counsel in an effort

"to move discovery forward efficiently." Ex. "A." Counsel specifically identified the problem with Defendants' existing responses:

> "Numerous responses consist primarily of generalized objections or refer Plaintiffs to publicly available materials without fully responding to the requests."

*Id*.

Counsel requested supplementation consistent with the Federal Rules "in order to avoid unnecessary motion practice." Id. Counsel also explained that Plaintiffs could not access the video file produced as Exhibit B and requested a usable format or alternative means of transfer. Id. Counsel then sought to begin scheduling depositions. She proposed August 19, 2026 or August 27, 2026 for Ed Harris, Cade Underwood, and Defendants' Rule 30(b)(6) designee and expressly stated: "If those dates are not available, please let me know alternative dates that work for the respective witnesses." *Id*. On July 21, 2026, Counsel separately transmitted Plaintiffs' redlined proposed Protective Order. Id. Counsel expressed willingness to discuss every proposed revision and work toward an agreed order. That effort is particularly relevant because Defendants' own May 21, 2026 discovery responses identified City Hall security footage that would be produced "subject to protective order." Ex. "B."

Plaintiffs therefore did not resist reasonable confidentiality protections. They attempted to create the mechanism Defendants themselves had identified as a predicate for production. On July 29, 2026, at 1:39 p.m., Counsel for Plaintiffs followed up again. Ex. "A." On August 4, 2026, at 12:15 p.m., Counsel followed up yet again and expressly wrote: "I am following up before engaging in motion practice here." *Id*. These efforts satisfy not only Rule 37(a)(1), but also the substantive purpose of Local Civil Rule 26.1(f). Plaintiffs repeatedly identified the disputed discovery, requested supplementation, attempted to schedule depositions, invited alternative dates,

proposed a confidentiality mechanism, and afforded Defendants opportunities to resolve the disputes without judicial involvement.

**C. The Second Amended Complaint Changed the Operative Discovery Posture**

Plaintiffs filed the Second Amended Complaint on July 21, 2026. ECF No. 21. The operative pleading is not limited to the earlier contempt dispute arising from the March 30, 2026 proceeding. It asserts statutory and constitutional claims concerning the process through which the challenged ordinances were considered and enacted, Plaintiffs' property and contractual interests, governmental treatment, access, implementation, and other factual matters. Defendants themselves recognize that many of Plaintiffs' original requests were answered by reference to the narrower contempt posture. See Ex. "B." Plaintiffs therefore served additional discovery directed to the claims actually pending under the Second Amended Complaint.

**D. Defendants' August 20, 2026 Responses Did Not Provide Individualized Discovery Responses**

Defendants' August 20, 2026 responses are attached collectively as Exhibit "C." As to Plaintiffs' Second Set of Interrogatories Nos. 1 through 16, Defendants gave no substantive answer. Defendants stated that Plaintiffs previously served twenty five interrogatories and that the additional interrogatories exceeded Rule 33(a)(1). Defendants further asserted that those interrogatories independently were barred by legislative immunity and privilege. Plaintiffs acknowledge Rule 33(a)(1). To the extent leave is necessary, Plaintiffs request permission to serve a reasonable number of additional interrogatories addressed to matters presented by the operative Second Amended Complaint.

Defendants' response to Plaintiffs' Second Requests for Production is broader still. Defendants responded collectively to Requests Nos. 1 through 16 rather than individually. Ex. "C."

Defendants asserted legislative immunity, privilege, irrelevance, and burden across the entire set. *Id*. Defendants then stated that "[t]o the extent that the Court permits Plaintiffs' requests, Defendants reserve the right to and will supplement these responses with individualized objections and/or responses." *Id*. The practical consequence is that Plaintiffs still do not possess request specific responses identifying what Defendants will produce, what they contend does not exist, what they contend was searched, what is being withheld, or which individualized objections Defendants actually assert against each request.

