**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SETH FLOYD, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al.,**<br>**Defendants.** | : | **Civil Action**<br>**No. 26-cv-02403** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs' Opposition to the City's Motion to Dismiss fails to provide necessary specificity, information, or legal argument to rescue their Second Amended Complaint. For that reason, the City asks that the Complaint be dismissed.

## II. ARGUMENT

### A. No Sunshine Act Violation Occurred (Count 1)

Plaintiffs' opposition to the Motion to Dismiss essentially admits that they have not pleaded facts sufficient to state a claim for a violation of the Sunshine Act. Their response does not include any more specific allegations of the missing facts needed, such as even an allegation that a quorum of a relevant body met and deliberated not in public.

Indeed, Plaintiffs go further and suggest that the nature of the Sunshine Act violations they are alleging is unknown. When discussing the City's argument that any possible Sunshine Act violation would have been cured by the proceedings in April 2026, Plaintiffs don't dispute

the contention, but state that "[w]hether subsequent proceedings legally cured earlier alleged violations *depends upon the nature of those violations….*" Plts.' Br. at 9 (ECF No. 29-1). This illustrates the City's central argument in the Motion to Dismiss, that Plaintiffs have not alleged sufficient facts to identify an alleged violation.

Moreover, Plaintiffs do not substantively engage with or refute the arguments made that breaking of quorum during public comment at the March 30 Committee hearing is not a Sunshine Act violation. Even where the facts are clear and admitted, Plaintiffs have only argued that the Defendants understand the claim against them. This does nothing to help Plaintiffs overcome the legal deficiencies of their claims, which are based in the text of the statute and not addressed by Plaintiffs.

**B. No Home Rule Charter Violation Occurred (Count 2)**

Likewise, Plaintiffs' response provides no more clarity on the alleged Home Rule Charter violation. In the City's Motion to Dismiss it is plainly stated that paragraphs 143 and 144 of the Second Amended Complaint make vague references to amendments, but "which action is complained of is unknown to Defendants." City Br. at 12 (ECF No. 24). Instead of simply providing a date to clarify these paragraphs, Plaintiffs double down on obfuscation. Their bald assertion that "Defendants plainly understand the allegation" is false. Pls.' Br. at 12. The City does not understand the allegation, has made that clear, and even after Plaintiffs had an opportunity to respond and provide the most basic context, still has no further clarity. Plaintiffs' provide merely conclusory allegations insufficient to state a claim.

**C. Plaintiffs' Have Not Alleged the Basic Elements of a Cognizable Takings Claim (Count 3)**

To state a claim for a regulatory taking, a complaint must plausibly allege that the "'value of the property was reduced drastically'" as well as interference with distinct, reasonable

investment backed expectations and governmental action akin to a physical invasion. *Nekrilov v. City of Jersey City*, 45 F.4th 662, 674, 675, 677 (3d Cir. 2022) (citations omitted). Defendants' Motion to Dismiss noted that the Complaint failed to plausibly allege any of the three prongs. Plaintiffs' Opposition all but concedes this is true.

Plaintiffs only defend their Takings claim on the grounds that they alleged facts that are *relevant* to the economic impact. But that is not sufficient to survive a motion to dismiss: Plaintiffs must allege facts that, if proven, would actually state a claim. Plaintiffs do not necessarily need to supply an appraisal or market analysis, but they must allege some facts supporting a drastic reduction in economic value of well over 50%. The complaint entirely fails on that front: it alleges minimal economic impact based on theoretical compliance burdens—far from the severe diminution necessary—and does not address the many other ways in which Plaintiffs' unidentified properties could retain significant value, such as by being occupied as a residence or sold to more efficient and compliant operators. *See Nekrilov*. 45 F.4th at 673.

Plaintiffs also still fail to identify any distinct investment-backed expectations affected by the Bills, let alone ones that would be reasonable in light of the heavy regulation of the landlord-tenant relationship—including existing good-cause eviction protection for shorter leases.[1] And they do not address the character of the governmental action at all, which applies citywide. Having failed to allege a drastic economic impact or any of the other *Penn Central* factors means the Takings claim must be dismissed.

