**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SETH FLOYD, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al.,**<br>**Defendants.** | : | **Civil Action**<br>**No. 26-cv-02403** |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL**

Defendants, City Council for the City of Philadelphia and Philadelphia City Council Committee on Housing, Neighborhood Development and the Homeless, file this response in opposition to Plaintiffs' Motion to Compel Discovery and Deposition and Modify the Scheduling Order. The Court should deny the Motion's requests for discovery and deposition for the reasons more fully explained in the accompanying Memorandum of Law and enter an order barring further discovery in violation of legislative privilege and immunity.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' motion.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Renee Garcia, City Solicitor

Date: August 31, 2026

By: */s/ William Shuey*

WILLIAM B. SHUEY (PA ID No. 208792)
Senior Attorney
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5233
*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SETH FLOYD, et al.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al.,**<br>**Defendants.** | : | **Civil Action**<br>**No. 26-cv-02403** |

**DEFENDANTS' RESPONSE AND MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

## I. INTRODUCTION

Plaintiffs here challenge legislation and the legislative process. They seek wide-ranging discovery into the activity and communications of the legislators and their staff as part of that process. The only relevant information their requests seek is exactly the kind of information protected by legislative immunity and privilege.

Plaintiffs' voluminous requests are classic examples of one of the very evils legislative immunity and privilege exist to protect against: the cost and inconvenience of litigation based on the unsupported say-so of two individuals disappointed by the outcome of the legislative process. Indeed, instead of making specific allegations of improper conduct and working with Defendants to identify non-privileged evidence that might bear on those instances, the Second Amended Complaint actually removes detail. Nor have Plaintiffs explained how the discovery they seek into "scheduling" and "routing of communications" bears any relevance to their claims that the landlord-tenant legislation at issue was not published or voted on publicly, violates property and contract rights, or denies equal protection. Because Plaintiffs seek only to harangue legislators

and their staff with either privileged or irrelevant discovery requests, Plaintiffs' Motion should be denied.

## II. BACKGROUND

### A. Legislative History

On April 10, 2025, Councilmember Nicolas O'Rourke introduced Bills 250329 and 250330 (the "Bills")—which proposed expanded protections for residential tenants in Philadelphia—into Philadelphia City Council.[1] Under Philadelphia's Home Rule Charter, before City Council can vote on potential legislation, that legislation must be "referred to a committee, considered at a public hearing, reported by the committee, printed as reported, and distributed to the members of the Council and made available to the public." Phila. Charter § 2-201. As such, the Bills were referred to Council's Committee on Housing, Neighborhood Development and the Homeless (the "Committee") for a hearing. *See id.* The Committee is composed of six members: Chair Jamie Gauthier, Vice Chair Rue Landau, and Councilmembers Cindy Bass, Mark Squilla, Michael Driscoll, and Curtis Jones, Jr. *See* Am. Compl. ¶ 119.[2]

On March 4, 2026, the Committee held a hearing on the Bills. *See* note 1, *supra*.. During the hearing, amended versions of the Bills were favorably reported back to the full Council for

---

[1] The legislative history of the Bills is available on City Council's website ("Legistar") at the following publicly available addresses:

Bill 250329: https://phila.legistar.com/LegislationDetail.aspx?ID=7300048&GUID=5FA005B6-47E9-4FED-8F94-4661BD604D22&Options=ID|Text|&Search=250329.

Bill 250330: https://phila.legistar.com/LegislationDetail.aspx?ID=7300049&GUID=52D840F2-9545-44B8-9C3F-6A985532E5FC&Options=ID|Text|&Search=250330.

[2] The Second Amended Complaint is the operative complaint, but does not include an allegation of the composition of the members. The City agrees with the allegation cited from the Amended Complaint. *See also,* https://phlcouncil.com/standing-committees/

passage. *See* note 1, *supra*.. The Committee also received public comment.[3] On March 19, 2026, City Council voted to refer the Bills back to the Committee. *See* note 1, *supra*. On March 30, 2026, the Committee met to consider the Bills further. *See* Committee, *Public Hearing Notice.*[4] On that date, the Committee received public comment on the Bills, including from both Plaintiffs, after which it voted to favorably report the Bills back to the full Council.[5] On April 16, 2026, the full City Council held a meeting where it considered the Bills as reported from the Committee along with additional amendments and public comment.[6] On April 23, 2026, Council again considered the Bills, accepted more public comment, and ultimately voted to approve the Bills.[7] The Mayor signed the Bills into law on May 7, 2026, and they will become effective November 1, 2026. *See* note 1, *supra*.

