**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLOYD et al. | : | |
| | : | |
| v. | : | No. 2:26-cv-02403 |
| CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of __________________, 2026, upon consideration of the Motion of Women's Council of Philadelphia, Inc. for Leave to File Brief as Amicus Curiae in Support of Plaintiffs and in Opposition to Defendants' Motion to Dismiss, it is hereby ORDERED that the Motion is GRANTED.

Women's Council of Philadelphia, Inc. is granted leave to file the proposed amicus curiae brief attached to its Motion as Exhibit A. The Clerk of Court shall docket the brief, and the Court shall consider the submission in resolving Defendants' pending motion to dismiss.

BY THE COURT:

____________________________________
WENDY BEETLESTONE, J.

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLOYD et al. | : | |
| | : | |
| v. | : | No. 2:26-cv-02403 |
| CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**MOTION OF WOMEN'S COUNCIL OF PHILADELPHIA, INC. FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Nonparty Women's Council of Philadelphia, Inc. (the "Women's Council"), a local branch of the Women's Council of the National Association of Real Estate Brokers ("NAREB"), by and through undersigned counsel, respectfully moves for leave to file the accompanying brief as amicus curiae in support of Plaintiffs Seth Floyd and Erica Hadley and in opposition to Defendants' pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, the Women's Council states as follows:

1. The Women's Council advances opportunity, leadership, professional participation, and equitable access to real estate ownership. NAREB was established in 1947 in response to racial exclusion from the real estate industry. The national Women's Council was established in 1971 to advance women's participation, leadership, and opportunity in the profession. Preservation of minority ownership and the capacity to acquire, operate, protect, and pass on income producing real estate are central to the Women's Council's institutional interests.

2. This litigation concerns Philadelphia Bills Nos. 250329-AA and 250330-AA, which affect rental licensing, housing regulation, and the rights and obligations of rental property owners and tenants. Plaintiffs, both African American rental property owners, allege that they

personally participated in the legislative process and warned City Council of the disproportionate burdens the bills would impose upon independent and minority housing providers. Second Amended Complaint ("SAC"), ECF No. 21, ¶¶ 4 to 5, 67 to 79.

3. The Women's Council supports Plaintiffs' opposition to dismissal. Its proposed brief explains why the allegations concerning discriminatory legislative purpose, interference with existing property interests, impairment of established contractual relationships, and departures from mandatory legislative procedures warrant application of the constitutional and statutory protections Plaintiffs invoke.

4. The Women's Council offers a distinct institutional perspective on the relationship among minority property ownership, unequal access to capital, neighborhood rental housing, and intergenerational wealth. Its interest in women's leadership and economic participation informs that perspective. The Women's Council does not assert that Plaintiffs have pleaded a separate claim of sex discrimination or seek to add such a claim.

5. The proposed brief centers on the constitutional issues of racial discrimination and regulatory taking. It explains how Plaintiffs' allegations should be assessed under *Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252 (1977), and *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978), while addressing the relevant limitations and distinctions in *Nekrilov v. City of Jersey City*, 45 F.4th 662 (3d Cir. 2022).

6. The Women's Council's perspective also assists the Court in evaluating the relationship between the pleaded injuries and the remaining claims, including legislative accountability, substantive due process, existing lease obligations, Pennsylvania constitutional protections, and responsibility for formally adopted municipal policies.

7. The proposed brief does not ask the Court to choose between safe rental housing and minority ownership. It explains why those interests should advance together, and why tenant protection objectives do not displace the constitutional and statutory limitations governing the means a municipality employs.

8. The Women's Council does not seek to introduce new claims, add parties, expand the operative pleadings, or supply additional adjudicative facts outside the SAC and its incorporated materials. Its institutional analysis explains the significance of the allegations already presented. It supplements rather than substitutes for Plaintiffs' own advocacy.

9. The Court has discretion to permit an amicus submission that will assist its consideration of the questions presented. The Women's Council seeks leave rather than asserting an automatic right to file. Its proposed brief is attached as Exhibit "A."

10. The Court has received a proposed amicus submission supporting Defendants, ECF No. 25-3. The Women's Council's submission would provide a materially different perspective concerning minority ownership, property rights, and the constitutional implications of the challenged enactments.

11. The Women's Council requests permission to submit the attached brief and to have it considered in resolving the pending motion to dismiss. It does not request participation in oral argument absent further leave of Court.

WHEREFORE, Women's Council of Philadelphia, Inc. respectfully requests that the Court grant this Motion, enter the accompanying proposed Order, and direct the Clerk of Court to docket the brief attached as Exhibit A in support of Plaintiffs and in opposition to Defendants' motion to dismiss.

Respectfully submitted,

*/s/ Christopher R. Booth, Jr.*

Christopher R. Booth, Jr., Esquire
PA Attorney I.D. No. 59395
The Booth Law Firm
711 West Avenue
Jenkintown, PA 19046
215-518-6683
christopher@theboothlawfirm.com

Counsel for Amicus Curiae Women's Council of Philadelphia, Inc.