**E. Defendants Sought to Prevent Mr. Underwood's Deposition Through ECF No. 28**

Plaintiffs noticed the deposition of Cade Underwood. Defendants thereafter filed their August 13, 2026 discovery letter, attached as Exhibit "D." Defendants sought Court intervention to quash Mr. Underwood's deposition and to prevent additional discovery that Defendants believe implicates legislative immunity or privilege. Defendants characterized Plaintiffs' requests as seeking legislative communications, staff information, third party stakeholder information, and legislative motive. *Id*. Plaintiffs' position is materially narrower. Plaintiffs do not contend that every internal legislative deliberation is discoverable. Plaintiffs seek to distinguish legislative conduct from administrative and factual conduct and to conduct Mr. Underwood's deposition within those boundaries.

**F. The August 27, 2026 Conference Was Cancelled and the Discovery Deadline Continues to Run**

The Court initially scheduled a telephone conference for August 27, 2026. On August 24, 2026, Chambers advised counsel that Judge Beetlestone "would like you to file a motion addressing the issues raised in your letter." Ex. "E." Chambers simultaneously cancelled the August 27, 2026 conference. *Id*. The discovery deadline remains October 23, 2026. Plaintiffs now seek a definitive ruling establishing what discovery may proceed and sufficient time thereafter to

complete written discovery, conduct the necessary depositions, and pursue reasonable follow up discovery.

## III. QUESTIONS PRESENTED

1. *Whether legislative immunity categorically bars discovery directed to City Council or legislative staff without an individualized determination that the particular conduct, testimony, or information concerns protected legislative acts.*

   *Suggested Answer: No.*

2. *Whether Plaintiffs may depose Cade Underwood regarding nonprivileged administrative and factual matters, including constituent scheduling, receipt and handling of Plaintiffs' communications and meeting requests, relevant administrative procedures, recordkeeping, persons responsible for those functions, and authentication of responsive records.*

   *Suggested Answer: Yes.*

3. *Whether Defendants must provide individualized responses to otherwise proper discovery and, when withholding responsive material based upon privilege or protection, provide information satisfying Federal Rule of Civil Procedure 26(b)(5)(A).*

   *Suggested Answer: Yes.*

4. *Whether Plaintiffs should receive leave under Rule 33(a)(1) to serve a reasonable number of interrogatories directed to claims and factual issues presented by the operative Second Amended Complaint.*

   *Suggested Answer: Yes.*

5. *Whether good cause exists under Rule 16(b)(4) to extend the October 23, 2026 discovery deadline where Plaintiffs diligently pursued written discovery and depositions, repeatedly attempted to resolve disputes without Court intervention, and substantial discovery remains outstanding because threshold discovery disputes remain unresolved.*

   *Suggested Answer: Yes.*

## IV. ARGUMENT

### A. The Federal Rules Permit Discovery of Relevant, Nonprivileged Matters and Require Specific Objections to Discovery That Is Withheld

Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding any nonprivileged matter relevant to a party's claim or defense and proportional to the needs of the case. Discovery serves an important fact-development function and is not confined to evidence ultimately presented at trial. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Indeed, discovery assists the parties in defining and clarifying the factual issues presented in the litigation. *Id.*

Plaintiffs' discovery serves precisely that purpose. The discovery seeks facts and records concerning matters placed at issue in the operative action, including communications, access, meetings and meeting requests, persons with knowledge, recordkeeping, administrative practices, relevant third-party interactions, and the factual circumstances surrounding Defendants' conduct. These are ordinary subjects of civil discovery.