[1] The Bills were also pending in substantially similar form for more than a year before they were passed, so unless Plaintiffs' leases were for periods greater than one year, they were entered into with at least constructive knowledge that these legislative changes were possible. *See, e.g.*, Am. Compl., Ex. 2 at 1, Ex. 3 at 1 (ECF No. 1-1 at 56, 63).

**D. Plaintiffs' Policy Disagreements With the Bills Are Insufficient to State Contracts Clause or Due Process Claims (Counts 4, 6)**

Plaintiffs also fail to defend their Contracts Clause and Substantive Due Process claims. On the former, they say that "the actual terms" of the contract matter because the analysis "requires comparison of the preexisting legal framework, Plaintiffs' agreements, and the new legislation." (Pls.' Br. at 16-17). Yet they failed to allege any actual contractual terms, or to perform any of that comparison in the complaint or their briefing. They also failed to include allegations that those terms have been impaired in a way that actually affected Plaintiffs, such as a tenant who Plaintiffs could not evict because of the Bills or who withheld rent because of their landlord's legal violation. And in any event, Plaintiffs all but admit their Contracts Clause claim fails at step three because they agree the Bills are entitled to deference as to whether they are the proper method for enhancing tenant protections. (*Id.* at 18). Though Plaintiffs suggest there are alternative policies they claim are superior, that is insufficient as a matter of law where the government's contracts are not at issue and the legislature's policy judgment should not be second-guessed by courts.

Plaintiffs' substantive due process challenge fails for the same reason. Though they allege the Bills are inferior policy, under rational basis review that is a judgment for the legislature. It is not Defendants' burden to prove the legislation is ultimately the best method of protecting tenants or balancing landlord and tenant rights as a matter of fact; it is Plaintiffs' "burden 'to negative every conceivable basis which might support'" the Bills. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citation omitted). Plaintiffs do not and could not allege facts that defeat the legislature's judgment here that the Bills are a reasonable way of improving rental housing for tenants.

### E. The Bills Do Not Violate Equal Protection (Counts 5 and 8)

Plaintiffs 'equal protection claims for a simple reason: they do not allege a single fact that gives rise to a plausible inference of discriminatory intent. The mere allegation of procedural irregularities as well as disparate impact[2] does not make discriminatory purpose a plausible inference. And rather than allege that African American landlords are treated differently than similar white landlords, they simply allege that the Bills are more favorable for institutional housing provides of unknown racial identities compared to small landlords, some unknown percentage of whom are African American like Plaintiffs. Nor do allegations that some African American landlords who spoke were allegedly interrupted by unspecified individuals during unidentified proceedings suggest discriminatory motive, particularly where there are no allegations concerning how landlord speakers of other races were treated, or how African American tenant witnesses at hearings were treated. Because the barebones allegations in the Complaint do not state or even give rise to an inference of racial animus, Plaintiffs' equal protection claims lack a legally necessary allegation of discriminatory purpose and must be dismissed.

## III. CONCLUSION

For all the reasons set forth above and in their Motion to Dismiss, Defendants respectfully request that this Court dismiss the Second Amended Complaint with prejudice.

[2] Plaintiffs also still fail to allege disparate impact. They claim the Bills have will impose a disproportionate burden on "African American small landlords," but the complaint only alleges that the Bills will disproportionately affect small landlords, an unspecified percentage of whom are African American. (SAC ¶¶ 209-213). That the Bills have some impact on African Americans because some are small landlords does not mean that the Bills have a disparate impact on African Americans—particularly if the majority of small landlords are not African American or the majority of large landlords are.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Renee Garcia, City Solicitor

Date: August 25, 2026

By: */s/ William B. Shuey*

WILLIAM B. SHUEY (PA ID No. 208792)
Senior Attorney
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5233
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing Reply Memorandum of Law, upon all counsel of record via the ECF system.

Date: August 25, 2026

*/s/ William B. Shuey*

William B. Shuey
Senior Attorney