---

[3] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 1-226 (Mar. 4, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/1768650?docType=30&FileName=COMMITTEE_ON_HOUSING_NEIGHBORHOOD_DEVELOPMENT_AND_THE_HOMELESS_030426_Full_Pdf%20(002).pdf

[4] *Available at* https://phila.legistar.com/View.ashx?M=A&ID=1402609&GUID=51CC5F54-1764-401F-B4FD-D6A325CC0645

[5] *See Hearing on Bills 250329, 250330 Before the Council of the City of Philadelphia Committee on Housing, Neighborhood Development and the Homeless* at 78-81, 87-90, 180-83 (Mar. 30, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4120756?docType=30&FileName=COMMITTEE_ON_HOUSING_NEIGHHOOD_DEV_%26_THE_HOMELESS_033026.pdf.

[6] *Stated Meeting of the Council of the City of Philadelphia* at 61-142, 161-66 (Apr. 16, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/5184948?docType=30&FileName=STATED_MEETING_041626.pdf

[7] *Stated Meeting of the Council of the City of Philadelphia* at 59-148, 163-71(Apr. 23, 2026), *available at* https://www.transcriptroom.org/tr/CAF/DownloadFile/4695606?docType=30&FileName=STATED_MEETING_042326.pdf

**B. Procedural History**

Plaintiffs Seth Floyd and Erica Hadley are African American owners and operators of residential rental properties within the City of Philadelphia. 2d Am. Compl. ("SAC") (ECF No. 21) ¶¶ 4, 5. Plaintiffs assert that they are adversely impacted by the Bills. *Id.* ¶¶ 4, 5, Exs. A, B.

On March 18, 2026, Plaintiffs filed a complaint and emergency petition for preliminary injunction against City Council and the Committee in the Philadelphia Court of Common Pleas, alleging violations of Pennsylvania's Sunshine Act and Philadelphia's Home Rule Charter stemming from the March 4, 2026 hearing. ECF 8-1 at 7 ¶23. That day, the parties resolved Plaintiffs' injunction petition via a stipulation, which included the following four provisions:

- Philadelphia City Council Bill numbers 250329 and 250330 (the "Bills") will not be voted upon for final passage in City Council on March 19, 2026;
- Instead, the sponsor of Bill Numbers 250329 and 250330 will move to have the Bills referred back to the Committee;
- Should the Committee choose to have a hearing in the future on the Bills, the Defendants shall comply fully with the Sunshine Act as well as the Charter; and
- No party admits any fault or the violation of any law;

ECF No. 8-1 at 23 (Mar. 18, 2026 Stipulated Order) (the "Order").

On April 9, 2026, Plaintiffs filed an emergency petition for civil contempt and sanctions. *See* ECF No. 8-1. On April 10, 2026, Plaintiffs filed the Amended Complaint, maintaining their Sunshine Act and Home Rule Charter claims while adding various substantive claims of violations of federal and state law. *See* Am. Compl. On April 13, 2026, the City removed the case to this Court. *See* ECF No. 1. On April 14, 2026, Plaintiffs filed an emergency motion for a hearing on contempt and for a temporary restraining order (TRO), incorporating their April 9, 2026 petition. *See* ECF Nos. 8, 8-1. That day, this Court denied the TRO motion and set a schedule for discovery, briefing, and a hearing on contempt. *See* ECF No. 13. However, Plaintiffs did not file any new briefing and after Defendants' filed their brief, the Court canceled

the hearing. Plaintiffs filed a Second Amended Complaint on July 21, 2026 and Defendants filed a Motion to Dismiss on August 4, 2026.