Date: October 27, 2026

# Exhibit A

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FLOYD et al. | : | |
| | : | |
| v. | : | No. 2:26-cv-02403 |
| CITY COUNCIL FOR THE CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**BRIEF OF AMICUS CURIAE WOMEN'S COUNCIL OF PHILADELPHIA, INC. IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


**Page**

INTEREST OF AMICUS CURIAE ........ 1

INTRODUCTION ........ 2

FACTUAL BACKGROUND ........ 4

ARGUMENT ........ 5

I. THE PLEADING STANDARD REQUIRES CONSIDERATION OF PLAINTIFFS' FACTUAL ALLEGATIONS IN CONTEXT AND REASONABLE INFERENCES IN THEIR FAVOR ........ 5

II. PLAINTIFFS PLAUSIBLY ALLEGE INTENTIONAL RACIAL DISCRIMINATION, AND THEIR ALLEGATIONS MUST BE ASSESSED COLLECTIVELY UNDER *ARLINGTON HEIGHTS* (COUNT V) ........ 6

A. Facial neutrality does not foreclose a claim supported by circumstantial allegations of racial purpose ........ 6

B. Legislative notice is significant as part of the alleged sequence, not as a substitute for purpose ........ 6

C. Tenant protection objectives do not categorically defeat the pleaded inference ........ 7

D. The alleged procedural departures and unequal treatment reinforce the inference of discriminatory purpose ........ 8

III. PLAINTIFFS' REGULATORY TAKING CLAIM CONCERNS EXISTING PROPERTY AND INVESTMENT INTERESTS THAT REQUIRE APPLICATION OF THE *PENN CENTRAL* FRAMEWORK (COUNT III) ........ 9

A. The protected interests are existing properties and contractual interests, not an entitlement to unchanged regulation ........ 9

B. Economic impact must be evaluated in relation to the property, not dismissed as an objection to all compliance costs ........ 10

C. Investment backed expectations must be assessed realistically and without assuming perpetual regulatory immunity ........ 10

D. Public purpose informs the character inquiry but does not eliminate the compensation question ........ 11

E. Existing ownership interests must be evaluated under the property-as-a-whole framework ........ 12

IV. THE ALLEGED LEGISLATIVE DEPARTURES IMPLICATE ENFORCEABLE SAFEGUARDS OF PUBLIC PARTICIPATION AND ACCOUNTABILITY (COUNTS I AND II) ........ 12

A. The Sunshine Act claim should be evaluated under the statutory requirements and the specific official conduct alleged ........ 12

B. Mandatory Charter safeguards cannot be displaced by the asserted desirability of the legislation ........ 13

C. The statutory prerequisites and relief sought require careful application ........ 14

V. PLAINTIFFS' SUBSTANTIVE DUE PROCESS CHALLENGE REQUIRES EVALUATION OF THE RELATIONSHIP BETWEEN THE CHALLENGED PROVISIONS AND LEGITIMATE PUBLIC PURPOSES (COUNT IV) ........ 15

VI. THE ALLEGED INTERFERENCE WITH EXISTING LEASES WARRANTS ANALYSIS UNDER THE CONTRACTS CLAUSE (COUNT VI) ........ 16

A. Application to preexisting leases raises a distinct impairment question ........ 16

VII. PENNSYLVANIA'S CONSTITUTIONAL PROTECTIONS INDEPENDENTLY SUPPORT PLAINTIFFS' PROPERTY RIGHTS AND EQUAL TREATMENT CLAIMS (COUNTS VII AND VIII) ........ 17

A. Article I, Section 1 requires consideration of Pennsylvania's protection of property and economic liberty ........ 17

B. Pennsylvania's independent economic-liberty standard requires a separate inquiry ........ 18

C. Article I, Section 26 protects against discrimination in the exercise of civil rights ........ 19

VIII. THE CHALLENGED ORDINANCES SUPPLY THE OFFICIAL POLICY FOUNDATION FOR MUNICIPAL LIABILITY (COUNT IX) ........ 20

CONCLUSION ........ 20

# TABLE OF AUTHORITIES


**Page**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................5

*City of Philadelphia v. Shanahan*, 550 A.2d 1388 (Pa. Commw. Ct. 1988) ................................14

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) ................16, 17

*Ladd v. Real Estate Commission of Pennsylvania*, 230 A.3d 1096 (Pa. 2020) ...........17, 18, 19, 21

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) ..........................................................................................................20, 21

*Nekrilov v. City of Jersey City*, 45 F.4th 662 (3d Cir. 2022) ............................................... *passim*

*Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) .........9, 10, 11, 12, 21

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979) ........................6, 8, 21

*Sveen v. Melin*, 138 S. Ct. 1815 (2018) ............................................................16, 17, 21

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).......................................................................................... *passim*

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. I, § 10, cl. 1..........................................................................3, 16, 17

U.S. Const. amends. V, XIV ........................................................................... *passim*

Pa. Const. art. I, § 1.....................................................................................17, 18

Pa. Const. art. I, § 26...........................................................................................19

42 U.S.C. § 1983 ...............................................................................................20

65 Pa.C.S. § 703 ...............................................................................................13

65 Pa.C.S. § 704...............................................................................................13

65 Pa.C.S. § 713...............................................................................................13

Philadelphia Home Rule Charter § 2-201 ...............................................................13

**Record Materials**

Second Amended Complaint, ECF No. 21, and incorporated exhibits ................................ *passim*

Philadelphia Bills Nos. 250329-AA and 250330-AA.......................................................................4

**BRIEF OF AMICUS CURIAE WOMEN'S COUNCIL OF PHILADELPHIA, INC. IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTEREST OF AMICUS CURIAE

Women's Council of Philadelphia, Inc. (the "Women's Council") submits this brief in support of Plaintiffs Seth Floyd and Erica Hadley and in opposition to Defendants' motion to dismiss. The Women's Council is a local branch of the Women's Council of the National Association of Real Estate Brokers ("NAREB"). NAREB's founding commitment to democracy in housing and the national Women's Council's commitment to women's leadership inform a common institutional concern: equal opportunity must include a meaningful opportunity to acquire, preserve, operate, and transfer real property.