The dispute arises because Defendants have attempted to place substantial categories of that discovery beyond reach through generalized assertions of legislative immunity and privilege rather than identifying, request by request and document by document where a particular protection applies. The Federal Rules contemplate greater specificity. Rule 33(b)(3) requires each interrogatory to be answered separately and fully under oath unless objected to. Fed. R. Civ. P. 33(b)(3). Rule 33(b)(4) requires "[t]he grounds for objecting to an interrogatory" to "be stated with specificity." Fed. R. Civ. P. 33(b)(4). Rule 34 likewise requires a written response to each item or category, and "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request." Fed. R. Civ. P. 34(b)(2)(B). An objection must further "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

The Third Circuit has long rejected discovery objections that merely characterize a request as overly broad, burdensome, oppressive, or irrelevant without explaining specifically why the particular discovery is objectionable. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). See also *Parisi v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-cv-00179, 2017 WL 4403326, at *1–2 (W.D. Pa. Oct. 2, 2017); *Koresko v. Bleiweis*, No. 04-769, 2004 WL 2203713, at *4 (E.D. Pa. Sept. 27, 2004). That principle is particularly important here because Defendants' position does more than preserve an objection to particular information.

Their responses effectively treat the asserted protection as extending across numerous separate discovery requests before identifying what responsive material exists, what is being withheld, and why the particular material falls within the asserted protection. That approach frustrates the ordinary discovery process. Plaintiffs cannot meaningfully evaluate an immunity or privilege assertion when the assertion itself does not identify the particular testimony, document, communication, or information claimed to be protected. The issue, therefore, is not whether legitimate legislative activity receives protection. The issue is whether the invocation of that protection can substitute for the particularized inquiry necessary to determine what is protected in the first place. The governing cases favor the latter approach.

### B. Legislative Immunity Turns Upon the Function at Issue and Does Not Create a Categorical Discovery Bar for Every Act, Record, or Communication Associated With a Legislative Office

Legislative immunity is determined by the nature of the particular act at issue. In *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998), the Supreme Court explained that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." The inquiry is objective and focuses upon the function actually performed. The Third Circuit applies that same functional analysis. *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 332–40 (3d Cir. 2006). As *Fowler-Nash* demonstrates, the fact that conduct occurs within a legislative office, involves a legislator, or is undertaken by legislative personnel does not itself resolve whether the conduct is legislative. The Third Circuit instead examines the particular function at issue. *Id.* at 337–40. The principle predates *Fowler-Nash*. In *Aitchison v. Raffiani*, 708 F.2d 96, 99 (3d Cir. 1983), the Third Circuit explained: "We look to the function the individual performs rather than his location within a particular branch of government." That distinction is consequential here.

Defendants' position effectively begins with the identity of the actor or office and proceeds from that identity to a broad claim of protection. The governing cases proceed in the opposite direction. They begin with the particular function. The Third Circuit's analysis in *Fowler-Nash* is especially instructive. The court rejected the contention that legislative immunity followed from the legislative character of the office or employee and concluded that the challenged personnel decision was an administrative function. 469 F.3d at 340. The court further recognized that legislative immunity could still protect inquiry into activities actually falling within the legislative sphere. *Id.*

That is a materially different proposition from categorical immunity from discovery. The same functional boundary appears in *HIRA Educational Services North America v. Augustine*, 991 F.3d 180, 189–91 (3d Cir. 2021). Legislative factfinding undertaken as an integral component of developing legislation may fall within protected legislative activity. *Id.* But immunity does not attach to acts merely "casually or incidentally related to legislative affairs" rather than part of the legislative process itself. *Id.* at 189. Thus, the governing inquiry remains what the particular activity was. That inquiry cannot meaningfully occur if all responsive information associated with legislative personnel is withheld at the threshold.

**C. Legislative Staff Status Does Not Transform Every Subject of a Deposition into Protected Legislative Activity**

The same principles apply to the deposition of Cade Underwood. *Gravel v. United States*, 408 U.S. 606 (1972), recognizes protection for legislative aides where their conduct falls within the protected legislative sphere. But that protection follows the function performed, not simply the aide's employment status. The protection applies insofar as the aide's conduct would constitute a protected legislative act if performed by the legislator. *Id.* at 616–18. The Third Circuit applied that principle directly in *Fowler-Nash*. Quoting *Gravel*, the court explained that protection applies

to an aide "insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Fowler-Nash*, 469 F.3d at 336 (quoting *Gravel*, 408 U.S. at 619).