**C. Plaintiffs' Discovery Requests and the Parties' Discussions**

Meanwhile, two weeks after the April 9 conference, on April 22, 2026, Plaintiffs served Defendants with 25 interrogatories (labeled as "related to contempt hearing to be scheduled" herein "1st Roggs") and 60 requests for documents (labeled as "relating to contempt hearing to be scheduled" herein "1st RPDs"). Many were overlapping, but nearly all focused on the legislative process, such as:

- "1. Identify all individuals present at any hearing, Committee meeting, City Council meeting, or other gathering, whether formal or informal, held on or after March 19, 2026, at which Bills 250329 and 250330 were discussed, considered, amended, strategized, or otherwise addressed, including but not limited to the March 30, 2026 meeting of the Committee on Housing, Neighborhood Development and the Homeless and the April 16, 2026 meeting of the full City Council, including all discussions, drafting sessions, amendment-related meetings, strategy sessions, telephone conferences, or informal gatherings occurring prior to or on the morning of April 16, 2026." (1st Roggs)

- "6. Identify all meetings, discussions, communications, telephone calls, text messages, emails, instant messages, encrypted communications, or social media communications among any Committee members, Councilmembers, Council staff, legislative aides, consultants, or representatives concerning Bills 250329 and 250330 occurring outside publicly noticed proceedings on or after March 19, 2026" (1st Roggs)

- "18. Identify all text messages, emails, call logs, voicemail records, instant messages, Signal messages, WhatsApp messages, Telegram messages, social media messages, and other electronically stored communications sent or received during the March 30, 2026 Committee proceedings and/or the April 16, 2026 City Council proceedings concerning Bills 250329 and 250330, including the participants, time of communication, method of communication, and subject matter." (1st Roggs)

- "1. Produce all documents and communications identifying individuals present at any hearing, Committee meeting, City Council meeting, drafting session, strategy meeting, gathering conference, or discussion held on or after March 19, 2026 at which Bills 250329 and 250330 were discussed, considered, amended, strategized, negotiated, lobbied, or otherwise addressed." (1st RPDs)

- "3. Produce all calendars, schedules, meeting invitations, meeting requests, conference invitations, call invitations, agendas, memoranda, notes, or documents reflecting meetings, discussions, strategy sessions, drafting sessions, telephone conferences, or gatherings concerning Bills 250329 and 250330." (1st RPDs)

- "7. Produce all communications among Committee members, Councilmembers, Council staff, legislative aides, consultants, contractors, volunteers, interns, representatives, or agents concerning Bills 250329 and 250330 occurring outside publicly noticed meetings on or after March 19, 2026." (1st RPDs)

- "16. Produce all drafts of Bills 250329 and 250330 and all amendments thereto." (1st RPDs)

- "17. Produce all redlines, comments, tracked changes, edits, revision histories, drafting notes, amendment drafts, revision records, collaborative editing histories, and metadata relating to Bills 250329 and 250330." (1st RPDs)

- "25. Produce all internal memoranda, briefing materials, talking points, strategic plans, whip counts, vote counts, lobbying materials, communications plans, media plans, procedural strategies, or coordination materials concerning Bills 250329 and 250330." (1st RPDs)

- "34. Produce all written statements, written testimony, prepared remarks, scripts, outlines, summaries, talking points, draft remarks, or speaking notes prepared for any public comment, hearing, committee proceeding, or City Council proceeding concerning Bills 250329 and 250330." (1st RPDs)

- "53. Produce all communications concerning amendment strategy, procedural strategy, hearing strategy, timing strategy, or sequencing strategy concerning Bills 250329 and 250330." (1st RPDs)

Prior to responding, Defendants raised legislative privilege and immunity with Plaintiffs, and the parties held a meet-and-confer by telephone. However, Plaintiffs were not able to articulate why legislative privilege did not apply to any relevant materials, and in subsequent email communications declined to provide any authority to support their position. Plaintiffs also refused to specify the dates or participants in specific activities they targeted so that the parties could discuss ways of resolving any evidentiary issues without raising legislative immunity and privilege issues.

Notwithstanding their objections, Defendants timely responded to Plaintiffs discovery requests on May 21, 2026. Defendants also produced security camera footage of City Hall for the

March 30, 2026 Committee hearing that was the subject of the contempt hearing on an attorneys' eyes only basis pending the parties agreement on a protective order. Plaintiffs did not raise any issues with Defendants' responses until July 21, 2026, when Plaintiffs also filed the Second Amended Complaint and served additional discovery.