The Women's Council approaches this litigation from that perspective and believes that minority ownership is essential to housing opportunity. A commitment to fair housing must account for the rights of Black owners as well as the rights of tenants and must recognize that independent neighborhood owners can contribute to the availability and continuity of affordable rental housing. Consistent with this commitment, the SAC properly alleges and highlights the financial barriers the subject ordinances impose on ownership and financing, the role of small housing providers, and Plaintiffs' own investments. SAC ¶¶ 12 to 55.

The Women's Council does not argue that the ordinances discriminate on the basis of sex, and does not add any claim to the SAC. Rather, it asserts why the existing claims concerning race, property, and economic opportunity implicate institutional interests extending beyond the two named Plaintiffs. Stated simply, The Women's Council wants a voice in this important debate.

For clarity, this brief uses "Women's Council" exclusively for the amicus and "City Council" exclusively for Philadelphia's legislative body.

## INTRODUCTION

As stated above, the significance of this litigation extends beyond the immediate financial interests of two owners. Historical barriers to acquiring and financing real property have constrained the ability of Black Philadelphians to accumulate assets, participate in neighborhood development, and transfer wealth. Against that historical backdrop, layering additional financial and/or regulatory obligations upon small, minority property owners should be appropriately scrutinized under the law to ensure against unintended results. The SAC, and Plaintiffs' specific investments, are but one example of how the onerous requirements of the ordinances materially impact the broader role of independent minority housing providers in Philadelphia. SAC ¶¶ 12–55.

The practical ability to absorb fixed compliance expenses, obtain replacement financing, and sustain interruptions in rental income differ between independent owners and large institutional providers. Larger, institutional housing providers can absorb these costs – smaller providers cannot. Safe rental housing and the preservation of minority ownership are complementary public interests; neither eliminates the legal protections owed to the other. Accordingly, City Council's deliberative process, particularly including the SAC's alleged legislative warnings and surrounding conduct are material to the contextual *Arlington Heights* inquiry.

Here, the SAC alleges that Floyd and Hadley, Black independent rental property owners, personally warned City Council about financial constraints, compliance expenses, and the disproportionate consequences the challenged legislation would impose upon minority housing providers. It also alleges irregularities in the legislative process and unequal treatment of public speakers. SAC ¶¶ 67 to 88, 106 to 118, 204 to 225. Those allegations provide a sequence of events

and surrounding circumstances to be considered together, not isolated observations to be minimalized outside of the broader context.

The Equal Protection Clause permits discriminatory purpose to be established through circumstantial evidence. *Arlington Heights*, 429 U.S. at 265 to 268. Here, the Women's Council urges the Court to recognize the cumulative significance of the alleged impact, legislative notice, procedural departures, and treatment of affected participants. Plaintiffs are not required to produce an admission of racial animus to plead a discrimination claim. Rather, they must allege facts supporting the required inference, and the Women's Council submits that their allegations, considered collectively, do so.

The property claims likewise require examination of the interests actually affected. The SAC identifies existing rental properties, acquisition and rehabilitation expenditures, operating burdens, rental income, and established leases. SAC ¶¶ 15 to 32, 90 to 105, 154 to 179, 226 to 239. This is not a case involving an entitlement to profit or freedom from future regulation. It is the application of constitutional protection to property already acquired, improved, and committed to providing rental housing.

*Nekrilov*, 45 F.4th 662, affirmed dismissal of constitutional challenges to restrictions on short term rental activity. That decision did not establish that every housing regulation is immune from challenge. On the contrary, it requires careful identification of the property interests, economic consequences, contractual rights, and substantive standards at issue. The Women's Council grounds its support in Plaintiffs' allegations about their existing properties and leases, rather than a claimed right to preserve a particular regulatory environment indefinitely. The remaining counts complement these constitutional concerns.

Mandatory legislative procedures are designed to protect against unintended results or burdens before bills become law. The Contracts Clause protects existing contractual arrangements under its established test. Pennsylvania's Constitution independently protects property and civil rights. Municipal liability principles connect injuries caused by officially enacted policies to the municipality responsible for them. None of these protections is answered simply by identifying a legitimate objective at a high level of generality.

The Women's Council respectfully urges the Court to deny Defendants' motion to dismiss. The SAC should be evaluated as a concrete challenge to the adoption and operation of these ordinances, with reasonable factual inferences drawn in Plaintiffs' favor and each claim assessed under the standard that governs it.

## FACTUAL BACKGROUND

The SAC challenges Philadelphia Bills Nos. 250329-AA and 250330-AA. The first modifies rental licensing and owner accountability requirements. The second modifies landlord and tenant protections, including provisions governing lease renewal or termination and habitability. SAC ¶ 6, Exs. A and B. Floyd and Hadley identify their existing rental properties and investments in acquiring and rehabilitating those properties. The SAC alleges increased operating burdens and interference with rental income and established lease relationships. SAC ¶¶ 15 to 32, 90 to 105, 154 to 179, 226 to 239. These allegations concern Plaintiffs' own interests, not solely the aggregate impact of regulation on landlords generally.

The SAC situates those interests within a broader account of unequal access to ownership, financing, and capital. It also cites research concerning independent owners' role in naturally occurring affordable housing and their comparatively limited access to financial resources. SAC ¶¶ 33 to 55. The Women's Council relies on that pleaded context to explain the significance of the

challenged burdens, not to introduce an independent evidentiary record. Plaintiffs allege personal participation in the legislative process, including warnings concerning the financial consequences for independent and minority owners. They further allege attendance irregularities, inadequate disclosure of material amendments, and unequal treatment of affected public participants. SAC ¶¶ 67 to 88, 106 to 118, 119 to 153, 204 to 225.