Accordingly, the fact that Mr. Underwood serves legislative personnel does not answer whether every permissible subject of his deposition falls within legislative immunity. The deposition may address factual matters relevant to the claims and defenses without necessarily intruding upon protected legislative acts. Those matters include, as applicable, the receipt and routing of communications, meetings and meeting requests, administrative procedures, scheduling, recordkeeping, identification of persons with knowledge, custodianship and maintenance of records, authentication, and other objective factual matters within Mr. Underwood's knowledge. *In re Grand Jury Proceedings*, 563 F.2d 577, 584 (3d Cir. 1977), further supports distinguishing the employee's legislative functions from other matters rather than treating employment status itself as dispositive.

The aide's protection derives from the legislative function and extends to legislative matters. *United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016), similarly reflects the importance of examining what particular conduct actually involved. The mere fact that an activity is undertaken by a legislator in an official capacity does not necessarily make it an integral part of the legislative process. The practical distinction is important. A deposition can contain both protected and unprotected subjects. The existence of the former does not establish that the latter cease to be discoverable. Plaintiffs seek the opportunity to depose Mr. Underwood within those established boundaries.

**D. A Blanket Invocation of Legislative Protection Would Extend Immunity Beyond Its Functional Foundation and Effectively Foreclose Ordinary Fact Discovery**

Defendants' position, taken to its practical conclusion, would substantially collapse the distinction recognized in *Bogan*, *Fowler-Nash*, *Aitchison*, *Gravel*, *HIRA*, and *Menendez*. If the association of information with legislative personnel were sufficient to prevent discovery before the information or function is specifically identified, the functional inquiry would largely disappear. The identity of the person possessing the information would become dispositive. The cases do not adopt that approach. The Supreme Court focuses on "the nature of the act." *Bogan*, 523 U.S. at 54. The Third Circuit looks to "the function the individual performs rather than his location within a particular branch of government." *Aitchison*, 708 F.2d at 99. *Fowler-Nash* applies that principle even to conduct occurring squarely within a legislative institution. 469 F.3d at 337–40. And *HIRA* distinguishes activities forming part of the legislative process from activities merely associated with legislative affairs. 991 F.3d at 189.

The same distinction is important in discovery. Particular information, once identified and evaluated under the governing functional standard, may qualify for protection. Other responsive information concerns objective facts or administrative functions. Without sufficiently particular responses, the parties cannot distinguish between the two. Plaintiffs are not asking that genuinely protected legislative material lose its protection. Plaintiffs are asking that Defendants identify with sufficient specificity the discovery as to which they invoke protection so that the asserted protection can be evaluated under the governing functional standard. That approach preserves legislative immunity without converting it into a blanket exemption from ordinary civil discovery.

**E. The Third Circuit Has Rejected an Expansive Privilege Encompassing the Full Range of State Legislative Activity**

The distinction between legitimate legislative protection and categorical nondisclosure is further illustrated by *In re Grand Jury*, 821 F.2d 946 (3d Cir. 1987). There, the Third Circuit

declined to recognize an expansive federal common-law Speech or Debate privilege encompassing the full range of state legislative activity. *Id.* at 957–59. The court's analysis recognized the distinction between genuinely protected deliberative communications and factual material. *Id.* That distinction has particular force here because Plaintiffs seek factual information as well as documents. The existence of a communication is not necessarily the substance of a legislative deliberation. The identity of a custodian is not necessarily legislative deliberation. Whether a meeting occurred is not necessarily legislative deliberation. The existence, maintenance, location, or authenticity of a record is not necessarily legislative deliberation. Nor does the fact that an individual works for City Council itself establish that every fact known to that individual was acquired or communicated through protected legislative activity.

The asserted protection therefore requires a sufficiently particularized invocation to permit the protected and nonprotected material to be distinguished.

F. Rule 26(b)(5)(A) Provides the Mechanism for Identifying Information Actually Withheld on a Claim of Privilege or Protection The privilege-log dispute illustrates the practical problem created by Defendants' blanket approach. Federal Rule of Civil Procedure 26(b)(5)(A) addresses what occurs when otherwise discoverable information is withheld based upon privilege or protection. The withholding party must:

> "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Fed. R. Civ. P. 26(b)(5)(A).