On June 25, 2026, Defendants sent Plaintiffs a draft protective order. Plaintiffs responded on July 21, 2026. Defendants continue to review Plaintiffs' proposed changes.[8]

On July 21, 2026, the same day Plaintiffs filed the Second Amended Complaint, they also served the City with 16 additional requests for documents, 16 additional interrogatories, and 18 requests for admission (the Interrogatories and Requests for Production of Documents are labeled "post-contempt" and herein are "2nd Roggs" and "2nd RPDs").[9] Virtually all were either irrelevant to the claims in the now operative complaint or sought information about the legislative process, such as:

- "1. Produce all documents and electronically stored information reflecting any request made by either Plaintiff, or by any person acting on behalf of either Plaintiff, from January 1, 2024, through the present to meet, communicate, correspond, or otherwise engage with any Defendant or any member of the Philadelphia City Council, including the request itself, acknowledgments, scheduling communications, cancellations, denials, and responses." (2nd RPDs)

- "2. Produce all documents sufficient to identify every person who reviewed, received, processed, scheduled, approved, denied, implemented, or communicated any decision concerning Plaintiffs' requests for meetings or communications, including routing sheets, assignment records, scheduling notes, or administrative records reflecting those responsibilities." (2nd RPDs)

- "6. Produce all documents sufficient to identify every organization, association, advocacy group, business organization, nonprofit organization, trade association, coalition, governmental entity, or other stakeholder that met with any Defendant concerning Bills

[8] Defendants are not withholding any documents or information based on the lack of an agreed on protective order, as legislative immunity and privilege address issues of burden, and a protective order does not protect privileged information or confidentiality of deliberations from Plaintiffs.

[9] The Requests for Admission do not raise the same privilege and immunity issues and Defendants have responded substantively to them.

250329 or 250330, including meeting dates, attendee lists, calendars, agendas, invitations, or visitor records sufficient to show that such meetings occurred." (2nd RPDs)

- "2. Identify every person who participated in, recommended, approved, reviewed, implemented, or communicated any decision regarding whether either Plaintiff, or any person acting on behalf of either Plaintiff, would be granted or denied a meeting or communication with any Defendant or any member of the Philadelphia City Council concerning Bills 250329 or 250330 residential rental housing, landlord regulation, or related legislation, from January 1, 2024, through the present." (2nd Roggs)

- "14. Identify every person who has or had possession, custody, or control of any document, electronically stored information, calendar, scheduling record, email, text message, correspondence, constituent communication, or other record relating to Plaintiffs, persons acting on behalf of Plaintiffs, or requests for meetings or communications concerning residential rental housing, landlord regulation, Bills 250329 or 250330, or related legislation from January 1, 2024, through the present, including each person's job title or position and the records within that person's possession, custody, or control." (2nd Roggs)

Plaintiffs also noticed the depositions of Cade Underwood, policy director for the Bill's primary sponsor Councilmember O'Rourke, and Ed Harris, who is not a City Council employee and is the manager responsible for video of City Council sessions for dates in August. The parties are negotiating a date for Mr. Harris's deposition.

After responding to the Second Amended Complaint two weeks later, Defendants asked Plaintiffs to specifically identify any deficiencies in Defendants' first responses and production, alerted Plaintiffs that their new requests also sought information barred by legislative privilege, and requested Plaintiffs withdraw them and the Underwood deposition notice since Plaintiffs had not provided any basis to suspect the information sought was relevant and not privileged. Plaintiffs did not respond to Defendants' request to withdraw the deposition notice or otherwise, so Defendants' filed the August 13, 2026 letter with the Court outlining the dispute. ECF 28. Plaintiffs filed their motion several hours after the Court canceled the August 28, 2026 discovery conference, without seeking to engage with Defendants any further. For the first time, their

Motion addresses an exception to legislative privilege, but does not articulate how information within the exception could be relevant here.[10]

## III. ARGUMENT

Although Plaintiffs claim in the instant Motion to be seeking information about "administrative" actions taken by legislators and their staff, their failure to articulate any relevance for such information shows it is merely a facade to circumvent legislative immunity and privilege. Plaintiffs are challenging legislation and the legislative process, so the only information in Defendants' possession potentially relevant to those issues are necessarily legislative and, to the extent possessed by City Council members and staff, it is protected.