The incorporated legislation contains qualifications and exceptions. As described in the SAC's exhibits, certain license notices may be provided by email for properties containing one or two units with affirmative written tenant consent; certain documented sales for purchaser occupancy remain recognized; an owner occupied unit exception depends upon a specified judicial finding; and the habitability provisions permit rebuttal on stated grounds. SAC Ex. A at 3; Ex. B at 4 to 5. Those provisions are part of the challenged regulatory scheme. Their presence does not establish that they address Plaintiffs' alleged injuries or remove the need to examine the operative obligations.

## ARGUMENT

### I. THE PLEADING STANDARD REQUIRES CONSIDERATION OF PLAINTIFFS' FACTUAL ALLEGATIONS IN CONTEXT AND REASONABLE INFERENCES IN THEIR FAVOR

A complaint must allege sufficient factual matter to support a plausible claim for relief. Plausibility is not a requirement that the plaintiff establish probable success. The inquiry is whether the factual allegations, accepted as true, permit a reasonable inference of liability under the applicable law. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 to 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 to 556, 570 (2007).

The Women's Council supports Plaintiffs because their allegations identify the challenged legislation, their affected properties and contractual relationships, their direct participation in the

legislative process, and the circumstances surrounding enactment. SAC ¶¶ 12 to 32, 67 to 118. Accordingly, Plaintiffs' claims rest on the concrete allegations with reasonable inferences drawn in Plaintiffs' favor.

## II. PLAINTIFFS PLAUSIBLY ALLEGE INTENTIONAL RACIAL DISCRIMINATION, AND THEIR ALLEGATIONS MUST BE ASSESSED COLLECTIVELY UNDER *ARLINGTON HEIGHTS* (COUNT V)

### A. Facial neutrality does not foreclose a claim supported by circumstantial allegations of racial purpose

The Women's Council's support for Count V begins with a straightforward constitutional principle: a municipality cannot avoid scrutiny of an allegedly discriminatory decision merely by expressing that decision in facially neutral language. The relevant question is whether the challenged action was motivated, at least in part, by an impermissible racial purpose. That purpose need not be the sole or dominant reason for the decision. *Arlington Heights,* 429 U.S. at 265 to 266.

*Arlington Heights* identifies several sources of relevant evidence, including disproportionate impact, historical background, the sequence of events preceding the decision, departures from ordinary procedures, substantive departures, and legislative history. *Id*. at 266 to 268. Context is key. A circumstance that is inconclusive in isolation may assume greater significance when considered with the other circumstances surrounding the same governmental decision.

Plaintiffs meet this burden. They describe historical disparities affecting access to capital and ownership, foreseeable burdens on Black and minority independent owners, their own direct warnings to City Council, procedural irregularities, and unequal treatment of public speakers. SAC ¶¶ 33 to 42, 67 to 88, 106 to 118, 204 to 225. The Women's Council urges the Court to assess what

those allegations plausibly suggest together, rather than treating each as an independent claim that must itself prove discriminatory intent.

### B. Legislative notice is significant as part of the alleged sequence, not as a substitute for purpose

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979), requires an inference that the decisionmaker acted at least in part because of an adverse effect upon the protected group, rather than merely with awareness that the effect would occur. Plaintiffs' argument is not that every refusal to accept a minority owner's policy recommendation establishes racial discrimination. However, their warnings to City Council matter because they occurred within a broader sequence involving unequal treatment and departures from the procedures through which those warnings should have been considered. The alleged departures and treatment of participants bear on how City Council acted in that setting. Here, Plaintiffs allege facts to support a reasonable inference that City Council's decision reflected more than an ordinary policy disagreement.

The Women's Council's institutional perspective highlights why the content of the warnings matters. The SAC describes constraints on access to financing and reserves that affect the practical ability to absorb fixed obligations. SAC ¶¶ 33 to 55, 67 to 79. Identical regulatory language can have different economic consequences for owners with different access to capital. That context does not itself establish intent. It does explain why Plaintiffs' allegations of notice, treatment, and procedure should be evaluated with attention to the particular racial and economic consequences identified before enactment.

The proper inquiry therefore, is whether the alleged impact, notice, sequence, procedural departures, and treatment of affected participants collectively make discriminatory purpose a

plausible inference. Under *Arlington Heights*, those are appropriate subjects of inquiry. The Women's Council submits that the allegations supporting Count V meet that standard.

### C. Tenant protection objectives do not categorically defeat the pleaded inference

The Women's Council recognizes the importance of habitability, safety, housing stability, and protection against retaliation. *Arlington Heights* expressly recognizes that governmental decisions may have multiple purposes. A legitimate objective therefore does not, by itself, establish that racial purpose played no role. 429 U.S. at 265 to 266. Likewise, statutory exceptions may be relevant to impact without answering the allegations concerning legislative process and unequal treatment.

Here, Plaintiffs are not outsiders to the housing interests the legislation purports to protect. They allege that they own and operate rental properties and warned that the measures would undermine independent minority housing provision. SAC ¶¶ 12 to 55, 67 to 79. The Women's Council's position is that minority ownership and tenant stability deserve a constitutional analysis that recognizes both, rather than presuming that one necessarily defeats the other. Count V should proceed because Plaintiffs allege circumstances supporting an inference of purposeful discrimination, not merely dissatisfaction with the distribution of regulatory costs. The Court should reject dismissal premised solely on the ordinances' neutral wording, the absence of an express admission of racial animus, or the identification of legitimate housing objectives.

### D. The alleged procedural departures and unequal treatment reinforce the inference of discriminatory purpose

Plaintiffs' allegations extend beyond City Council's knowledge that the challenged enactments could impose disproportionate burdens upon Black and minority rental property owners. They allege that, after receiving warnings about those consequences, City Council

proceeded amid departures from established procedures and unequal treatment of affected participants. SAC ¶¶ 67–88, 106–118, 204–225. Those allegations should be assessed together rather than as disconnected complaints about legislative etiquette.