The Rule therefore accommodates the very concern Defendants raise. A party is not required to disclose the protected substance in order to identify the nature of what is being withheld. But there must be enough information for the opposing party to assess the asserted

protection. The burden of establishing privilege rests with the party asserting it. *Conoco, Inc. v. U.S. Department of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). *Reynolds v. Slippery Rock University of Pennsylvania*, No. 18-1571, 2021 WL 796029, at *5 (W.D. Pa. Mar. 2, 2021), likewise recognizes the importance of privilege logs and rejects reliance upon boilerplate or generalized privilege objections in place of adequate identification.

Here, Plaintiffs proposed precisely that conventional mechanism. Plaintiffs advised Defendants that genuinely protected material could be identified through a privilege log. Plaintiffs also engaged with Defendants concerning a Protective Order and returned redlines to Defendants' proposed order on July 21, 2026, at 9:38 p.m. Plaintiffs expressly communicated their willingness to work toward an agreed Protective Order that would protect legitimately confidential material while allowing discovery to proceed. Ex. "A." Those measures were not concessions that Plaintiffs' discovery was improper.

They were reasonable efforts to eliminate confidentiality and privilege concerns as obstacles to the exchange of otherwise discoverable information. Yet Plaintiffs still have not received an agreed Protective Order, and Defendants have declined to provide the privilege identification that would permit Plaintiffs to assess which responsive information Defendants actually contend is protected. That sequence matters. Plaintiffs have not demanded disclosure of information without regard to privilege. They have proposed the ordinary procedural safeguards through which legitimate privilege concerns can coexist with discovery. What remains missing is the specificity necessary to determine where the claimed protection actually applies.

### G. Plaintiffs' Willingness to Confer Regarding Reasonable Limitations Does Not Shift Defendants' Obligation to Identify Their Objections With Specificity

Plaintiffs remain agreeable to allowing finalizing a protective order where doing so would facilitate discovery and eliminate unnecessary disputes. That professional accommodation should not be confused with an acknowledgment that Plaintiffs' requests are improper. The Federal Rules place the responsibility for articulating an objection upon the party making it. Rule 33(b)(4) requires specificity as to interrogatory objections. Rule 34(b)(2)(B) requires specificity as to each item or category requested. Rule 34(b)(2)(C) requires the responding party to state whether responsive materials are being withheld on the basis of an objection. Rule 26(b)(5)(A) establishes corresponding requirements when information is withheld as privileged or protected. *Josephs* likewise places the burden upon the objecting party to explain specifically why particular discovery is objectionable. 677 F.2d at 992. *Koresko* rejects generalized objections that fail to provide that information. 2004 WL 2203713, at *4.

Thus, Plaintiffs' willingness to confer does not require Plaintiffs to speculate about what Defendants possess, which responsive materials Defendants believe are legislative, what particular protection Defendants invoke, or how that protection applies to particular documents or testimony. That information necessarily begins with Defendants. Once Defendants identify the asserted protection with the specificity contemplated by the Rules, Plaintiffs remain willing to confer regarding reasonable measures necessary to protect genuinely protected information while permitting discovery to proceed.

**H. The Course of Discovery Demonstrates Plaintiffs' Persistent Efforts to Obtain Responses Without Unnecessary Court Intervention**

The record reflects repeated efforts by Plaintiffs to move discovery forward before seeking judicial relief. Defendants served their earlier discovery responses on May 21, 2026. See Ex. "B." On July 21, 2026, Plaintiffs' counsel wrote Defendants concerning deficiencies in those responses and explained that numerous responses consisted primarily of generalized objections or references

to publicly available materials rather than complete responses. Ex. "A." Counsel expressly requested supplementation "in order to avoid unnecessary motion practice." *Id.* That communication also sought dates for the depositions of Ed Harris, Cade Underwood, and Defendants' Rule 30(b)(6) designee and invited Defendants to propose alternative dates if Plaintiffs' proposed dates were unavailable. *Id.*