### A. *Legislative Immunity Categorically Bars Discovery Directed to City Council and Legislative Staff Regarding Legislative Activity*

Absolute legislative immunity, and its companion privilege, has twin foundations. Like other immunities, it shields government officials from "pretrial matters [such] as discovery" because "'[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow*, 457 U.S. at 817). Legislative immunity recognizes "that 'it [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators[.]'" *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (quoting *Fletcher v. Peck*, 10 U.S. 87 (1810)).

Legislative immunity has two applications specific to discovery: first, it bars seeking discovery from those who acted as part of the legislative process, because legislative immunity

[10] Defendants note that they do not believe Plaintiffs have satisfied Rule 37(a)(1)'s good faith attempt given that Plaintiffs never previously claimed they sought information about "administrative" activities or cited a case to that effect, and to date have not articulated how the claims would be relevant if not targeted at the legislative process.

includes immunity "'from the burden of defending'" against suit. *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 331 (3d Cir. 2006) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)). Second, it bars discovery that has the aim of "'inquir[ing] into legislative acts or the motivation for actual performance of legislative acts.'" *Id.* (quoting *United States v. Brewster*, 408 U.S. 501, 508 (1972)); *see also* Wright & Miller, 26A Fed. Prac. & Proc. Evid. § 5675 n.11 Legislative Privilege (1st ed.) ("If the legislator cannot be punished for some legislative act, then evidence relevant to prove that act is inadmissible even though it is not itself a legislative act."). That is, legislative immunity procedurally shields officials from the burden of responding to discovery relating to claims arising from legislative activity and substantively bars discovery into the motivation for legislative acts, even if the material or testimony sought occurred outside the legislative chamber. As the Third Circuit explained in *Larsen v. Senate Committee of Pennsylvania*,

> [t]he extensive discovery [plaintiff] seeks into the motives for the [legislators'] votes, discussion among them, material each considered and the myriad other matters that enter into any legislator's vote would entail the paradigmatic impermissible questioning of the [legislators] in another place about their disposition of a matter we have already held lies within the sphere of their legislative activities. This would also cause the other injury that underlies the need for legislative immunity by diverting their time and attention away from legislative duties. Merely to state the effect is to recognize why legislative immunity must cover the . . . relief [plaintiff] seeks against the [legislators].

152 F.3d 240, 254 (3d Cir. 1998) (citing *Tenney*, 341 U.S. at 377); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998) ("The privilege of absolute immunity 'would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives.'" (quoting *Tenney*, 341 U.S. at 377)).

Courts apply legislative immunity "broadly to effectuate its purposes." *Youngblood v. DeWeese*, 352 F.3d 836, 842 (3d Cir. 2003). As a result, the privilege aspect of legislative

immunity "extends to discovery requests, even when the lawmaker is not a named party in the suit: complying with such requests detracts from the performance of official duties." *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) (citing *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181 (4th Cir. 2011); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988)); *see also League of Women Voters of Fla., Inc. v. Lee*, No. 21cv186-MW/MAF, 2021 WL 5283949, at *2 (N.D. Fla. Nov. 4, 2021) ("[L]egislative privilege furthers the policy goals behind legislative immunity by preventing parties from using third-party discovery as an end-run around legislative immunity—harassing legislators through burdensome discovery requests." (citing *Wash. Suburban*, 631 F.3d at 181)); *Mun. Revenue Servs., Inc. v. Xspand, Inc.*, No. 4:CV-05-0671, 2007 WL 1314875, at *4 (M.D. Pa. May 4, 2007) (legislative immunity bars to third party subpoena to state legislator with respect to legislative activities).

When officials with only legislative power act, immunity applies so long as the acts were "taken 'in the sphere of legitimate legislative activity.'" *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 189 (3d Cir. 2021) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). "[D]rafting, introducing, debating, passing, or rejecting legislation" are all legislative activities protected by legislative immunity. *Baraka v. McGreevey*, 481 F.3d 187, 196 (3d Cir. 2007). Legislative acts also include legislative factfinding and investigation, writing committee reports, offering resolutions, voting, and "the things generally done in a session of the House by one of its members in relation to the business before it." *HIRA*, 991 F.3d at 189 (quoting *Youngblood*, 352 F.3d at 839). Even meetings and communications with third parties, such as sending a letter, can be "protected legislative factfinding" if done at least in part to potentially gather more information about a subject which the sender had the power about which to legislate. *Id.* at 190. Only "political activities like performing 'errands' for constituents, making appointments with

government agencies, securing government contracts, preparing news releases, and delivering speeches outside Congress" are unprotected. *Id.* at 189 (citing *United States v. Brewster*, 408 U.S. 501, 528 (1972)).