*Arlington Heights* identifies the sequence preceding a governmental decision, departures from ordinary procedures, and legislative history as potential circumstantial evidence of purpose. 429 U.S. at 266–68. Under *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979), the requisite inference is action at least partly because of, rather than merely in spite of, adverse effects on a protected group. The alleged procedural departures and treatment of participants matter because they may supply evidence bearing on that distinction.

The Court should therefore evaluate the pleaded sequence in its entirety: the warnings concerning minority ownership and financing constraints, the treatment of affected speakers, the asserted departures from ordinary procedures, and the adoption of the challenged provisions. The ordinances' facial neutrality and legitimate tenant-protection objectives do not categorically foreclose an inference of mixed governmental purposes. Whether that inference can ultimately be proved is a question distinct from whether the SAC plausibly alleges it.

## III. PLAINTIFFS' REGULATORY TAKING CLAIM CONCERNS EXISTING PROPERTY AND INVESTMENT INTERESTS THAT REQUIRE APPLICATION OF THE *PENN CENTRAL* FRAMEWORK (COUNT III)

### A. The protected interests are existing properties and contractual interests, not an entitlement to unchanged regulation

The Takings Clause protects private property against governmental appropriation for public use without just compensation. Its regulatory application requires identification of the property interest and the nature and extent of the interference. Under *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124 (1978), the relevant considerations include economic impact, interference with distinct investment backed expectations, and the character of the

governmental action. The analysis considers the property as a whole rather than isolating a single affected use.

Plaintiffs identify existing rental properties, acquisition and rehabilitation expenditures, alleged operating burdens, and interference with rental income. SAC ¶¶ 15 to 32, 90 to 105, 154 to 179. The Women's Council supports those existing interests. Plaintiffs' ownership and contractual interests are distinct from a generalized demand to conduct a profitable business free from new regulation.

That distinction is important under *Nekrilov*, 45 F.4th 662. *Nekrilov* rejected a freestanding property interest in the forward looking right to operate short term rental businesses, while recognizing cognizable interests in the purchased properties, leases, and existing rental contracts. It then applied the regulatory taking framework to those interests. The Women's Council asks the Court to undertake the same identification of protected interests here, beginning with the properties Plaintiffs already own and the contractual arrangements they allege are affected.

### B. Economic impact must be evaluated in relation to the property, not dismissed as an objection to all compliance costs

The Women's Council's institutional concern is the preservation of ownership, not a constitutional guarantee of a particular profit margin. The SAC alleges a combination of regulatory obligations affecting the operation of Plaintiffs' existing rental properties. SAC ¶¶ 90 to 105, 154 to 179. Those allegations should be considered together in assessing the asserted economic interference. *Nekrilov* makes clear that lost anticipated profits are not equivalent to a drastic reduction in property value, and that other economically beneficial uses remain relevant. Its rejection of the claim rested in substantial part on the allegations actually made concerning revenue, property value, retained uses, and the ability to sell. 45 F.4th 662. The Women's Council

does not ask the Court to disregard that holding or treat every increased expense as a compensable taking.

Rather, the Women's Council urges the Court to read Plaintiffs' allegations as directed to the financial operation and protected interests in their identified properties, and to evaluate the alleged combination of restrictions and obligations under *Penn Central*.

### C. Investment backed expectations must be assessed realistically and without assuming perpetual regulatory immunity

Plaintiffs' acquisition and rehabilitation expenditures are real commitments already made to existing properties. SAC ¶¶ 15 to 32. For the Women's Council, preserving the fruits of those commitments is part of preserving meaningful access to ownership. The right to enter the real estate market has limited practical value if the legal analysis fails to distinguish existing invested property from a hoped for future commercial opportunity.

The Women's Council recognizes that reasonable expectations must account for government's authority to regulate in the public interest. *Nekrilov* rejected the proposition that an earlier authorization of short term rentals and encouraging official statements guaranteed that the same business model could continue indefinitely. 45 F.4th 662. Plaintiffs' claim here does not depend on such a guarantee. Instead, the relevant question is the extent to which the ordnances interfere with reasonable expectations associated with the particular properties and existing rental arrangements described in the SAC. *Penn Central* requires an assessment of the factors in context, not a categorical rule that every investor in a regulated field has surrendered constitutional protection.

### D. Public purpose informs the character inquiry but does not eliminate the compensation question

Housing regulation is an important exercise of municipal authority. *Penn Central* and *Nekrilov* recognize that a generally applicable public program adjusting economic benefits and burdens differs from a physical invasion.

The public character of a regulation nevertheless remains one part of the analysis. The compensation question is distinct from whether housing safety and stability are legitimate objectives. A regulatory taking claim asks whether the burden on protected property crosses the constitutional line requiring compensation, even when the government pursues a public purpose. *Penn Central,* 438 U.S. at 123 to 125.

The Women's Council respectfully submits that Count III should survive dismissal. Plaintiffs identify existing rental properties acquired and rehabilitated through personal investment, and allege cumulative obligations affecting the economic operation of those properties. Their allegations must be evaluated under *Penn Central*, including the economic impact on the properties as a whole, reasonable investment backed expectations, and the character of the governmental action.

### E. Existing ownership interests must be evaluated under the property-as-a-whole framework

*Nekrilov* forecloses treating diminished profitability or the loss of a preferred rental business model, standing alone, as a compensable taking. Plaintiffs nevertheless identify residential properties already acquired and rehabilitated, together with existing lease arrangements and alleged restrictions on their operation. SAC ¶¶ 15–32, 154–179. The inquiry should identify the protected interests actually affected rather than assume that a claim concerning rental housing is necessarily a claim to perpetuate unchanged regulation.