On July 21, 2026, Plaintiffs returned redlines to Defendants' proposed Protective Order and offered to discuss the revisions and work toward an agreed order. *Id.* Plaintiffs followed up on July 29, 2026, at 1:39 p.m. *Id.* Plaintiffs followed up again on August 4, 2026, at 12:15 p.m., expressly stating that counsel was "following up before engaging in motion practice here." *Id.* Plaintiffs thus pursued supplementation, depositions, a Protective Order, and informal resolution before seeking relief. Defendants' later responses did not resolve the dispute. Rather than providing individualized substantive responses to the disputed discovery, Defendants continued to invoke immunity and privilege across categories of discovery. See Ex. "C." The present motion follows those repeated efforts.

**I. The Same Record Establishes Good Cause for a Reasonable Modification of the Discovery Schedule**

Federal Rule of Civil Procedure 16(b)(4) permits modification of a scheduling order upon good cause. Diligence is central to that inquiry. *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84–85 (3d Cir. 2010). The chronology here reflects diligence. Plaintiffs sought supplementation well before the October 23, 2026 discovery deadline. They sought deposition dates. They invited alternative dates. They engaged with Defendants' proposed Protective Order. They proposed privilege identification as a means of addressing protected material. They followed up repeatedly.

And they attempted to resolve the dispute without motion practice. The unresolved threshold dispute has consequences beyond the written responses themselves. Written discovery identifies witnesses, custodians, records, and factual subjects necessary to prepare for depositions. Delayed responses therefore affect Plaintiffs' ability to conduct the remaining discovery in an orderly sequence. Under these circumstances, a reasonable extension of the discovery period would permit the parties to complete discovery after the threshold issues presented in this motion are resolved, rather than requiring the remaining discovery to be compressed while those issues remain pending.

**V. CONCLUSION**

The authorities governing this dispute recognize substantial protection for legitimate legislative activity. They do not make legislative employment, legislative affiliation, or possession of information by legislative personnel dispositive of whether particular evidence is protected.

The governing inquiry is functional and specific. That distinction is particularly important here because Defendants have invoked legislative immunity and privilege across substantial categories of discovery while declining to provide the individualized responses and privilege identification that would permit Plaintiffs to determine what information is actually being withheld and the particular basis for withholding it.

Plaintiffs have pursued a measured alternative. They repeatedly sought supplementation without Court intervention. They attempted to schedule the necessary depositions. They returned redlines to Defendants' proposed Protective Order. They proposed privilege identification as a means of protecting genuinely privileged material while allowing discovery to proceed. They remain agreeable to reasonable limitations where appropriate. Those efforts have not produced the substantive discovery necessary to complete fact discovery before October 23, 2026. Accordingly, Plaintiffs respectfully request that the Court grant their Motion to Compel, permit the deposition

of Cade Underwood to proceed as to discoverable matters, direct Defendants to provide individualized responses to Plaintiffs' outstanding discovery consistent with Rules 26, 33, and 34, require appropriate identification under Rule 26(b)(5)(A) for responsive information withheld on a claim of privilege or protection, and modify the discovery schedule for a reasonable period sufficient to complete written discovery and the remaining depositions following resolution of the present dispute.

Respectfully submitted,
PEARSON LAW GROUP LLC

By: ______________________________
Briana Lynn Pearson, Esquire
Identification No. 327007
1500 Chestnut Street, Suite 2 #2898
Philadelphia, Pennsylvania 19102
Phone: 484 469 0322
Fax: 856 229 9991
bpearson@pearsonlawgroup.org
Attorney for Plaintiffs
Seth Floyd and Erica Hadley

August 24, 2026

**PEARSON LAW GROUP**
**By: Briana Lynn Pearson, Esquire Identification No. 327007**
**1500 Chestnut St. Suite 2 #2898**
**Philadelphia, PA 19102**
**Phone: 484-469-0322**
**Fax: 856-229-9991**
**Email: bpearson@pearsonlawgroup.org**