Here, Plaintiffs' claims directly and exclusively target two pieces of legislation and the process by which they were enacted. Procedurally, Plaintiffs allege that the legislators met and voted on amendments in violation of the Sunshine Act and the Home Rule Charter. Substantively, they claim that the laws violate the Contracts Clause, are irrational under substantive due process, and deny equal protection to African American small landlords. Thus, to be relevant, any discovery Plaintiffs seek must necessarily relate to legislative action; otherwise, they have no bearing on the claims at issue. This is not a case about a legislative staffer's firing, *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 330 (3d Cir. 2006), or that derive from non-legislative public statements or assistance with government contracts, *HIRA*, 991 F.3d at 189, where at least some nonlegislative actions are at issue and discovery into them might be expected.

Plaintiffs' actual discovery requests only illustrate their impropriety. They repeatedly seek legislators' communications, who they met with, notes on what was discussed, and their thoughts and edits on drafts of the legislation at issue. *See supra* Part II.B.1. Or, as they characterize them in their motion: "The discovery seeks facts and records concerning matters placed at issue in the operative action, including communications, access, meetings and meeting requests, persons with knowledge, recordkeeping, administrative practices, relevant third-party interactions, and the factual circumstances surrounding Defendants' conduct." Pls.' Br. at 13[11] (ECF No. 31). The "matters placed at issue" are legislation and actions during the legislative

[11] Pincites refer to the ECF pagination unless otherwise indicated.

process, so things like "communications," "meeting and meeting requests," and "third party interactions" about them are protected by legislative privilege and immunity. Nor have Plaintiffs offered any explanation for how the information they seek could be relevant for anything other than impugning the legislation and attacking legislative motive. And the breadth of the requests---which are largely not targeted at specific factual issues---suggests more of a fishing expedition than any true need for discovery to resolve a particular factual dispute.

To the extent Councilmembers or staff could have information or documents not arising from their involvement in the legislative process, they would also be protected from Plaintiffs' current request by legislative immunity based on the seemingly only justification for this discovery: divining legislative motive. But the substantive component of legislative immunity bars this inquiry. *See, e.g.*, *Tenney*, 341 U.S. at 377; *cf. Gravel v. United States*. 408 U.S. 606, 622 (1972) (noting privilege does not apply so long as "the questions do not require testimony about *or impugn* a legislative act" (emphasis added)); *Larsen v. Senate Committee of Pennsylvania*, 152 F.3d 240, 254 (3d Cir. 1998) (discovery into "material [legislators] considered and the myriad other matters that enter into any legislator's vote would entail the paradigmatic impermissible questioning of the [legislators]"); *In re Hubbard*, 803 F.3d at 1311 ("[T]he factual heart of the retaliation claim and the scope of the legislative privilege were one and the same: the subjective motivations of those acting in a legislative capacity. Any material, documents, or information that did not go to legislative motive was irrelevant to the retaliation claim, while any that did go to legislative motive was covered by the legislative privilege.").

Plaintiffs' claimed injuries stem entirely from the legislation and legislative process. They have not articulated how documents and communications concerning the Councilmembers'

and staff's nonlegislative activities would be otherwise relevant. As a result, their discovery is improper.

### B. Plaintiffs Seek to Depose Cade Underwood Regarding Legislative Activity

For the same reasons, Plaintiffs attempt to depose Cade Underwood is also barred by legislative immunity and privilege. Mr. Underwood is the Director of Legislation and Policy for Councilmember Nicolas O'Rourke, the sponsor of the legislation at issue. Plaintiffs say they seek his deposition to

> address factual matters relevant to the claims and defenses without necessarily intruding upon protected legislative acts. Those matters include, as applicable, the receipt and routing of communications, meetings and meeting requests, administrative procedures, scheduling, recordkeeping, identification of persons with knowledge, custodianship and maintenance of records, authentication, and other objective factual matters within Mr. Underwood's knowledge.