Under *Penn Central*, the Court must consider the economic impact on each relevant property as a whole, interference with reasonable investment-backed expectations, and the character of the governmental action. The viability of Count III depends upon whether the SAC plausibly alleges a sufficiently serious burden on the identified property interests (which it does), not merely a reduction in expected returns.

## IV. THE ALLEGED LEGISLATIVE DEPARTURES IMPLICATE ENFORCEABLE SAFEGUARDS OF PUBLIC PARTICIPATION AND ACCOUNTABILITY <u>(COUNTS I AND II)</u>

### A. The Sunshine Act claim should be evaluated under the statutory requirements and the specific official conduct alleged

Count I alleges attendance irregularities during committee proceedings and the continuation of official business without the required attendance. SAC ¶¶ 80 to 88, 119 to 135. The Women's Council supports examination of those allegations under the governing statutory provisions and the applicable quorum requirements. Count I alleges that committee members departed and returned during proceedings and that official business continued without required attendance.

The Sunshine Act's definitions include qualifying committees within the term agency and identify recommendations, policy establishment, decisions on agency business, and votes as forms of official action. 65 Pa.C.S. § 703. Section 704 requires official action and deliberations by a quorum to occur at a public meeting, subject to the statutory exceptions. 65 Pa.C.S. § 704. Section 713 authorizes specified judicial relief and gives the court discretion to invalidate official action taken at a meeting that failed to comply with the Act, subject to the provision's filing requirements. 65 Pa.C.S. § 713.

The Women's Council does not equate every absence during testimony with an automatic Sunshine Act violation. The claim concerns the official business Plaintiffs allege continued and

the legal requirements governing that business. Their observations and the materials identified in the SAC should be assessed against those requirements, rather than dismissed as an objection to legislative etiquette. For the Women's Council, procedural accountability has particular importance where minority owners appeared to describe burdens that they alleged would fall disproportionately upon them. The opportunity to speak is most meaningful when the legislative body follows the legally required process for considering and acting upon the matter. The Women's Council seeks enforcement of that process, not a judicial requirement that every public recommendation be adopted.

### B. Mandatory Charter safeguards cannot be displaced by the asserted desirability of the legislation

Count II alleges that material amendments were not adequately printed, distributed, or available before City Council acted. SAC ¶¶ 85 to 88, 136 to 153; Philadelphia Home Rule Charter § 2-201. That claim should be evaluated against the particular Charter requirements invoked in the SAC. *City of Philadelphia v. Shanahan*, 550 A.2d 1388 (Pa. Commw. Ct. 1988), is important because it enforced mandatory legislative notice requirements rather than treating them as optional in light of the City's preference to proceed. *Shanahan* concerned noncompliance with the Charter's newspaper publication requirements, not the precise amendment disclosure allegations here. Its relevance is the legal significance of mandatory enactment safeguards and the availability of invalidation for the violation it addressed.

As Plaintiffs allege, timely access to the operative legislative text permits affected owners and tenants to understand the proposal and respond before adoption. The alleged failure to make material amendments available therefore implicates more than a technical objection to document handling. It concerns the process by which substantive obligations became law. Neither the importance of housing policy nor the ultimate vote on the bills answers whether mandatory

procedures were followed. Counts I and II should be evaluated on their pleaded procedural facts and the applicable legal requirements. Those allegations also supply part of the contextual sequence relevant to Count V, without making success on a statutory count a prerequisite to the discrimination claim.

### C. The statutory prerequisites and relief sought require careful application

The Sunshine Act does not make every absence during testimony actionable. Count I must identify deliberation or official action subject to statutory requirements, the applicable quorum, and the meeting at which the asserted violation occurred. Section 713 also imposes filing deadlines and prescribes judicial relief, including discretionary invalidation in appropriate circumstances. The Women's Council urges the Court to evaluate those threshold requirements on the pleaded chronology rather than equate procedural irregularity with automatic invalidity.

The Charter claim likewise turns on the particular mandatory text and the alleged failure to comply with it. *Shanahan* enforced the publication requirement at issue there; it does not establish that every alleged defect in amendment circulation invalidates legislation. Independently of the outcome of Counts I and II, any adequately pleaded departures from ordinary procedures may remain relevant as circumstantial evidence under *Arlington Heights*.

## V. PLAINTIFFS' SUBSTANTIVE DUE PROCESS CHALLENGE REQUIRES EVALUATION OF THE RELATIONSHIP BETWEEN THE CHALLENGED PROVISIONS AND LEGITIMATE PUBLIC PURPOSES (COUNT IV)

Count IV concerns legislative action and is governed by rational basis review. *Nekrilov*, 45 F.4th 662. The SAC alleges economic and operational burdens and challenges their relationship to the public purposes invoked. SAC ¶¶ 90 to 118 and Count IV. The Court should consider those allegations in the context of the enacted scheme, including the operative obligations and exceptions, rather than treating the category of housing regulation as dispositive.

*Nekrilov* affirmed dismissal where the ordinance's stated objectives, including preservation of housing supply and residential neighborhood character, were rationally furthered by the restrictions on short term rentals. It also rejected reliance on an official's subjective motivation to defeat the legislative due process standard. That holding requires Plaintiffs' challenge here to focus on the alleged absence of a rational connection between the particular burdens imposed and a legitimate objective, rather than simply the intensity of their economic consequences.

The Women's Council respectfully submits that Count IV should proceed on its allegations of arbitrary legislative burdens. The rational basis standard remains deferential, but it should be applied to the challenged provisions and the allegations directed to them. The Court should also preserve the distinction between this legislative due process inquiry and the separate discriminatory purpose inquiry under *Arlington Heights*.