**Attorneys for Plaintiffs, *Seth Floyd and Erica Hadley***

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLOYD et al. | : | |
| | : | |
| v. | : | No. 2:26-cv-02403 |
| CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 26.1(f)**

Pursuant to Local Civil Rule 26.1(f), undersigned counsel for Plaintiffs certifies that counsel made reasonable and good-faith efforts to resolve the discovery disputes presented in the foregoing Motion without Court intervention. The parties' written communications concerning Plaintiffs' efforts to resolve these discovery disputes are attached collectively as Exhibit "A." Exhibit "A" consists of email correspondence between counsel concerning Defendants' discovery responses, Plaintiffs' requests for supplementation, the scheduling of depositions, the proposed Protective Order, and Plaintiffs' efforts to resolve the parties' disagreements without motion practice.

On July 21, 2026, counsel for Plaintiffs wrote counsel for Defendants concerning deficiencies in Defendants' discovery responses and requested that Defendants review and supplement their responses to provide complete responses consistent with the Federal Rules of Civil Procedure "in order to avoid unnecessary motion practice." Ex. "A." Counsel also sought

dates for the depositions of Ed Harris, Cade Underwood, and Defendants' Rule 30(b)(6) designee, proposed dates for those depositions, and expressly invited Defendants to provide alternative dates if the proposed dates were unavailable. *Id*. The underlying memorandum likewise reflects these efforts to obtain supplementation and schedule the outstanding depositions without Court intervention. Also on July 21, 2026, counsel for Plaintiffs returned Plaintiffs' redlines to Defendants' proposed Protective Order and expressed Plaintiffs' willingness to discuss the revisions and work toward an agreed order. Ex. "A." Plaintiffs sought to establish a mechanism through which legitimately confidential or protected information could be addressed while permitting discovery to proceed.

On July 29, 2026, counsel for Plaintiffs followed up with Defendants concerning the outstanding discovery issues. Ex. "A." On August 4, 2026, counsel again followed up and expressly advised Defendants: "I am following up before engaging in motion practice here." *Id*. Plaintiffs thereby afforded Defendants additional opportunities to address the outstanding discovery before seeking Court intervention. These efforts and dates are also reflected in the factual chronology of Plaintiffs' Motion. Despite these efforts, counsel were unable to resolve the disputes concerning supplementation of Defendants' discovery responses, Defendants' assertions of legislative immunity and privilege, the identification of responsive information withheld on those grounds, and the scheduling and permissible scope of the requested depositions.

Accordingly, undersigned counsel certifies that Plaintiffs made reasonable and good-faith efforts to resolve the discovery disputes presented in the Motion before seeking Court intervention. The communications documenting those efforts are attached collectively as Exhibit "A."

Respectfully submitted,
PEARSON LAW GROUP LLC

By: ____________________________

Briana Lynn Pearson, Esquire
Identification No. 327007
1500 Chestnut Street, Suite 2 #2898
Philadelphia, Pennsylvania 19102
Phone: 484 469 0322
Fax: 856 229 9991
bpearson@pearsonlawgroup.org
Attorney for Plaintiffs
Seth Floyd and Erica Hadley

August 24, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, I caused a true and correct copy of the foregoing Plaintiffs' Motion to Compel Discovery and Depositions and to Modify the Scheduling Order, together with the accompanying Memorandum of Law, exhibits, Certification of Counsel, and proposed Order, to be filed electronically with the Clerk of Court using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

Respectfully submitted,
PEARSON LAW GROUP LLC

By: ______________________________

Briana Lynn Pearson, Esquire
Identification No. 327007
1500 Chestnut Street, Suite 2 #2898
Philadelphia, Pennsylvania 19102
Phone: 484 469 0322
Fax: 856 229 9991
bpearson@pearsonlawgroup.org
Attorney for Plaintiffs
Seth Floyd and Erica Hadley

August 24, 2026