Pls.' Br. at 16. But as discussed above, to the extent any of those topics relate to Mr. Underwood's efforts regarding the legislation, they are barred. And if they do not relate to his legislative activities, Plaintiffs have not explained how they could be relevant.[12]

### C. Where Legislative Immunity Applies, No Individualized Privilege Log Is Required Because That Would Thwart the Purpose of the Immunity

Plaintiffs also complain that Defendants have not provided a privilege log, suggesting this is like "ordinary" discovery. (Pls. Br. at 13, 18-19). But Defendants have properly declined to do so because when legislative immunity and privilege are at issue, discovery is not "ordinary"; it risks violating constitutional principles because searching for, collecting, and

[12] To the extent there are questions about authentication, Defendants have been happy to work cooperatively with Plaintiffs to avoid evidentiary issues regarding undisputed facts, such as by responding to Plaintiffs' Request for Admissions, and stipulating the authenticity of documents. A deposition of the legislation's key staffer would present an undue burden out of proportion to the litigation on Defendants, particularly where there are less intrusive methods of accomplishing the same without raising constitutional concerns and Plaintiffs' other efforts suggest attempts to probe into forbidden areas if given the chance.

reviewing potentially relevant and responsive documents and information in order to generate such a log would contravene the very purpose of the immunity: to protect legislators from the "'cost and inconvenience and distractions'" of litigation about legislation.[13] *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998) (quoting *Tenney*, 341 U.S. at 377)). Indeed, Plaintiffs' cited cases all address ordinary evidentiary privileges designed to protect confidentiality of information, not privilege stemming from immunity. Pls.' Br. at 13, 19. Legislative immunity and privilege are much broader than, for instance, the deliberative process privilege, and protect legislators not only from inquiries about their deliberations, but also from inquiries into factual matters because even responding imposes a burden. Plaintiffs' claims all relate to the legislation and the legislative process, so only information and documents about legislative activity would be relevant, and the privilege bars that. Plaintiffs must first demonstrate there are some relevant, nonlegislative activities before "ordinary" discovery about them can potentially be proper.[14]

### D. Plaintiffs Should Not Be Permitted Further Interrogatories Without Leave of Court

Plaintiffs already served the maximum number of interrogatories permitted by the Rules. They did not seek Defendants' consent or prior leave of court to exceed that limit as the Rules require. The Rules do not provide an exception where an amended pleading raises new issues—parties must be judicious in how they exhaust their interrogatories if they do not want to have to seek relief from the limit from the opposing party or the Court. And Plaintiffs' submission of 76 requests for documents suggests they have not been particularly judicious when their requests are

[13] That is also why, for instance, denials of such immunity are immediately appealable interlocutory orders. *See HIRA*, 991 F.3d at 187-88.

[14] Even then though it is questionable whether that discovery would ultimately be permissible, since legislative privilege also bars discovery that has the aim of "'inquir[ing] into legislative acts *or the motivation for actual performance of legislative acts*.'" *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 331 (3d Cir. 2006) (emphasis added).

not limited. Thus, to the extent the Court does not find the present interrogatories barred, Plaintiffs should not be permitted further interrogatories without consent or leave of court.

### E. The Discovery Deadline

Although Defendants do not believe Plaintiffs have thus far sought much proper discovery, and that no discovery is appropriate in light of Defendants' Motion to Dismiss, Defendants take no position on Plaintiffs' request to extend the discovery deadline.

## IV. CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court deny Plaintiffs' Motion and bar further discovery in violation of legislative immunity and privilege. To the extent that the Court grants Plaintiffs' Motion to Compel, Defendants request that the Court provide for a temporary stay of its order on the Motion to Compel to provide Defendants an opportunity to pursue an interlocutory appeal concerning immunity. *See HIRA*, 991 F.3d at 187-88 ("Denials of immunity are immediately appealable even if the denial is 'implicit,'" such as where order "would require the Legislators to bear the burdens of discovery and other pretrial matters.").

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Renee Garcia, City Solicitor

Date: August 31, 2026

By: */s/ William B. Shuey*

WILLIAM B. SHUEY (PA ID No. 208792)
Senior Attorney
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5233
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing Motion, Memorandum of Law, and Proposed Order upon all counsel of record via ECF system.

Date: August 31, 2026

*/s/ William B. Shuey*
William B. Shuey
Senior Attorney