## VI. THE ALLEGED INTERFERENCE WITH EXISTING LEASES WARRANTS ANALYSIS UNDER THE CONTRACTS CLAUSE (COUNT VI)

The Contracts Clause limits state and municipal interference with existing contractual obligations. The threshold question is whether legislation substantially impairs a contractual relationship. That inquiry considers the contractual bargain, reasonable expectations, and the ability to preserve or restore contractual rights. If substantial impairment is established, the Court considers whether the measure reasonably and appropriately advances a significant and legitimate public purpose. *Sveen v. Melin*, 138 S. Ct. 1815 (2018); *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 to 413 (1983).

Count VI alleges interference with existing written leases. The SAC alleges that ordinances extend the good cause restriction from leases of less than one year to any lease. SAC ¶¶ 226 to 239; Ex. B at 4. The Women's Council urges the Court to assess the alleged interference with renewal, termination, and property management rights in relation to those existing agreements.

Here, Plaintiffs identify preexisting leases as the relationships affected and allege that the new restrictions materially alter the rights associated with them. Those allegations should be evaluated together with the text of the challenged expansion.

The Women's Council therefore believes that Count VI should be preserved. Plaintiffs identify existing written agreements and allege a material alteration of the renewal and termination rights associated with them. Their claim should be evaluated on that pleaded contractual interference and the incorporated legislative text, without requiring evidentiary proof of the claim at the pleading stage.

**A. Application to preexisting leases raises a distinct impairment question**

The Contracts Clause inquiry must distinguish regulation of future rental agreements from legislation that materially alters obligations under leases already executed. Plaintiffs allege existing written leases and a statutory expansion of good-cause restrictions affecting renewal and termination rights. SAC ¶¶ 226–239; Ex. B at 4. To the extent the ordinances govern those existing agreements, the Court should identify the rights the parties possessed when they contracted and assess the extent to which the legislation changes their enforceability.

A restriction on recovering possession following expiration of a specified term may affect an important part of a contractual bargain, but its significance depends upon the actual lease language, prior law, statutory exceptions, and the regulatory setting. Residential leasing has long been regulated; the Contracts Clause does not prohibit every modification of contractual expectations. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410–13 (1983); *Sveen v. Melin*, 138 S. Ct. 1815 (2018). The Women's Council asks the Court to apply that framework to the alleged impairment of existing agreements rather than dismiss the claim solely because the subject matter is housing regulation.

## VII. PENNSYLVANIA'S CONSTITUTIONAL PROTECTIONS INDEPENDENTLY SUPPORT PLAINTIFFS' PROPERTY RIGHTS AND EQUAL TREATMENT CLAIMS (COUNTS VII AND VIII)

### A. Article I, Section 1 requires consideration of Pennsylvania's protection of property and economic liberty

Article I, Section 1 of the Pennsylvania Constitution protects inherent rights that include acquiring, possessing, and protecting property. Plaintiffs invoke that protection in Count VII through allegations concerning their properties, the challenged operational burdens, and the asserted relationship between those burdens and public welfare. SAC ¶¶ 240 to 254. *Ladd v. Real Estate Commission of Pennsylvania*, 230 A.3d 1096 (Pa. 2020), confirms that Pennsylvania's rational basis analysis of protected economic liberty is less deferential than the federal counterpart. It requires consideration of whether the means have a real and substantial relationship to the public objective and whether the restrictions are unreasonable, unduly oppressive, or beyond the necessities of the case. Ladd also recognizes the presumption of constitutionality.

*Ladd* concerned an occupational licensing scheme as applied to a particular property management business. It did not adjudicate the Philadelphia ordinances at issue here. Its significance is that identification of a legitimate regulatory objective does not end the Pennsylvania constitutional analysis. The Court must examine the asserted burden and the relationship between the means chosen and the public interest. That principle speaks directly to the Women's Council's concern. Equal opportunity to enter real estate ownership and professional activity includes protection against legally impermissible restrictions on sustaining those activities. The SAC alleges that the challenged obligations impose concrete burdens upon existing properties and operations. SAC ¶¶ 15 to 55, 90 to 105, 240 to 254. Count VII should be assessed under Pennsylvania's own constitutional standard, not treated as resolved merely because the federal legislative due process standard is deferential.

*Ladd* also demonstrates the importance of the procedural stage. The Pennsylvania Supreme Court reversed dismissal because the allegations supported a colorable challenge to application of the licensing requirements. Accordingly, the Women's Council believes that Plaintiffs' Article I, Section 1 claim should proceed because it identifies protected property interests, particular legislative restrictions, and an alleged mismatch between those restrictions and the public objectives invoked. The Court should evaluate that claim independently while preserving the distinction between pleading a constitutional violation and ultimately proving it.

### B. Pennsylvania's independent economic-liberty standard requires a separate inquiry

Article I, Section 1 protects the acquisition, possession, and protection of property. In *Ladd*, the Pennsylvania Supreme Court explained that the Commonwealth's constitutional inquiry into economic restrictions is not identical to the highly deferential federal rational-basis standard. It considers whether the regulatory means bear a real and substantial relationship to a legitimate objective and whether the restrictions are unreasonable, unduly oppressive, or beyond the necessities of the case, while retaining the presumption of constitutionality.

The Women's Council recognizes the City's substantial interest in safe, stable housing. Plaintiffs nonetheless allege that obligations imposed on existing rental properties burden owners who have already committed acquisition and rehabilitation capital and whose access to reserves and financing may be constrained. SAC ¶¶ 15–55, 90–105, 240–254. The state constitutional inquiry therefore requires attention to the restrictions and their asserted practical effects. Even if the federal substantive due process theory fails under *Nekrilov,* that result would not, without separate analysis, resolve Count VII under *Ladd*.

### C. Article I, Section 26 protects against discrimination in the exercise of civil rights

Article I, Section 26 expressly constrains the Commonwealth and its political subdivisions from denying enjoyment of civil rights or discriminating in their exercise. Count VIII invokes that protection in connection with the alleged burdens on Black and minority independent owners and the circumstances surrounding enactment. SAC ¶¶ 255 to 268.

The Women's Council supports Count VIII on the same circumstances central to its support for Count V: the alleged racial impact, historical capital and financing disparities, direct legislative warnings, procedural departures, and unequal treatment of public speakers. SAC ¶¶ 33 to 42, 67 to 88, 106 to 118, 255 to 268. Those allegations should be examined together in assessing the claim of discriminatory governmental action. Read together, Counts V and VIII address complementary concerns. The first challenges the burdens imposed on protected property interests under Pennsylvania's constitutional standard. The second challenges alleged discrimination in the exercise of protected civil rights. The Women's Council urges the Court to deny dismissal of both and to consider each under its governing requirements.

## VIII. THE CHALLENGED ORDINANCES SUPPLY THE OFFICIAL POLICY FOUNDATION FOR MUNICIPAL LIABILITY (COUNT IX)

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), recognizes municipal liability under 42 U.S.C. § 1983 for constitutional injuries caused by officially adopted policies, including ordinances. It directs attention to the municipality's own policy and its causal relationship to the alleged deprivation. Count IX identifies the challenged ordinances as official legislative enactments adopted by City Council and alleges that those policies caused the constitutional injuries described in the preceding counts. SAC ¶¶ 269 to 281.

The claimed causal connection is direct: the enactments are alleged to impose the disputed obligations and restrictions upon Plaintiffs' properties and contractual relationships.

The Women's Council therefore urges the Court to deny dismissal of the municipal liability theory. The SAC identifies official policies, their legislative adoption, the affected federal rights, and the alleged connection between the policies and Plaintiffs' injuries. Those allegations supply the relevant municipal framework for adjudicating the pleaded federal claims.

## **CONCLUSION**

The Women's Council supports Plaintiffs and respectfully urges the Court to deny Defendants' motion to dismiss. The SAC presents allegations concerning existing rental properties and investments, established leases, disproportionate burdens on Black and minority independent owners, direct participation in the legislative process, and departures from legally required procedures. The Women's Council has a special interest in racial equality, secure property ownership, legislative accountability, and the continued capacity of neighborhood owners to provide housing.

The Court can recognize the importance of tenant protection while examining whether that protection complies with the Constitution and governing law. For equal protection, the question is whether the alleged impact, legislative sequence, procedural departures, and treatment of affected participants collectively support a plausible inference of racial purpose, not merely awareness of unequal economic consequences. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977); *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979). Plaintiffs need not establish their ultimate entitlement to relief at the pleading stage, but their factual allegations must plausibly support the constitutional violation asserted. The

Women's Council submits that the circumstances developed above, considered together rather than in isolation, support allowing that claim to proceed.

The property and contract claims likewise require attention to the interests identified and the interference alleged. The relevant inquiry is whether the challenged measures impose a compensable burden on protected property or substantially impair preexisting contractual relationships without sufficient justification under the governing standards. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978); *Sveen v. Melin*, 138 S. Ct. 1815 (2018). *Nekrilov v. City of Jersey City*, 45 F.4th 662 (3d Cir. 2022) requires meaningful application of those standards and the deference appropriate to legislative housing policy. The Women's Council's position is that Plaintiffs properly pled such interference, and thus, this claim should survive dismissal.

Further, the federal substantive due process claim must be evaluated under its deferential rational basis standard, while Pennsylvania's protection of economic liberty warrants the distinct analysis recognized in *Ladd v. Real Estate Commission of Pennsylvania*, 230 A.3d 1096 (Pa. 2020). Where an officially adopted ordinance causes an adequately pleaded federal constitutional deprivation, municipal responsibility follows the framework of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), rather than a requirement to identify a separate pattern of employee misconduct. Each theory must therefore stand or fall under its own requirements; an adverse determination on one does not, without more, resolve the others.

The Women's Council's main focus is tenant stability and minority ownership are complementary interests, and lawful housing policy must respect both.

For the foregoing reasons, the Women's Council respectfully requests that the Court deny Defendants' motion to dismiss and permit Plaintiffs' claims to proceed.

Respectfully submitted,

*/s/ Christopher R. Booth, Jr.*

Christopher R. Booth, Jr., Esquire
PA Attorney I.D. No. 59395
The Booth Law Firm
711 West Avenue
Jenkintown, PA 19046
215-518-6683
christopher@theboothlawfirm.com

Counsel for Amicus Curiae Women's Council of Philadelphia, Inc.

Date: October 27, 2026

**CERTIFICATE OF SERVICE**

I, Christopher R. Booth, Jr., Esquire, certify that on October 27, 2026, I caused the foregoing Motion of Women's Council of Philadelphia, Inc. for Leave to File Brief as Amicus Curiae in Support of Plaintiffs and in Opposition to Defendants' Motion to Dismiss, together with the proposed Order and proposed amicus curiae brief attached as Exhibit A, to be filed electronically through the Court's CM/ECF system. Service was effected through that system upon all counsel of record registered to receive electronic notice in this action.

*/s/ Christopher R. Booth, Jr.*
Christopher R. Booth, Jr., Esquire
Counsel for Amicus Curiae Women's Council of
Philadelphia, Inc.